UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x     Return Date:
In re:

   Alexander Bernard Kaspar,                  Chapter 11

                                                             Case No. 22-10382-mg

                                   Debtor(s).
------------------------------------------------------------x

**AMENDED AFFIRMATION OF COUNSEL IN SUPPORT OF THE MOTION OF ALEXANDER BERNARD KASPAR REQUESTING RECONSIDERATION OF THE ORDER GRANTING THE TOWN OF PUTNAM VALLEY'S APPLICATION FOR AN ORDER PURSUANT TO BANKRUPTCY RULE 2004 FOR EXAMINATION OF THE DEBTOR**

Alexander Bernard Kaspar ("Kaspar" and/or "Debtor"), by and through his undersigned counsel, submit this Affirmation in Support of his Motion for Reconsideration pursuant to 11 U.S.C. § 105(a), Fed. R. Bankr. P. 9023 and Fed. R. Civ. P. 59(e).

Debtor respectfully requests the Court reconsider and/or vacate its Order entered on June 29, 2022, in response to an *ex parte* Application dated June 28, 2022, by Lewis Wrobel ("Mr. Wrobel"), counsel for the Town of Putnam Valley, New York ("Putnam Valley") wherein Mr. Wrobel requested an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure for examination of the Debtor by testimony and the production of documents, and electronic evidence (the "Application"). In support of the within Motion, Kaspar respectfully states as follows:

**<u>PRELIMINARY STATEMENT</u>**

Kaspar submits that the Putnam Valley's original Application for the 2004 examination is wholly without merit. Very simply, the Application is an impermissible attempt to obtain discovery related to a pending lawsuit brought by Putnam Valley against the Debtor and his non-

1

party long-term partner (together, the "Defendants") that has been stayed by the New York State Supreme Court against the Defendants, as more fully set forth hereafter. There was, and is no cause for granting the Application, and the Court should reconsider its decision pursuant to 11 U.S.C. 105(a), Fed. R. Bankr. P. 9023, Fed. R. Civ. P. 59(e).

## JURISDICTION

1. The Court has jurisdiction over this matter under 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(1).

2. The Motion is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (G).

## RELEVANT BACKGROUND

### A. The Debtor's Bankruptcy Proceeding

3. On March 28, 2022, (the "Filing Date"), the Debtor commenced the instant proceeding (the "Bankruptcy Case") by filing a petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

4. This is the Debtor's second Chapter 11 bankruptcy filing. He previously filed a Chapter 11, Case No.: 18-36862, which was dismissed on February 4, 2022.

5. The Debtor's Estate consists mainly of three properties in Putnam Valley, New York. A single-family home located at 33 Gilbert Lane, Putnam Valley; a 25-acre parcel of land which is a working ranch ("Cimarron Ranch") and a 113-acre land parcel, lot number 72.-1-50 on Sprout Brook Road.

6. Previously, the Debtor owned two additional parcels of Property in Putnam Valley. Those parcels were sold by the Debtor to Hudson Highlands Land Trust ("HHLT") in his prior bankruptcy. The sale was approved by the prior Bankruptcy Court on December 8, 2021 after a full hearing.

7. Putnam Valley appeared as a creditor in the Debtor's prior bankruptcy, through its present counsel, Lewis Wrobel, Esq.

8. In the Debtor's prior bankruptcy, Mr. Wrobel filed three separate creditor claims on behalf of Putnam Valley. The cumulative amount he alleged the Debtor owed to the Town of Putnam Valley was $3,494,132.82.

9. The claims were classified as follows: the first claim alleged the Debtor liable for past due property taxes owed in the amount of $87,112.09[1]; the second claim alleged the Debtor of $3,000,000.00 based on unsubstantiated costs to Putnam Valley for remediation of "hazard waste" and the third claim alleged the Debtor liable for costs to Putnam Valley of $194,132.82 based on a "contingent indemnification of a Receiver & Counsel." Copies of the proof of claims filed by Putnam Valley in the prior case are attached as **Exhibit A**, **Exhibit B,** and **Exhibit C**.

