UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
: 
In re                                                           :          Chapter 11
                                                                :
ALEXANDER BERNARD KASPAR,              :          Case No. 22-10382 (MG)
                                                                :
                            Debtor.                  :
                                                                :
------------------------------------------------------- x

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTOR'S APPLICATION TO EMPLOY ENVIRONMENTAL CONSULTING AND MANAGEMENT SERVICES AS ENVIRONMENTAL CONSULTANT FOR THE DEBTOR AND DEBTOR IN POSSESSION EFFECTIVE *NUNC PRO TUNC* TO MARCH 28, 2022**

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee"), hereby submits his objection (the "Objection") to the application, on presentment before the Court on August 15, 2022, of Alexander Bernard Kaspar, (the "Debtor") for entry of an order approving the employment of Environmental Consulting and Management Services ("ECMS") as environmental consultant for the Debtor effective *nunc pro tunc* to March 28, 2022 (the "Application"). In support thereof, the United States Trustee respectfully states:

**PRELIMINARY STATEMENT**

The United States Trustee objects to the Application as it is deficient in several respects. First, the Application does not fully disclose ECMS's connection to the Debtor as its prepetition environmental consultant. Insofar as ECMS may have a claim against the estate for accrued but unpaid fees and expenses as a result of remediation services rendered to the Debtor prepetition, ECMS is not a disinterested person. Second, the Debtor requests, over four months later, that ECMS's employment be effective *nunc pro tunc* to the Petition Date, but does not address, let alone satisfy, the legal standards necessary for such relief. Lastly, the Debtor improperly seeks the employment and compensation of ECMS under the "improvident" standard of review under

1

section 328(a) of the Bankruptcy without any legal or factual basis. For support, the Debtor merely cites to inapposite caselaw and conclusory contentions that the compensation structure is fair and reasonable. For all of these reasons, and as discussed in more detail below, this Court should deny the Application.

## BACKGROUND

**A.    General Background**

1.  On March 28, 2022 (the "Petition Date") the Debtor filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Bankruptcy Code.

2.  The Debtor is an individual and acting as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.  No trustee or examiner, and no official committee of unsecured creditors, has been appointed in this case.

4.  Debtor's primary assets consist of three parcels of land ("Putnam Land Parcels"), co-owned with his non-debtor partner, identified as tax parcels 72-1-47 ("Cimarron Ranch"), 71-1-50, and 83-1-11 ("Gilbert Lane"). *See* Petition at Schedule A/B (ECF No. 1).

5.  From 2005-2008, the Debtor operated various businesses on the Putnam Land Parcels, including processing mulch and tree material, processing concrete and asphalt into aggregate, and operating a horse ranch. *See* Local Rule 1007-2 Affidavit ¶ 3 (ECF No. 11). In 2009, the State of New York visited the Putnam Land Parcels and issued violations resulting in the temporary shutdown of the Debtor's business. *See id.* ¶ 5. Thereafter, the Town of Putnam Valley (the "Town") sued the Debtor to permanently stop all activities and arrange for remediation of the areas allegedly impacted by the Debtor's operations. *See* Local Rule 1007-2 Affidavit ¶ 6 (ECF No. 11).

B.      **Application to Employ ECMS**

6.      On July 25, 2022, the Debtor filed the Application, by which it seeks to employ, pursuant to sections 327(a) and 328(a) of the Bankruptcy Code, ECMS as environmental consultant, effective *nunc pro tunc* to March 28, 2022, to "facilitate the approved remediation plan for Cimarron Ranch," pursuant to the terms of the Agreement between the parties signed and dated March 2, 2020 and an addendum signed and September 15, 2020 (the "Addendum"). *See* Application ¶¶ 10-13.

7.      As set forth in the Application, the services to be rendered by ECMS in this chapter 11 case are:

>   (a)    Submit for and receive any and all necessary permits and approvals to facilitate the approved remediation plan; and
>
>   (b)    Oversee and supervise the commencement and completion of the approved remediation plan; and
>
>   (c)    Submit for and receive final approvals concerning the remediation plan from the NYSDEC.

