**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Hearing Date: September 20, 2022
Hearing Time: 10:00 a.m.

| | |
|---|---|
| In re: | Chapter 11 |
| Alexander Bernard Kaspar, | Case No. 22-10382 |
| Debtor(s). | |

**DEBTORS MOTION FOR AN ORDER APPROVING THE PRIVATE SALE OF THE DEBTOR'S PROPERTY LOCATED AT 33 GILBERT LANE PUTNAM VALLEY NY 10579 FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS, AND GRANTING RELATED RELIEF**

_____

Alexander Kaspar, ("Debtor" & "Debtor in Possession") by and through their attorneys, M. Cabrera & Associates, hereby move (the "Sale Motion") this Court for entry of an order.

The Debtors request entry of an order, substantially in the form attached hereto as **Exhibit "A"** (the "Sales Order") authorizing, approving and directing the sale of 33 Gilbert Lane Putnam Valley, NY 10579 (the "Property").

In support of the Sale Motion, the Debtor relies upon the declaration of Grace De Libero in support of the Sale Motion, the Debtor, by and through his undersigned counsel, respectfully represent as follows:

**RELIEF REQUESTED**

1. By this Sale Motion, the Debtor seeks entry of the Sale Order that will approve the sale of the Property to Manuel Efrain Solis Riera and Gladis Maria Lituma Ordonez and grant related relief.

2. For the reasons set forth herein, the Debtor submits that the relief requested herein is in the best interest of the Debtor, his estate, the creditors, and other parties-in-interest, and therefore, should be granted.

**JURISIDICTION AND VENUE**

3.   This Court has jurisdiction to consider this Sale Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). Venue of these cases and this Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.   The legal predicates for the relief requested herein are sections 105, 363, 365, 503, and 507 of title 1 of the United States Code (the "Bankruptcy Code"), Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 6004-1 of the Local Rules (the "Local Bankruptcy Rules") for the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") and the Guidelines for the Conduct of Assets Sales promulgated by General Order M-383 of the Bankruptcy Court (the "Sale Guidelines").

**BACKGROUND**

I.   **The Chapter 11 Case**

1.   On March 28, 2022 ("Petition Date") the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor is an individual and is managing its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. Neither the Debtor nor any other entity has requested the appointment of a trustee and no trustee, examiner, or statutory committee has been appointed.

2.   A motion to extend the automatic stay was filed on April 18, 2022, and after discussions with the only opposing party opposing the motion, the stay was extended until for ninety days.

3.   On May 19, 2022, Matthew M. Cabrera and M. Cabrera & Associates, PC was approved by the Court as counsel for the Debtor.

4.   The stay was extended again by stipulation dated July 26, 2022.

5. To date, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") has not appointed a creditor's committee in the Chapter 11 case, nor has any trustee or examiner been appointed therein.

6. Prior to the filing of the bankruptcy the Debtor via Grace De Libero marketed the Property. In the Debtor's prior bankruptcy, the Debtor received several offers on the property.

7. After the filing of the Debtor's current bankruptcy, the Debtor continued to keep the property open for offers but focused mainly upon on offer that was made in the prior bankruptcy.

8. The amount offered in the prior bankruptcy was less, but the potential buyer appeared interested in raising his offer, the issue was what amount additional was needed to satisfy the outstanding amount owed on the property.

9. During the Debtor's last bankruptcy, counsel for the Debtor opened negotiations with Specialized Loan Servicing LLC ("SLS") regarding a short payoff of the amount owed on the property.

10. After the filing of the current bankruptcy, Debtor's counsel once again reached out to counsel for SLS and renewed the negotiations regarding a short payoff.

11. After numerous communications with counsel for SLS, on June 8, 2022, SLS offered to accept a short payoff in the amount of $415,000.00 for the property. The Debtor accepted the short payoff amount.

12. After verifying with SLS the amount needed to satisfy the outstanding amount owed, the Debtor relayed the amount necessary to purchase the property to the buyer.

13. The Debtor received and accepted from Manuel Efrain Solis Riera and Gladis Maria Lituma Ordonez (the "Buyers" or "Mr. Riera and Ms. Ordonez") an offer of $415,000.00.

**II.    The Proposed Transaction**

14. Alexander Kaspar and Grace De Libero ("Ms. De Libero") seek to sell the Property to Manuel Efrain Solis Riera and Gladis Maria Lituma Ordonez for $415,000.00. Both the Debtor and the Buyers have had extensive discussions concerning the sale. The purchase price is the amount approved by SLS as the short payoff amount and will be sufficient to pay any and all encumbrances that may be attached to the Property including any Permitted Post-Closing Encumbrances and Assumed Liabilities, if any.