10. A substantial portion of the proceeds from the sale of the parcels was used to pay the property taxes due to Putnam Valley and Putnam County in the prior bankruptcy.

11. In his present bankruptcy, because of the timing of the filing of the same, the Debtor filed an application to continue the Automatic Stay, pursuant to 11 U.S.C. 362(c)(3)(B), as to all creditors. Said motion was filed on April 18, 2022.

12. Putnam Valley was the only party which objected to the Debtor's motion. Eventually, the parties agreed to a stipulation extending the Order until July 26, 2022 - ninety (90) days from the date of the Court entered the Stipulation.

13. On May 19, 2022, this Court approved the retention and employment of this Firm as attorneys for the Debtor and Debtor-in-Possession, *nunc pro tunc*, effective March 28, 2022.

---

[1] The County of Putnam, Dept. of Finance also filed a claim for past due property taxes. It should be noted that Putnam County's claim for past due property taxes of $426,517.94 encompassed the full amount of the Proof of Claim asserted by Putnam Valley.

3

14. On June 28, 2022, Mr. Wrobel filed an Application with the Court seeking an ex-parte order to authorize him to conduct a Rule 2004 Examination of the Debtor, Alexander Bernard Kaspar.

15. With the Application, Mr. Wrobel requested that the Debtor provide documentation for his 2004 Examination, consisting of nine separate categories, few of which are related to the Debtor's actual financial circumstances.

16. Immediately on June 28, 2022, Counsel for the Debtor emailed a letter to the Chambers of the Honorable Martin Glenn, with a request that the Court hold a hearing on Putnam Valley's application for its ex parte order, asserting that the same had no merit and that Putnam Valley failed to show good cause for the same.

17. On June 29, 2022, without any hearing, the Court entered an Order granting the application of Putnam Valley and issued an *ex parte* Order authorizing counsel of Putnam Valley to conduct a Rule 2004 examination of the Debtor and requiring him to produce various documents.

**The State Court Action**

18. Prior to the Filing Date, the Town of Putnam Valley commenced an action in the Supreme Court of the State of New York, Putnam County (the "State Court"), against the Debtor, which was assigned index number 627/2006 (the "State Court Action").

19. As noted by the Index Number, the State Court Action was filed in 2006. This litigation has been extremely drawn out. However, one of the results of the litigation was the appointment of a receiver ("Mr. Donahue") by the Putnam County Supreme Court who was tasked with the responsibility of remediating the land surrounding Cimarron Ranch and controlling all the real property owned by the Debtor in the Town of Putnam.

20. Mr. Donahue operated under the instructions of the representatives of the Town of Putnam Valley. For a period of approximately six years, Mr. Donahue took no action to effectively control or manage the properties. He failed to effectively financially manage the properties of the Debtor's that he was entrusted with or fulfill his responsibly to remediate the one parcel.

21. Rather, Mr. Donahue hired an attorney and the two proceeded to run up billing statements of over two hundred thousand dollars that the Debtor was and is responsible for paying without any remediation even being started or a remediation plan every being presented or approved by the State of New York. The subject property remains in an "un-remediated" state.[2]

22. After the dismissal of the Debtor's bankruptcy in February, Putnam Valley resumed prosecution of the State Court Action through the attorney for Mr. Donahue without the involvement or approval of Mr. Donahue himself via an order to show cause to reinstate Mr. Donahue as receiver again.

23. Although the Debtor had arranged for remediation of the Property, Putnam Valley refused to allow the remediation plan approved by the State of New York, unless they now begin a new permitting process that is unnecessary, untimely and potentially overly costly.