*Id.* ¶ 16. Additionally, the Application provides that in the event of the consummation of a sale of the parcels, "ECMS shall consult with the NYDEC to confirm that the Debtor's rehabilitation plan is progressing in accordance with any and all state guidelines." *Id.* ¶ 17.

8.      In support of the Application, the Debtor also attached as Exhibit A thereto, the Affidavit of Harry Sudwischer ("Sudwischer," and such affidavit, the "Sudwischer Affidavit"), a senior project manager at ECMS.

C.      **Debtor's Prior Bankruptcy Case**

9.      On November 4, 2018, the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Southern District of New

3

York (Poughkeepsie Division), which case was assigned Case No. 18-36862-CGM (the "Prior Bankruptcy Case").

10. In the Prior Bankruptcy Case, the Debtor sought to employ ECMS as environmental consultant to provide certain environmental remediation services pursuant to the same Agreement dated March 2, 2020 and Addendum dated September 15, 2020. *See* ECMS Employment Application, Case No. 18-36862-CGM (ECF No. 199).[1] By order dated November 17, 2020, the Bankruptcy Court approved ECMS's retention in the Prior Bankruptcy Case. *See* ECMS Retention Order, Case No. 18-36862-CGM (ECF No. 223).

11. On December 18, 2021, the United States Trustee filed a motion to convert the Debtor's case to a case under chapter 7, or alternatively, to dismiss the case. *See* UST Motion to Dismiss or Convert, Case No. 18-36862-CGM (ECF No. 294). As relevant here, the Motion to Dismiss or Convert states, with respect to the remediation services provided by ECMS:

> On October 6, 2020, the Debtor filed an Application to Employ Environmental Consulting and Management Services ("ECMS") to oversee the remediation of the Cimarron Road Property, which the Court approved on November 17, 2020. ECF Doc. Nos. 199 and 223. Although the remediation plan has apparently received approval from the State of New York, the Debtor has not revealed any details of the plan, including cost, the latter of which is critical to assessing the Debtor's ability to reorganize. The record of the case contains contradictory information. The Order Approving the Private Sale of Debtor's Right, Title, and Interest in Real Property Free and Clear of Liens, Claims, Encumbrances and Other Interests Pursuant to 11 U.S.C. § 363 and Granting Other Relief, entered on December 8, 2021 (the "December 8, 2021 Sale Order")[2] required the transfer of $400,000.00

---

[1] That retention application, as well as the supporting affidavit by Sudwischer, is nearly identical to the Application herein.

[2] The ordered language is as follows:

> FURTHER ORDERED, that at or as promptly as practical after the closing of the sale, the Debtor shall set aside with his attorney, to be held in his attorney's escrow account, four hundred thousand dollars ($400,000.00), the estimated amount of remediation costs as estimated by Environmental Consulting and Management Services. These funds are being escrowed for payment of the future remediation costs of parcel 72-1-47. Once approval is obtained from the New York State Department of Environmental Conservation to begin remediation, these funds will be disbursed to the Debtor's DIP account in draws; and it is

4

> to Debtor's counsel at the closing of the sale to cover the estimated cost of the remediation. December 8, 2021 Sale Order, at 4, Exhibit 10 to the Leonhard Declaration. The Town, on the other hand, stated in Proof of Claim No. 7-1, filed on April 21, 2020 (the "Town POC 7.1"), that the remediation would cost $3 million and provided documentation that in 2013, the estimated cost of the remediation was between $1,941,700.00 and $1,971,700.00. *Id.*, Exhibit 11 to the Leonhard Declaration.[3]

*See id.* at 9.

12.     On February 3, 2022, the Bankruptcy Court granted United States Trustee's Motion to Dismiss or Convert, dismissing the Prior Bankruptcy Case. *See* Dismissal Order, Case No. 18-36862-CGM (ECF No. 320).