15. The Debtor wishes to sell the property to resolve the ongoing foreclosure action.

### III. The Debtor's Marketing and Sales Efforts

16. The prior appraisal value of the Property at the beginning of the Debtor's first bankruptcy was determined to be $105,000.00 and the Debtor sought to obtain a purchase price in the neighborhood of $200,000.00.

17. During discussions with SLS in the Debtor's prior bankruptcy, it a determined by SLS that the value of the property was increasing over the course of the bankruptcy.

18. The Debtor believed that SLS was conducting valuations of the Property and the Debtor and agreed with the opinion of SLS and the value of the Property was increased to $350,000.00.

19. The Debtor was now seeking over $400,000.00 for the property.

20. During the prior bankruptcy, Ms. De Libero sent out direct and indirect mailings to other brokers (and asked them to consider directly adding the listings to their sites) and the Properties were indirectly marketed on various brokers sites via syndication through the MLS.

21. In the prior bankruptcy, the Debtor and Ms. De Libero received some initial offers to purchase the property, but none that would satisfy the ever-increasing value of the Property.

22. After confirming with SLS the amount they would accept, the Debtor went back to one buyer that was still interested in the Property at the end of the Debtor's prior bankruptcy and

confirmed that they were still interested in the Property and whether or not they would agree to raise their prior offer to the amount being requested by SLS. The Buyers agreed to increase their offer to the $415,000.00 so as to satisfy the short payoff amount.

23. The Debtor accepted the offer received from the Buyers.

24. The purchase agreement was signed by all parties dated August 1, 2022 - **See Exhibit "B"**.

25. A deposit of $20,750.00 was received by the Frank De Esso, the Debtor's real estate attorney who handled the closing of the properties in the Debtor's last bankruptcy and is being held until the closing is conducted.

**IV. Extraordinary Provisions under the Sale**

26. The proposed Sale Order and the Sale Agreement contain the following items that may be considered Extraordinary Provisions under the Sale:

- **Requested Findings as to Successor Liability:** The proposed Sale Order provides that the transfer of the Property to Mr. Riera and Ms. Ordonez, will not subject Mr. Riera and Ms. Ordonez or any of its affiliates or designees to any liability whatsoever that arises prior to the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, any theory of antitrust, successor, transferee, derivative, or vicarious liability or any similar theory and/or applicable state or federal law or otherwise.

- **Sale Free and Clear:** The Property shall be transferred free and clear of all encumbrances (other than Permitted Post-Closing Encumbrances and Assumed Liabilities) to the fullest extent permitted by Bankruptcy Code section 363.

- **Relief from Bankruptcy Rule 6004(h):** The Debtors seek relief from the 14-day stay imposed by Bankruptcy Rule 6004(h).

- **Provisions of the Sale:** The purchase price for the Property is $415,000.00. The Deposit given was $20,750.00. The sale is subject to the contingencies as set forth in the Purchase Agreement. The Debtor shall retain its own closing attorney and make the necessary retention application for the attorney to be approved by Order of the Court, if necessary. There is no relationship between the Debtor and the Buyer.

- **Private Sale:** The Property is being sold without a bidding auction or process. The Property was appraised and marketed for over ninety days on the MLS by a Real Estate Broker. The Debtor received several offers and attempted to obtain offers at or above the asking price when multiple offers were presented. The purchase prices currently accepted were the maximum amount the Debtor was likely to receive when taking into consideration the current market at the time.

**BASIS FOR RELIEF AND APPLICABLE AUTHORITY**

27. The Debtor submits that application of the section 363(b) standard for sales outside of the ordinary course of a debtor's business is met here. Section 363(b) of the Bankruptcy Code provides, in relevant part: "The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Bankruptcy Code section 363(b)(1). This Court's power under Bankruptcy Code section 363 is supplemented by Bankruptcy Code

section 105(a), which provides in relevant part: "The Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Bankruptcy Code section 105(a). As set forth below, the Debtors submit they have satisfied the requirements of Bankruptcy Code sections 105, 363, and 365 as those sections have been construed by courts in the Second Circuit.

28. A Debtors should be authorized to sell assets outside of the ordinary course of business pursuant to section 363 of the Bankruptcy Code and prior to obtaining a confirmed plan of reorganization if it demonstrates a sound business purpose for doing so. *See, e.g., Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143-45 (2d Cir. 1992) (holding that a judge reviewing a section 363(b) application must find from the evidence presented a good business reason to grant such application); *see, e.g., Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 387 (2d Cir. 1997); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070-71 (2d Cir. 1983); *In Bos. Generating, LLC*, 440 B.R. 302, 322 (Bankr. S.D.N.Y. 2010); *In re Glob. Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989).