24. In addition, Putnam Valley is also prosecuting violations against the Debtor's partner for alleged violation of local land use ordinances, which date back to 2020. Said charges were brought specifically against the Debtor's partner as to avoid naming the Debtor in any court action while the prior bankruptcy was proceeding. *People of the State of New York v. Grace*

---

[2] As noted by the proof of claims filed in the prior bankruptcy, Putnam Valley has asserted a claim against the Debtor for money owed, despite that it has never actually paid said monies to any third party, including the purported remediation costs and payment of its Receiver and his attorney.

5

*Delibero*; Complaint No.: 2020-0051.

25.     On the Filing Date, counsel for the Debtor notified the State Court that the Debtor had filed the Bankruptcy Case and that therefore the State Court Action was stayed with respect to the Debtor.  Counsel also notified counsel for Putnam Valley.

.

## MOTION FOR RECONSIDER

26.     This Court should reconsider its determination to grant the June 29, 2022, Order, *ex parte,* pursuant to Rule 9023 of the Federal Rules of Bankruptcy Procedure, which makes Rule 59(e) of the Federal Rules of Civil Procedure applicable to cases under the Bankruptcy Code. See Fed. R. Bankr. P. 9023. Rule 59(e) authorizes the filing of a "motion to alter or amend a judgment." Fed.R.Civ.P. 59(e) and 11 U.S.C. 105(a), under which this Court has the power to "issue any order, process or judgment that is necessary or appropriate to carry out the provisions of this title."

27.     A motion for reconsideration "is the proper vehicle for bringing to the Court's attention matters it may have overlooked in its initial ruling."  *Daniels v. Gladstone*, 2019 U.S.Dist. Lexis 128167, pp 16-17 (E.D.N.Y. 2019).

28.     In a motion for reconsideration, the burden rests with the movant. See *In re Crozier Bros., Inc.,* 60 B.R. 683, 688 (Bankr. S.D.N.Y. 1986).  For the moving party to be successful he "must demonstrate that the Court overlooked controlling decisions or factual matters that might materially have influences its earlier decision." *In re Asia Global Crossing*, Ltd., 332 B.R. 520, 524 (Bankr. S.D.N.Y. 2005).

29.     Reconsideration is not appropriate unless the movant has demonstrated an "intervening change of controlling law, the availability of new evidence, or the need to correct a

6

clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.,* 729 F.3d 99, 104 (2d Cir. 2013) (citation omitted).

30. Parties cannot use a motion for reconsideration to advance new facts or arguments and may not submit affidavits or new material. *Asia Global Crossing*, 332 B.R. at 524; accord *Pereira v. Aetna Cas. & Sur. Co. (In re Payroll Express Corp.),* 216 B.R. 713, 716 (S.D.N.Y. 1997).

31. The Debtor does not seek to present any new facts and/or arguments related to the present motion, as the Court never heard the Defendant's opposition to the motion prior to the issuance of its June 29th Order. Rather, the Debtor requests that the Court reconsider its decision based upon the standard required that a party must meet for the Court to issue such an Order, none of which Putnam Valley addressed in its initial application to the Court.

**THE JUNE 29, 2022 ORDER SHOULD BE VACATED AS PUTNAM VALLEY'S APPLICATION FOR A 2004 EXAMINATION IS INTENDED FOR AN IMPROPER PURPOSE**

32. Rule 2004 of the Federal Rules of Bankruptcy Procedure provides that "[o]n motion of any party, the court *may* order the examination of any entity". FRBP 2004(a)(emphasis added).

33. A bankruptcy court's decision to order an examination under this rule is, therefore, a purely discretionary one. *See In re Bd. of Dirs of Hopewell Int'l Ins., Ltd.,* 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001); *In re Enron Corp.,* 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002).

34. The scope of the examination is limited to "the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the estate, or to the debtor's right to a discharge". FRBP 2004(b).