## OBJECTIONS

**I.     The Application does not adequately disclose ECMS's connections and potential adverse interest, as required by Rule 2014**

Section 327(a) provides that a debtor in possession may employ, with court approval, professionals who "do not hold or represent an interest adverse to the estate, and that are disinterested persons." 11 U.S.C. § 327(a). In turn, Bankruptcy Rule 2014 mandates that an application under section 327(a) be accompanied by a verified statement from the proposed professional "setting forth the person's connections with the debtor, creditors, or any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States Trustee." Fed. R. Bankr. P. 2014(a). The disclosure required by professionals in bankruptcy cases "goes to the heart of the integrity of the bankruptcy system." *In re Universal Bldg. Prods.*, 486 B.R. 650, 663 (Bankr. D. Del. 2010) *quoting In re B.E.S. Concrete Prods., Inc.*, 93 B.R. 228, 236-38 (Bankr. E.D. Cal. 1988).

---

December 8, 2021 Sale Order, Case No. 18-36862-CGM (ECF No. 292), at 4.

[3]  *See* Declaration of Alicia M. Leonhard, trial attorney, in support of UST Motion to Dismiss or Convert, Case No. 18-36862-CGM (ECF Nos. 294-2, 294-3).

5

Moreover, the disclosures must provide sufficient detail such that stakeholders can understand the relevant facts. *In re Lewis Road, LLC*, No. 09-37672, 2011 WL 6140747, at *12 (Bankr. E.D. Va. Dec. 9, 2011) (finding that a party seeking retention who stated merely that it had "connections with creditors" did not detail its connections to the extent required by Rule 2014).

Here, the Application is supported by the Sudwischer Affidavit, in which Mr. Sudwischer states:

> Neither I, ECMS, nor any associate, agent or employee for ECMS, insofar as I have been able to ascertain, holds or represents any interest adverse to that of the estate in the matters upon which ECMS is to be engaged, and I believe that ECMS to be a "disinterested person" within the meaning of section 101(14) of title 11, United Stated Code (Bankruptcy Code).

Sudwischer Affidavit ¶ 14. However, nowhere in the Sudwischer Affidavit does Mr. Sudwischer set forth ECMS's connections, if any, with the debtor's "creditors, or any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States Trustee."[4] More importantly, Mr. Sudwischer's perfunctory representation that ECMS is a "disinterested person" under the Bankruptcy Code[5] may not be

---

[4] The Debtor states in the Application that "as disclosed in the Sudwischer Affidavit, ECMS has indicated that based on the results of its research conducted to date, and to the best of its knowledge, neither ECMS, nor any employee thereof, has any connection with the Debtor, any creditors of the Debtor's estate, or any other parties-in-interest (as reasonably known ECMS) or their respective attorneys and accountants, or other advisors, or the U.S. Trustee, or any person employed in the Office of the U.S. Trustee." Application at ¶ 31. However, the Debtor did not cite where in the Sudwischer Affidavit such representation is made, and in fact, such representation is not found anywhere in the Sudwischer Affidavit.

[5] Section 101(14) of the Bankruptcy Code defines "disinterested person" as a person that—
(A) is not a creditor, an equity security holder, or an insider;
(B) is not and was not, within 2 years before the date of the filing of the petition, a director, officer or employee of the debtor; and
(C) does not have an interest materially adverse to the interest of the estate or of any class of creditor or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason.

11 U.S.C. § 101(14).

6

accurate. It is undisputed, and ECMS readily concedes, that it was retained in the Prior Bankruptcy Case to provide environmental remediation services to the Debtor:

> ECMS represented the Debtor in his last bankruptcy and is awaiting approval to move forward with the remediation plan drafted by ECMS and approved by the New York State Department of Environmental Conservs70447211 1!!ation ("NYSDEC"). [*sic*]