29. It has been the intention of the Debtor to obtain a reduction of the first mortgage in an attempt to maximize the value of the Property. The attempted negotiations with the first mortgage holder proved to be fruitful and an overall savings of over $600,000.00 was achieved. The Debtor has come to decision that a sale at this point with Mr. Riera and Ms. Ordonez for the amount will maximize any value to be obtained from the Property and provide satisfaction to the first mortgage holder. The Debtor has articulated a clear business justification for entering into the Sale. The Debtor has determined in their best judgment that a sale of the Property, will

maximize value and is in the best interests of the Debtor, any creditors, the estate, and any other parties-in-interest

30. Once a court has determined there is a sound business justification for a sale outside of a plan, the court must also determine that (i) the debtor(s) have provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the Buyer is proceeding in good faith. See *In re Gen. Motors Corp.*, 407 B.R. 463, 493-94 (Bankr. S.D.N.Y. 2009); *In re Betty Owens Sch.*, No. 96 Civ. 3576 (PKL), 1997 U.S. Dist. LEXIS 5877, at *14 (S.D.N.Y. Apr. 16, 1997); *Polvay v. B.O. Acquisitions, Inc.* (In re Betty Owens Sch., Inc.), No. 96 Civ. 3576 (PKL), 1997 WL 188127, at *4 (S.D.N.Y. Apr. 17, 1997).

31. As set forth above adequate notice was provided to all interested parties during the listing period of the property that lasted over three months. The sale price is fair and reasonable. The Debtor has entertained offers from several potential buyers going back over a year, eventually settling on the offer that appears at this time the most likely to succeed and result in a sale closing.

32. Bankruptcy Code section 363(f) permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable non-bankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is in bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest. See Bankruptcy Code section 363(f). Because Bankruptcy Code section 363(f) is stated in the disjunctive, satisfaction of any one of its five requirements will suffice to warrant approval of the proposed sale. *See Scherer v. Fed. Nat'l Mortg. Ass'n (In re Terrace Chalet Apartments, Ltd.*), 159 B.R. 821, 825 (N.D. Ill. 1993) (sale extinguishes liens under section 363(f) as long as one of the five specified exceptions applies).

33. Here, the Debtors submit that Bankruptcy Code sections 363(f)(2)(3) and (5) are met. First, all parties known to have asserted a lien or other encumbrance on the Property will receive notice of the Sale. To the extent they have not objected by the Sale Motion Objection Deadline, they will be deemed to consent to the Sale free and clear of all encumbrances (other than Permitted Post-Closing Encumbrances and Assumed Liabilities). The Debtor proposes to sell the Property in a commercially reasonable manner and expects that the value of the proceeds from the sale or will fairly reflect the value of the property sold. Second, the Debtor further proposes that upon the closing, any party with a lien or other encumbrance shall have a corresponding security interest in the proceeds of the Sale, as such liens and encumbrances will attach to the proceeds of the Sale with the same validity, priority, and force and effect as such encumbrance had immediately prior to the closing of the Sale. In addition, all such persons could be compelled to accept money satisfaction for their interests. As such, the requirements of section 363(f) of the Bankruptcy Code would be satisfied for the sale of the Property free and clear of all encumbrances (other than Permitted Post-Closing Encumbrances and Assumed Liabilities)

34. The Debtor submits that it is appropriate to sell the Property free and clear of successor liability relating to the Property. Such limitations on successor liability ensure that Mr. Riera and Ms. Ordonez are protected from any claims or lawsuits premised on the theory that Mr. Riera and Ms. Ordonez are successors in interest to the Debtor's Estate. If such relief is not granted, the purpose of an order purporting to authorize the transfer of assets free and clear of encumbrances (other than Permitted Post-Closing Encumbrances and Assumed Liabilities) would be frustrated by the potential for claimants to thereafter use the transfer as a basis to assert claims against a buyer arising from a seller's pre-sale conduct. Moreover, without such assurances, the Debtor would run the risk that any potential purchaser would offer a reduced purchase price.

35. Courts have consistently held that a buyer of a debtor's assets pursuant to a Bankruptcy Code section 363 sale takes free and clear from successor liability relating to the debtor's business. *See, e.g., In Matter of Motors Liquidation Co.*, No. 15-2844-BK(L), 2016 WL 3766237 (2d Cir. July 13, 2016), *12, *13 ("We agree that successor liability claims can be 'interests' when they flow from a debtor's ownership of transferred assets" and holding that "a bankruptcy court may approve a § 363 sale 'free and clear' of successor liability claims if those claims flow from the debtor's ownership of the sold assets. Such a claim must arise from a (1) right to payment (2) that arose before the filing of the petition or resulted from pre-petition conduct fairly giving rise to the claim"); *In re Chrysler LLC*, 405 B.R. 84, 111 (Bankr. S.D.N.Y. 2009) ("[I]n personam claims, including any potential state successor or transferee liability claims against New Chrysler, as well as in rem interests, are encompassed by section 363(f) and are therefore extinguished by the Sale."); *Contrarian Funds, LLC v. Westpoint Stevens, Inc.* (*In re Westpoint Stevens, Inc.*), 333 B.R. 30, 50 (S.D.N.Y. 2005) ("Where . . . a sale is to be free and clear of existing liens and interests other than those of the estate, one or more of the criteria specified in section 363(f) of the statute must also be met."), rev'd in part on other grounds, 600 F.3d 231 (2d Cir. 2010)