35. Although courts have recognized that 2004 examinations may be "broad and unfettered and in the nature of fishing expeditions", *Enron*, 281 B.R. at 840, "the availability of Rule 2004 as a discovery tool is not unlimited." *Id.* (*quoting Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson & Co., Inc.),* 127 B.R. 267, 274 (D. Col. 1991)).

36. A party seeking a 2004 examination must demonstrate "good cause" therefore. *In re Metiom, Inc.,* 318 B.R. 263, 268 (S.D.N.Y. 2004); *see also In re Countrywide Home Loans, Inc.,* 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008).

37. "'Generally, good cause is shown if the [Rule 2004] examination is necessary to establish the claim of the party seeking the examination, or if denial of such request would cause the examiner undue hardship or injustice.'" *Metiom,* 318 B.R. at 268 (*quoting In re Dinublio*, 177 B.R. 932, 943 (E.D. Cal. 1993).

38. Prior to issuing an Order for a 2004 Examination, a Court is required to make a finding of good cause for the examination. *In re Metiom, Inc.,* 318 B.R. at 268.

39. In reviewing an application for a 2004 examination, Courts look to see if the examination is necessary to establish the claim of the party seeking the examination, or if a denial of the examination would cause the examiner undue hardship or injustice. See *In re Dinubilo*, 177 B.R. at 943; accord *In re SunEdison, Inc.,* 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017);

40. A Court must also "balance the competing interests of the parties, weighing the relevance of and necessity of the information sought by examination." *In re Drexel Burnham Lambert Grp., Inc.*, 123 B.R. 702, 712 (Bankr. S.D.N.Y. 1991).

41. In addition, the court must consider the relevance of the discovery against the burden it will impose on the producing party. *See In re MF Global Inc.*, 11-07290 (MG)(Bankr.

8

S.D.N.Y. 2011 January 8, 2013) (*citing In re Coffee Cupboard, Inc.,* 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991).

42. A Rule 2004 is not designed to permit a party in interest to investigate their private, non-estate, claim. See *In re Lufkin*, 255 B.R. 204, 208-09 (Bankr. E.D. Tenn. 2000).

43. As this Court has also opined, the so-called "pending proceeding rule" does not permit Rule 2004 examinations when proceedings against the proposed parties to be examined are pending in another forum. *MF Global*, 11-07290 at 3 (*citing Enron*, 281 B.R. at 840).

44. This prohibition extends to proceedings pending in state court. *See Enron*, 281 B.R. at 840 (*citing Snyder v. Soc'y Bank*, 181 B.R. 40, 42 (S.D. Tex.1994), *aff'd sub nom In re Snyder*, 52 F.3d 1067 (5th Cir.1995)(mem)("The use of Rule 2004 to further [a] case in state court constitutes an abuse of Rule 2004.").

45. In addition, courts have declined to allow a 2004 examination "where the purpose of the examination is to abuse or harass". *Id*. (*citing In re Mittco, Inc*., 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984); *see also MF Global*, 11-07290 at 2.

**The Putnam Valley Application**

46. The Rule 2004 Application filed by Putnam Valley ("The Application") fails to establish good cause for the examination of the Debtor. See ECF Document No.: 35.

47. Paragraph two of The Application is untrue. Putnam Valley is not a major creditor of the Debtor. The mortgage lender on 33 Gilbert Lane is the only "major creditor" of the Debtor. As of the date of this motion, Putnam Valley has failed to file a proof of claim in any amount.

48. Putnam Valley did not need a deposition or documents to file its claims in the

prior bankruptcy. The Application sets forth nothing to establish why it needs to examine the Debtor now taking into consideration that less than three months separates the two cases.

49. Paragraph three of The Application is simply a blatant lie. Putnam Valley has no evidence that the Debtor "dumped waste products" on the land he owned. The use of unsupported slanderous statements such as the statement above has been a tactic used by Putnam Valley throughout the State Court litigation and the prior Bankruptcy Case.