Sudwischer Affidavit ¶ 6. For the provision of such services, ECMS sought in the Prior Bankruptcy Case, $6,862.50 in fees and $2,505.87 in expenses, covering the period March 2, 2020 through January 31, 2021. *See* ECMS Interim Fee Application, Case No. 18-36862-CGM (ECF No. 237). Pursuant to the Bankruptcy Court's order dated March 16, 2021, the full amounts sought by ECMS were approved. *See* ECMS Fee Order, Case No. 18-36862-CGM (ECF No. 248). Notwithstanding the Court's approval of such fees and expense, there is no disclosure whether such amounts were, in fact, paid by the Debtor to ECMS. There is no disclosure whether ECMS continued to provide remediation services to the Debtor after January 31, 2021, and what those fees and expenses would have been; no final fee application was ever filed in the Prior Bankruptcy Case for the period from January 2021 through its dismissal in February 3, 2022. Further, as noted above, pursuant to the December 8, 2021 Sale Order, the Bankruptcy Court mandated the transfer of $400,000.00 to an escrow account maintained by Debtor's counsel at the closing of the sale of the land parcel located Sprout Brook Road, Putnam Valley, NY 10579 (and identified as Tax Map Nos. 72.19-1-29 & 83-1-1) to cover ECMS's cost of remediating Cimarron Ranch. There is no disclosure by the Debtor or ECMS whether that $400,000 was ever disbursed to ECMS following the sale closing.

In short, ECMC did not fully disclose the circumstances surrounding its connection with the Debtor – to wit, ECMS's role as the Debtor's environmental consultant – and whether ECMS's provision of remediation services to the Debtor pre-petition resulted in accrued, unpaid,

7

outstanding fees and expenses owed by the Debtor.[6] *See In re Matco Elec. Grp., Inc.*, 383 B.R. 848, 853 (Bankr. N.D.N.Y. 2008) (noting that the requirement to disclose all connections is not subjective, "whereby the professional discloses only those 'connections' that he/she/it concludes are relevant"); *see also In re Fibermark, Inc.*, No. 04-10463, 2006 WL 723495, at *8 (Bankr. D. Vt. March 11, 2006) ("[T]he decision as to what facts may be relevant should not be left up to the professional, 'whose judgment may be clouded by the benefits of potential employment'" (*quoting In re Lee*, 94 B.R. 172, 176 (Bankr. C.D. Cal. 1988))). Absent further elaboration of these facts, the United States Trustee cannot determine if ECMS has a claim against the estate, which would render ECMS a creditor and preclude its retention as the Debtor's environmental consultant herein.

## II.   The Debtor fails to satisfy the requirements for *nunc pro tunc* retention

The Debtor seeks to employ ECMS, effective *nunc pro tunc* to the Petition Date, but has not met the legal standards required for such relief.

As a general matter, *nunc pro tunc* approval of a professional's retention is "generally disfavored," and "should only be granted in narrow situations." *In re Bronx 439 E. 135th Street D.T. Building Corp.*, No. 11-15855-MG, 2014 WL 200996, at *4 (Bankr. S.D.N.Y. Jan. 17, 2014) (citations omitted). The Second Circuit applies a two-prong test to determine whether to permit *nunc pro tunc* retention – the movant must demonstrate that: (i) if the application had been timely, the court would have authorized appointment, and (ii) the delay in seeking court approval resulted from extraordinary circumstances. *See Cushman Wakefield Inc. v. Keren Ltd.*

---

[6] The Debtor states that ECMS was not owed any amounts by the Debtor as of the Petition Date and does not hold a claim against the Debtor's estate. *See* Application ¶ 32. However, there is no corresponding representation by ECMS in the Sudwischer Affidavit. Debtor's uncorroborated statement is not under penalty of perjury, and is insufficient to satisfy ECMS's independent obligation under Bankruptcy Rule 2014 to disclose the circumstances of its connections with the Debtor and whether it has any claims against the estate.

8

*P'ship (In re Keren Ltd. P'ship)*, 189 F.3d 86, 87 (2d Cir. 1999). In evaluating whether there were "extraordinary circumstances," courts consider various factors, including: whether the applicant or some other person bore responsibility for applying for approval; whether the applicant was under time pressure to begin service without approval; the amount of delay after the applicant learned that initial approval had not been granted; the extent to which compensation to the applicant will prejudice innocent third parties; and other relevant factors. *See In re Motors Liquidation Co.*, 438 B.R. 365, 376 (Bankr. S.D.N.Y. 2010) (citations omitted).