36. Moreover, this Court's authority under Bankruptcy Code section 363 is supplemented by section 105(a) of the Bankruptcy Code, which provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." Bankruptcy Code section 105(a); *see 2 Collier on Bankr*. ¶ 105.01 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2016); *see also Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir. 1994) ("[B]ankruptcy courts are courts of equity, empowered to invoke equitable principles to achieve fairness and justice in the reorganization process."); *Croton River Club, Inc. v. Half Moon Bay*

*Homeowners Ass'n (In re Croton River Club, Inc.*), 52 F.3d 41, 45 (2d Cir. 1995) (holding that bankruptcy courts have broad equity power to manage the affairs of debtors); *Chinichian v. Campolongo (In re Chinichian*), 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); *Volvo White Truck Corp. v. Chambersburg Beverage, Inc. (In re White Motor Credit Corp.*), 75 B.R. 944, 948 (Bankr. N.D. Ohio 1987) ("Authority to conduct such sales [free and clear of claims] is within the court's equitable powers when necessary to carry out the provisions of Title 11.")

37.  For these reasons, Mr. Riera and Ms. Ordonez should not be liable under any theory of successor liability relating to the Property, but instead, should hold the Property free and clear of Encumbrances (other than Permitted Post-Closing Encumbrances and Assumed Liabilities) including successor liability claims.

38.  Bankruptcy Code section 363(m) provides in relevant part that the reversal or modification on appeal of an authorization under section 363(b) of a sale or lease of property does not affect the validity of a sale or lease under such authorization to a buyer who bought or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal. See Bankruptcy Code section 363(m). "Although the Bankruptcy Code does not define the meaning of 'good-faith buyer,' . . . most courts have adopted a traditional equitable definition: 'one who purchases the assets for value, in good faith and without notice of adverse claims.'" *In re Gucci*, 126 F.3d at 390 (citation omitted). The Second Circuit held that "[t]he 'good faith' component of the test under § 363(m) speaks 'to the equity of [the bidder's] conduct in the course of the sale proceedings. Typically, the misconduct that would destroy a purchaser's good faith status at a judicial sale involves fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to

take grossly unfair advantage of other bidders.'" *In Kabro Assocs. Of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978) (interpreting Bankruptcy Rule 805, the precursor to section 363(m))).

## **IMMEDIATE RELIEF IS NECESSARY**

39. The Debtor requests that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtor seeks in this Motion is necessary for the Debtor to pursue resolution of the foreclosure action and to preserve the value of the Estate. Accordingly, the Debtor respectfully requests that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## **RESERVATION OF RIGHTS**

40. Nothing in this Motion should be construed as (a) authority to assume or reject any executory contract or unexpired lease of real property, or as a request for the same; (b) an admission as to the validity, priority, or character of any claim or other asserted right or obligation, or a waiver or other limitation on the Debtors' ability to contest the same on any ground permitted by bankruptcy or applicable non-bankruptcy law; (c) a promise to pay any claim; (d) granting third-party-beneficiary status or bestowing any additional rights on any third party; or (e) being otherwise enforceable by any third party.

## **NOTICE**

41. Notice of this Motion will be given to: (a) the U.S. Trustee, (b) Mr. Riera and Ms. Ordonez, (c) counsel to Specialized Loan Servicing, (d) New York State Department of Taxation

and Finance, (e) the Internal Revenue Service, (f) the parties included on the Debtors' consolidated list of their 20 largest unsecured creditors, (g) all entities known or reasonably believed to have asserted a lien, encumbrance, claim, or other interest in the Property known to the Debtor, and (h) all parties entitled to notice pursuant to Local Bankruptcy Rule 9013-1(b). The Debtors submit that no other or further notice is required.

## NO PRIOR REQUEST

42.    No previous request for the relief sought herein has been made to this Court or any other court.

## CONCLUSION

WHEREFORE, the Debtor respectfully requests that the Court grant the relief required herein and enter a Sale Order after a Sale Hearing, substantially in the form annexed hereto, granting the relief requested herein and for such other and further relief as this Court may deem just and proper.

>M. Cabrera & Associates, P.C.
>Attorneys for the Debtors and Debtors in Possession
>
>By: */s/ Matthew M. Cabrera*
>Matthew M. Cabrera, Esq.
>2002 Route 17M, Suite 12
>Goshen, New York 10924
>(845) 531-5474

Dated: August 30, 2022