50. It is true that Putnam Valley has obtained orders from the New York State Supreme Court directing the Debtor to remediate one parcel of land he jointly owns with a non-debtor. It is true that the New York State Department of Environmental Conservation ("NYSDEC") directed the Debtor to remediate one parcel of land he jointly owns with a non-debtor. What Putnam Valley leaves out of these statements is that Putnam Valley was in control of the Debtor's land via a Receiver from the Spring of 2009 until December 2020.

51. Upon receiving control of his properties in December of 2020, the Debtor retained and the Court approved the services of Environmental Consulting and Management Services ("ECMS"). A legitimate plan of remediation was formulated by ECMS, presented to the NYSDEC and approved prior to December of 2021. The Debtor even obtained an estimate for the approved remediation plan from ECMS.

52. The only entity which stopped the Debtor from remediating his property before and continues to unnecessarily interfere with the remediation of the parcel to this day is Putnam Valley.

53. Paragraphs four and five of the Application fail to establish or explain how a deposition or documents in this case are necessary for Putnam Valley to establish its prior claims or any new claims.

54. Paragraph six provides an unsubstantiated cost range for remediation and paragraph seven states, without any support and/or evidence, that Putnam Valley "may" incur the expense of remediation if the Debtor does not remediate.

55. Putnam Valley filed a claim in the last case using the same basis as set forth in paragraphs six and seven. The only difference is that in the Debtor's prior case, Putnam Valley claimed to be responsible for remediation costs that exceed the amounts it listed in paragraph six of its current Application. See **Exhibit C**.

56. Paragraphs six and seven fail to establish or explain how a deposition or documents in this case are necessary for Putnam Valley to establish its prior claims or any new claims.

57. Paragraph ten of the Application is untrue. The Debtor appeared at his 341(a) meeting and it lasted approximately two hours, in which the Debtor testified under oath, and provided responses to the US Trustee, counsel for Putnam Valley and counsel for the County of Putnam.

58. Paragraph eleven of the Application fails to establish or explain how a deposition or documents in this case are necessary for Putnam Valley to establish its prior claims or any new claims.

59. Nothing in The Application establishes or even contemplates that the failure to obtain any of the documents will cause Putnam Valley undue harm or injustice.

60. Nothing in The Application establishes or even contemplates that the failure to examine the Debtor will cause Putnam Valley undue harm or injustice.

61. Nothing in The Application discusses the relevance of and necessity of the

information sought by the document demand and examination.

62.     The Debtor has not listed Putnam Valley as a creditor in this current filing. The Debtor does not believe that Putnam Valley was a creditor in the last bankruptcy and does not believe they are a creditor in this bankruptcy. Debtor's counsel apprised Mr. Wrobel just before the end of the prior case of the Debtor's intention to expunge the filed claims by Putnam Valley. It is the Debtor's intention to file a motion in this case to expunge any claim(s) filed by Putnam Valley that fail to provide sufficient support for the claim(s).

63.     The question must be asked – if Putnam Valley made no requests for said documents during the three-year time period of the prior bankruptcy, what has changed which would require a Rule 2004 examination in the present bankruptcy.

64.     The answer is simple – nothing has changed – The Application is simply to abuse and harass the Debtor and make this bankruptcy as costly to the Debtor as possible as was done in the Debtor's last filing.

65.     Litigation costs related directly or indirectly to Putnam Valley for the Debtor in the prior bankruptcy exceeded seventy thousand dollars.

66.     The only party to object to the Debtor's motion to extend the stay in this case was Putnam Valley. Putnam Valley is simply picking up where they left off in the prior case.

67.     There are two pending proceedings against the Debtor and/or the Estate and Putnam Valley is prosecuting both of those cases against the Debtor and the Estate.

68.     With those two cases pending and Putnam Valley's continued intention to prosecute the Debtor, the co-owner and/or the Estate at every available chance, the Debtor should not be exposed to the loss of discovery protections with the imposition of a Rule 2004 examination.