Here, the Debtor does not even address the *Keren* prongs let alone carry his burden of satisfying them. First, the Debtor does not contend that this Court would have authorized ECMS's employment had the application been made timely. To the contrary, given the history of litigation in this case between the Debtor and the Town, and the fact that this case is a repeat filing (where ECMS's services and involvement played a part in the United States Trustee's request for dismissal of the Prior Bankruptcy Case), it cannot be assumed that ECMS's employment would not have been contested by the Town. Further, even if the Application had been timely filed, the United States Trustee would have had the same concerns raised in this Objection.

As to the second prong, from the outset of this case, the Debtor has known about the environmental remediation issues concerning the Putnam Land Parcels, and that remediation services would be needed in order to proceed with any sale of Cimarron Ranch. The Debtor also knew that ECMS had begun providing services to the Debtor, but did not seek ECMS's employment for nearly four months. The Debtor has not offered any explanation for the delay, let alone shown that such delay resulted from "extraordinary circumstances." Accordingly, *nunc pro tunc* relief is not warranted. *See In re CCT Commc'ns, Inc.*, No. 07-10210-SMB, 2010 WL

9

3386947, at *5 (Bankr. S.D.N.Y. Aug. 24, 2010) ("'Simple neglect' on the part of a debtor in failing to take timely action does not constitute the 'extraordinary circumstances' necessary to justify *nunc pro tunc* relief." (quoting *In re Aquatic Dev. Grp., Inc.*, 352 F.3d 671, 679 (2d Cir. 2003)).[7]

### III.   The Debtor has not established a basis for ECMS's compensation under section 328(a)

"Sections 328 and 330 establish a two-tiered system for judicial review and approval of the terms of the professional's retention." *In re Smart World Techs., LLC*, 552 F.3d 228, 232 (2d Cir. 2009). Whereas a retention under section 330 awards compensation to the retained professional based on an-after-the fact review of the reasonableness of fees, section 328(a) requires that the Court pre-approve the reasonableness of the compensation terms and conditions at the point of retention, which terms can only be modified if they prove to have been "improvident in light of developments not capable of being anticipated at the time of the fixing of such terms and conditions." 11 U.S.C. § 328(a). *See also* 3 *Collier on Bankruptcy* ¶ 328.02 (16th ed. 2022) ("Section 328(a) effects a significant departure from prior practice under the Bankruptcy Act in which professionals were entitled to reasonable compensation determined on a strictly *quantum meruit* basis.") (citations omitted). The applicant seeking retention of the professional carries the burden of satisfying the reasonableness of the proposed compensation under section 328(a), which is evaluated against various factors, including: whether the proposed

---

[7] The only statement, made by Mr. Sudwischer, in support of ECMS's *nunc pro tunc* retention, was:

> "I can represent that I have already conducted an inspection at the Property and identified the areas of remediation, and had multiple calls with representatives of the NYSDEC related to the Debtor's proposed remediation plan."

Sudwischer Affidavit at ¶ 14. However, there is no explanation from Mr. Sudwischer as to when such inspection at the Property was conducted, when these calls with the NYSDEC took place, and what compelling circumstances required Mr. Sudwischer to undertake these activities prior to obtaining Court approval for its retention.

10

terms reflect the marketplace for the type of service, whether the parties negotiated the terms at arms-length, and whether the retention, as proposed, is in the best interest of the estate, and whether creditors oppose the retention or proposed fees. *See In re Frontier Commc'ns Corp.*, 623 B.R. 358, 363 (Bankr. S.D.N.Y. 2020) (citations omitted); *In re Insilco Technologies, Inc.*, 291 B.R. 628, 633-34 (Bankr. D. Del. 2003) (same).