69.    It is not too far of a stretch to believe that Mr. Wrobel would attempt to use the 2004 examination as a thin guise to gather information related to the pending violations of the local ordinances or obtain additional information regarding the barn fire wherein the town officials could hope to bring further complaints against him or the Estate.

70.    Based on the above, the Court should reconsider its Order and vacate the same, as Putnam Valley has failed to show the good cause required to proceed with a Rule 2004 Examination.

## CONCLUSION

For the reasons stated herein, the Debtor respectfully requests that the Court reconsider its June 29, Order in which it granted Putnam Valley its Application for a Rule 2004 Examination and deny the Application *in toto* and provide such other and further relief as the Court deems just, equitable, and proper.

Dated:  Goshen, New York
        July 18, 2022

M. CABRERA & ASSOCIATES, PC

By:    */s/ Matthew M. Cabrera*
       Matthew M. Cabrera, Esq.

2002 Route 17M, Suite 12
Goshen, New York 10924
Telephone: (845) 531-5474
Facsimile: (845) 230-6645
Email: mcabrera@mcablaw.com
*Counsel to the Debtor and Debtor in Possession*

13

AUTHORITIES

**Cases**

*Daniels v. Gladstone*, 2019 U.S.Dist. Lexis 128167, pp 16-17 (E.D.N.Y. 2019) – p. 6

*In re Asia Global Crossing*, Ltd., 332 B.R. 520, 524 (Bankr. S.D.N.Y. 2005) – p. 6, 7

*In re Bd. of Dirs of Hopewell Int'l Ins., Ltd.,* 258 B.R. 580, 587 (Bankr. S.D.N.Y. 2001) – p. 7

*In re Coffee Cupboard, Inc*., 128 B.R. 509, 514 (Bankr. E.D.N.Y. 1991) – p. 9

*In re Countrywide Home Loans, Inc*., 384 B.R. 373, 393 (Bankr. W.D. Pa. 2008) – p. 8

*In re Crozier Bros., Inc.,* 60 B.R. 683, 688 (Bankr. S.D.N.Y. 1986) – p. 6

*In re Dinublio*, 177 B.R. 932, 943 (E.D. Cal. 1993) – p. 8

*In re Drexel Burnham Lambert Grp., Inc*., 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991) – p. 8

*In re Enron Corp*., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) – pp. 7, 8, 9

*In re Lufkin*, 255 B.R. 204, 208-09 (Bankr. E.D. Tenn. 2000) – p. 9

*In re Metiom, Inc*., 318 B.R. 263, 268 (S.D.N.Y. 2004) – pp. 8

*In re MF Global Inc*., 11-07290 (MG)(Bankr. S.D.N.Y. 2011 January 8, 2013) – pp. 8, 9

*In re Mittco, Inc*., 44 B.R. 35, 36 (Bankr. E.D. Wis. 1984) – p. 9

*In re SunEdison, Inc.,* 562 B.R. 243, 249 (Bankr. S.D.N.Y. 2017) –  p. 8

*Intercontinental Enters., Inc. v. Keller (In re Blinder, Robinson & Co., Inc.),* 127 B.R. 267, 274 (D. Col. 1991) – p. 8.

*Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.,* 729 F.3d 99, 104 (2d Cir. 2013) – p. 7

*Pereira v. Aetna Cas. & Sur. Co. (In re Payroll Express Corp.),* 216 B.R. 713, 716 (S.D.N.Y. 1997) – p. 7

*Snyder v. Soc'y Bank*, 181 B.R. 40, 42 (S.D. Tex.1994), *aff'd sub nom In re Snyder*, 52 F.3d 1067 (5th Cir.1995)(mem) – p. 9

14

Statutes

11 U.S.C. § 105(a)

Fed. R. Bankr. P. 9023

Fed. R. Civ. P. 59(e)

Fed. R. Bankr P. 2004