The Debtor seemingly seeks to retain ECMS under section 328(a) of the Bankruptcy Code. *See, e.g.*, Application ¶ 35 ("ECMS is being retained under Section 328 of the Bankruptcy Code and will be employed by the Debtor to perform a highly specialized task and accordingly, will be compensated based upon the terms of the Agreement."); ¶ 44 ("[T]he Debtor requests that the Court enter an Order, substantially in the form annexed hereto as Exhibit A, approving ECMS's retention as an environmental consultant to the Debtor with respect to the Properties, pursuant to Sections 327(a) and 328(a) of the Bankruptcy Code and approving the terms of the Listing [*sic*] Agreement.").[8] To the extent that the Debtor is seeking prospective approval of ECMS's compensation terms under the improvident standard set forth in section 328(a), he has not carried his burden of demonstrating entitlement to such relief.

As support for his request, the Debtor submits that "ECMS's fee structure, as set forth in the Agreement and Addendum is reasonable under Bankruptcy Code section 328(a) in light of (a) the nature and scope of services to be provided by ECMS, (b) industry practice with respect to the fee structure proposed by ECMS, (c) market rates charged for comparable services both in and out of chapter 11; and (d) ECMS's substantial experience with respect to real estate issues."

---

[8] At the same time, the Debtor also seems to request that ECMS's compensation by subject to the reasonableness standard under section 330 of the Bankruptcy Code. *See, e.g.*, Application ¶ 38 ("The Debtor seeks approval of the Fee Arrangement with ECMS under the Agreement pursuant to sections 327(a) and 328(a) of the Bankruptcy Code and requests the Court enter an Order permitting the Debtor to retain and employ ECMS as its environmental consultant in connection with this Chapter 11 Case, as incorporated in sections 330 and 331 of the Bankruptcy Code and the Bankruptcy Rules.").

11

Application ¶ 41.  However, the Debtor has provided no evidentiary support as to what industry fee structures are typical for environmental consultants such as ECMS, nor what market rates are charged by ECMS for comparable remediation services to businesses outside of the chapter 11 context.  The Debtor does not contend that it sought or considered remediation services from other environmental consultants and what rates it was able to obtain.  In truth, the Debtor did not evaluate the reasonableness of ECMS's fee structure, and the Application provides no measure or record for this Court to undertake such an evaluation and pre-approve ECMS's fee structure as reasonable.  *See In re High Voltage Eng'g Corp.*, 311 B.R. 320, 333 (Bankr. D. Mass. 2004) (noting that "a bankruptcy court has an obligation to determine the reasonableness of terms and conditions before authorizing the employment of professionals under § 328(a)").

       The Debtor also contends that a Lodestar-type review of ECMS's compensation is not appropriate because it would be "unduly burdensome" for ECMS to record and submit detailed time entries in light of the nature of the services to be rendered and the fact that "it is not ECMS's practice to keep detailed time records similar to those customarily kept by professionals compensated an hourly basis."  Application ¶ 36.  Such assertion is plainly untrue.  The Agreement and Addendum make clear that ECMS's negotiated fee structure is based principally on the amount of expended hours multiplied by the applicable hourly rate.  *See, e.g.*, Agreement ¶ 20 "Invoicing and Payment" ("Invoices will be issued periodically (generally on a monthly basis) itemizing the staff categories, hours worked, rates, and the Other Direct Costs."); Addendum at 2 ("Fees apply to a normal eight (8) hour working week exclusive of travel, Monday through Friday, USA based… 6. $150/hour for ECMS field oversight of investigative/remediation services.").

Thus, it is actually ECMS's customary billing practice to keep records of services rendered in one-hour increments, similar to other professional fees that are calculated on an hourly basis, and adherence to the Agreement and Addendum[9] would require ECMS to submit detailed time records as to the hours expended by categories of services rendered. Indeed, in the Prior Bankruptcy Case, ECMS did just that – in the ECMS Interim Fee Application, ECMS attached as Exhibit A thereto, invoices containing detailed time records describing the services rendered, the time expended, and the applicable rates. *See* ECMS Interim Fee Application, Case No. 18-36862-CGM (ECF No. 237-2).

Finally, the Debtor cites in summary fashion, a string of unpublished orders as supporting ECMS's retention and compensation under section 328(a), including -- *In re Lionel LLC*, Case No. 04-17324 (BRL) (Bankr. S.D.N.Y. 2006) (authorizing retention of Houlihan, Lokey, Howard & Zukin, Inc. under section 327 and 328(a); *In re Kaiser Aluminum Corp.*, Case No. 02-10429 (JKF) (Bankr. D. Del. Aug. 13, 2002) (authorizing retention of Lazard Freres & Co. LLC and subjecting compensation to same standard of review); *In re Trans World Airlines, Inc.*, Case No. 01-00056 (PJW) (Bankr. D. Del. Aug. 22, 2002) (authorizing retention of Rothschild, Inc., as financial advisors for debtors, under sections 327(a) and 328(a) of the Bankruptcy Code). *See* Application ¶ 29. But ECMS is not a financial advisor or investment banker, and the Debtor fails to provide any legal analysis or explain the applicability of these order. Debtor cites no specific authority or precedent where this Court has approved the upfront compensation terms of an environmental specialist under a section 328(a) "improvident" standard, particularly where

---

[9] Notably, the Agreement and Addendum were entered into in 2020, two years prior to the commencement of this chapter 11 case, and well beyond the *nunc pro tunc* effective date of March 28, 2022 that is being requested by this Application. The Debtor has not cited any precedent where a bankruptcy court has retroactively approved the terms of a pre-petition contract executed two years before the petition date, pursuant to which a debtor seeks to continue services on a post-petition basis.

13

the parties agreed to an hourly based fee structure, and where that is the applicant's customary billing practice.

Simply put, the Debtor has advanced zero justifications for ECMS's compensation under section 328(a). Indeed, in the Prior Bankruptcy Case, the ECMS Interim Fee Application was clearly subject to, and approved pursuant to, the reasonableness standard of retroactive review set forth in section 330 of the Bankruptcy Code. *See* ECMS Interim Fee Application, Case No. 18-36862-CGM (ECF No. 237), ¶ 19.[10] Therefore, to the extent the Debtor now seeks this Court's prospective approval of ECMS's retention and compensation under the "improvident" standard under section 328(a), such relief should be denied. *See In re Frontier Commc'ns Corp.*, 623 B.R. at 361 (denying retention and proposed compensation terms of Evercore Group LLC as debtor's investment banker and financial adviser under section 328(a)).

## CONCLUSION

In sum, the Application, in its current form, cannot be approved. The Application (i) fails to disclose the circumstances surrounding ECMS's pre-petition retention by the Debtor, and the existence of any disqualifying claims it might have against the estate; (ii) fails to satisfy the Second Circuit's requirements for the *nunc pro tunc* effectiveness of ECMS's proposed

---

[10] That paragraph states:

> In determining the amount of reasonable compensation to be awarded, the Court shall consider, pursuant to 11 U.S.C. § 330(a)(3), the nature, extent, and the value of such services, taking into account all relevant factors, including: (a) the time spent on such services, (b) the rates charged for such services, (c) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title, (d) whether the services were performed within a reasonable time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed, and (e) whether the compensation is reasonable, based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title. *See* 11 U.S.C. § 330(A)-(E).

ECMS Interim Fee Application ¶ 19.

14

employment; and (iii) fails to demonstrate the reasonableness of the compensation terms for retention under section 328(a) of the Bankruptcy Code.

WHEREFORE, the United States Trustee respectfully requests that the Court deny the Application, and grant such other relief as is just and proper.

Dated: August 8, 2022
      New York, New York

                              Respectfully submitted,

                              WILLIAM K. HARRINGTON
                              UNITED STATES TRUSTEE, Region 2

                        By:   *s/ Annie Wells*
                              Annie Wells
                              Trial Attorney
                              Office of the United States Trustee
                              201 Varick Street, Room 1006
                              New York, New York 10014
                              Tel. (212) 510-0500