# EXHIBIT B

# RESIDENTIAL CONTRACT OF SALE

*Jointly Prepared by the Real Property Section of the New York State Bar Association, the New York State Land Title Association, the Committee on Real Property Law of the Association of the Bar of the City of New York and the Committee on Real Property Law of the New York County Lawyers' Association. (11/00)*

## CONSULT YOUR LAWYER BEFORE SIGNING THIS CONTRACT.

**NOTE: FIRE AND CASUALTY LOSSES AND CONDEMNATION.** This contract form does not provide for what happens in the event of fire, or other casualty loss or condemnation before the title closing. Unless different provision is made in this contract, Section 5-1311 of the General Obligations Law will apply. One part of that law makes a Purchaser responsible for fire and casualty loss upon taking possession of the Premises before the title closing.

**WARNING: PLAIN LANGUAGE.** No representation is made that this form of contract for the sale and purchase of real estate complies with Section 5-702 of the General Obligations Law ("Plain Language").

**CONTRACT OF SALE** made as of            **August 1, 2022**                                between

    **Alexander Kaspar and Grace DeLibero**
Address: **245 East 72nd Street, Apt. PHA , New York , New York 10021**

Social Security Number/Fed. I. D. No(s):                                                hereinafter called "Seller" and

    **Manuel Efrain Solis Riera and** Gladis Maria Lituma Ordonez
Address: **7 Van Cortlandt Place , Cordlandt Manor, New York 10567**

Social Security Number/Fed. I. D. No(s):                                                hereinafter called "Purchaser."

**The parties hereby agree as follows:**

**1.     Premises.** Seller shall sell and convey and Purchaser shall purchase the property, together with all buildings and improvements thereon (collectively the "Premises"), more fully described on a separate page marked "Schedule A," annexed hereto and made a part hereof and also known as:

Street Address: **33 Gilbert Lane , Putnam Valley , New York 10579**

Tax Map Designation: **Section 83., Block 1, Lot(s) 11**

Together with Seller's ownership and rights, if any, to land lying in the bed of any street or highway, opened or proposed, adjoining the Premises to the center line thereof, including any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Premises by reason of change of grade of any street or highway. Seller shall deliver at no additional cost to Purchaser, at Closing (as hereinafter defined), or thereafter, on demand, any documents that Purchaser may reasonably require for the conveyance of such title and the assignment and collection of such award or damages.

**2.     Personal Property.** This sale also includes all fixtures and articles of personal property now attached or appurtenant to the Premises, unless specifically excluded below. Seller represents and warrants that at Closing they will be paid for and owned by Seller, free and clear of all liens and encumbrances, except any existing mortgage to which this sale may be subject. They include, but are not limited to, plumbing, heating, lighting and cooking fixtures, chandeliers, bathroom and kitchen cabinets and counters, mantels, door mirrors, switch plates and door hardware, venetian blinds, window treatments, shades, screens, awnings, storm windows, storm doors, window boxes, mail box, TV aerials, weather vane, flagpole, pumps, shrubbery, fencing, outdoor statuary, tool shed, dishwasher, washing machine, clothes dryer, garbage disposal unit, range, oven, built-in microwave oven, refrigerator, freezer, air-conditioning equipment and installations, wall-to-wall carpeting and built-ins not excluded below. (*strike out inapplicable items*).

Excluded from this sale are furniture and household furnishings and

**3.  Purchase Price.** The purchase price is                                                                                          $        **415,000.00**
payable as follows:

(a)  on the signing of this contract, by Purchaser's good check payable to the Escrowee (as hereinafter defined), subject to
collection, the receipt of which is hereby acknowledged, to be held in escrow pursuant to paragraph 6 of this contract (the
"Downpayment"):                                                                                                                          $          20,750.00

~~(b)   by allowance for the principal amount unpaid on the existing mortgage on the date hereof, payment of which Purchaser
shall assume by joinder in the deed:~~                                                                                                   $

~~(c)   by a purchase money note and mortgage from Purchaser to Seller:~~                                                                 $

(d)   balance at Closing in accordance with paragraph 7:                                                                                 $        394,250.00

_GDL_

_AK_

~~**4.**   **Existing Mortgage.** *(Delete if inapplicable)* If this sale is subject to an existing mortgage as indicated in paragraph 3(b) above:~~
~~(a)   The Premises shall be conveyed subject to the continuing lien of the existing mortgage, which is presently payable, with
interest at the rate of                              percent per annum, in monthly installments of $                              which include principal,
interest and escrow amounts, if any, and with any balance of principal being due and payable on~~
~~(b)   To the extent that any required payments are made on the existing mortgage between the date hereof and Closing which
reduce the unpaid principal amount thereof below the amount shown in paragraph 3(b), then the balance of the price payable at
Closing under paragraph 3(d) shall be increased by the amount of the payments of principal. Seller represents and warrants that the
amount shown in paragraph 3(b) is substantially correct and agrees that only payments required by the existing mortgage will be
made between the date hereof and Closing.~~
~~(c)   If there is a mortgagee escrow account, Seller shall assign it to Purchaser, if it can be assigned, and in that case Purchaser
shall pay the amount in the escrow account to Seller at Closing.~~
~~(d)   Seller shall deliver to Purchaser at Closing a certificate dated not more than 30 days before Closing signed by the holder
of the existing mortgage, in form for recording, certifying the amount of the unpaid principal, the date to which interest has been
paid and the amounts, if any, claimed to be unpaid for principal and interest, itemizing the same. Seller shall pay the fees for
recording such certificate. If the holder of the existing mortgage is a bank or other institution as defined in Section 274-a of the Real
Property Law it may, instead of the certificate, furnish a letter signed by a duly authorized officer, employee or agent, dated not more
than 30 days before Closing, containing the same information.~~
~~(e)   Seller represents and warrants that (i) Seller has delivered to Purchaser true and complete copies of the existing mortgage,
the note secured thereby and any extensions and modifications thereof, (ii) the existing mortgage is not now, and at the time of
Closing will not be, in default, and (iii) the existing mortgage does not contain any provision that permits the holder of the mortgage
to require its immediate payment in full or to change any other term thereof by reason of the sale or conveyance of the Premises.~~

~~**5.**   **Purchase Money Mortgage.** *(Delete if inapplicable)* If there is to be a purchase money mortgage as indicated in paragraph
3(c) above:~~
~~(a)   The purchase money note and mortgage shall be drawn by the attorney for Seller in the form attached or, if not, in the
standard form adopted by the New York State Land Title Association. Purchaser shall pay at Closing the mortgage recording tax,
recording fees and the attorney's fees in the amount of $                              for its preparation.~~
~~(b)   The purchase money note and mortgage shall also provide that it is subject and subordinate to the lien of the existing
mortgage and any extensions, modifications, replacements or consolidations of the existing mortgage, provided that (i) the interest
rate thereof shall not be greater than                              percent per annum and the total debt service thereunder shall not be greater than
$                              per annum, and (ii) if the principal amount thereof shall exceed the amount of principal owing and unpaid on the
existing mortgage at the time of placing such new mortgage or consolidated mortgage, the excess be paid to the holder of such
purchase money mortgage in reduction of the principal thereof. The purchase money mortgage shall also provide that such payment
to the holder thereof shall not alter or affect the regular installments, if any, of principal payable thereunder and that the holder
thereof will, on demand and without charge therefor, execute, acknowledge and deliver any agreement or agreements further to
effectuate such subordination.~~

**6.**   **Downpayment in Escrow.** (a) Seller's attorney ("Escrowee") shall hold the Downpayment in escrow in a segregated bank
account at   **Orange Bank & Trust Company**
Address:   **212 Dolson Avenue , Middletown , New York 10940**
until Closing or sooner termination of this contract and shall pay over or apply the Downpayment in accordance with the terms of
this paragraph. Escrowee shall hold the Downpayment in a(n)    **non**    interest-bearing account for the benefit of the parties. If
interest is held for the benefit of the parties, it shall be paid to the party entitled to the Downpayment and the party receiving the
interest shall pay any income taxes thereon. If interest is not held for the benefit of the parties, the Downpayment shall be placed in
an IOLA account or as otherwise permitted or required by law. The Social Security or Federal Identification numbers of the parties
shall be furnished to Escrowee upon request. At Closing, the Downpayment shall be paid by Escrowee to Seller. If for any reason
Closing does not occur and either party gives Notice (as defined in paragraph 25) to Escrowee demanding payment of the
Downpayment, Escrowee shall give prompt Notice to the other party of such demand. If Escrowee does not receive Notice of

objection from such other party to the proposed payment within 10 business days after the giving of such Notice, Escrowee is hereby authorized and directed to make such payment. If Escrowee does receive such Notice of objection within such 10 day period or if for any other reason Escrowee in good faith shall elect not to make such payment, Escrowee shall continue to hold such amount until otherwise directed by Notice from the parties to this contract or a final, nonappealable judgment, order or decree of a court. However, Escrowee shall have the right at any time to deposit the Downpayment and the interest thereon with the clerk of a court in the county in which the Premises are located and shall give Notice of such deposit to Seller and Purchaser. Upon such deposit or other disbursement in accordance with the terms of this paragraph, Escrowee shall be relieved and discharged of all further obligations and responsibilities hereunder.

    (b)   The parties acknowledge that, Escrowee is acting solely as a stakeholder at their request and for their convenience and that Escrowee shall not be liable to either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee. Seller and Purchaser jointly and severally (with right of contribution) agree to defend (by attorneys selected by Escrowee), indemnify and hold Escrowee harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrowee's duties hereunder, except with respect to actions or omissions taken or suffered by Escrowee in bad faith or in willful disregard of this contract or involving gross negligence on the part of Escrowee.

    (c)   Escrowee may act or refrain from acting in respect of any matter referred to herein in full reliance upon and with the advice of counsel which may be selected by it (including any member of its firm) and shall be fully protected in so acting or refraining from acting upon the advice of such counsel.

    (d)   Escrowee acknowledges receipt of the Downpayment by check subject to collection and Escrowee's agreement to the provisions of this paragraph by signing in the place indicated on the signature page of this contract.

    (e)   Escrowee or any member of its firm shall be permitted to act as counsel for Seller in any dispute as to the disbursement of the Downpayment or any other dispute between the parties whether or not Escrowee is in possession of the Downpayment and continues to act as Escrowee.

    (f)   The party whose attorney is Escrowee shall be liable for loss of the Downpayment.

7.   **Acceptable Funds.** All money payable under this contract, unless otherwise specified, shall be paid by:

    (a)   Cash, but not over $1,000.00;

    (b)   Good certified check of Purchaser drawn on or official check issued by any bank, savings bank, trust company or savings and loan association having a banking office in the State of New York, unendorsed and payable to the order of Seller, or as Seller may otherwise direct upon reasonable prior notice (by telephone or otherwise) to Purchaser;

    (c)   As to money other than the purchase price payable to Seller at Closing, uncertified check of Purchaser up to the amount of $ 500.00      ; and

    (d)   As otherwise agreed to in writing by Seller or Seller's attorney.

~~8.   **Mortgage Commitment Contingency.** *(Delete paragraph if inapplicable. For explanation, see Notes on Mortgage Commitment Contingency Clause.)*~~

~~(a) The obligation of Purchaser to purchase under this contract is conditioned upon issuance, on or before _____ days after a fully executed copy of this contract is given to Purchaser or Purchaser's attorney in the manner set forth in paragraph 25 or subparagraph 8(j) (the "Commitment Date"), of a written commitment from an Institutional Lender pursuant to which such Institutional Lender agrees to make a first mortgage loan, other than a VA, FHA or other governmentally-insured loan, to Purchaser, at Purchaser's sole cost and expense, of $_____ for a term of at least _____ years (or such lesser sum or shorter term as Purchaser shall be willing to accept) at the prevailing fixed or adjustable rate of interest and on other customary commitment terms (the "Commitment"). To the extent a Commitment is conditioned on the sale of Purchaser's current home, payment of any outstanding debt, no material adverse change in Purchaser's financial condition or any other customary conditions, Purchaser accepts the risk that such conditions may not be met; however, a commitment conditioned on the Institutional Lender's approval of an appraisal shall not be deemed a "Commitment" hereunder until an appraisal is approved (and if that does not occur before the Commitment Date, Purchaser may cancel under subparagraph 8(e) unless the Commitment Date is extended). Purchaser's obligations hereunder are conditioned only on issuance of a Commitment. Once a Commitment is issued, Purchaser is bound under this contract even if the lender fails or refuses to fund the loan for any reason.~~

~~(b) Purchaser shall (i) make prompt application to one or, at Purchaser's election, more than one Institutional Lender for such mortgage loan, (ii) furnish accurate and complete information regarding Purchaser and members of Purchaser's family, as required, (iii) pay all fees, points and charges required in connection with such application and loan, (iv) pursue such application with diligence, and (v) cooperate in good faith with such Institutional Lender(s) to obtain a Commitment. Purchaser shall accept a Commitment meeting the terms set forth in subparagraph 8(a) and shall comply with all requirements of such Commitment (or any other commitment accepted by Purchaser). Purchaser shall furnish Seller with a copy of the Commitment promptly after receipt thereof.~~

~~(c) *(Delete this subparagraph if inapplicable)* Prompt submission by Purchaser of an application to a mortgage broker registered pursuant to Article 12-D of the New York Banking Law ("Mortgage Broker") shall constitute full compliance with the~~

terms and conditions set forth in subparagraph 8(b)(i), provided that such Mortgage Broker promptly submits such application to such Institutional Lender(s). Purchaser shall cooperate in good faith with such Mortgage Broker to obtain a Commitment from such Institutional Lender(s).

(d) If all Institutional Lenders to whom applications were made deny such applications in writing prior to the Commitment Date, Purchaser may cancel this contract by giving Notice thereof to Seller, with a copy of such denials, provided that Purchaser has complied with all its obligations under this paragraph 8.



(e) If no Commitment is issued by the Institutional Lender on or before the Commitment Date, then, unless Purchaser has accepted a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), Purchaser may cancel this contract by giving Notice to Seller within 5 business days after the Commitment Date, provided that such Notice includes the name and address of the Institutional Lender(s) to whom application was made and that Purchaser has complied with all its obligations under this paragraph 8.

(f) If this contract is canceled by Purchaser pursuant to subparagraphs 8(d) or (e), neither party shall thereafter have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser and except as set forth in paragraph 27.

(g) If Purchaser fails to give timely Notice of cancellation or if Purchaser accepts a written commitment from an Institutional Lender that does not conform to the terms set forth in subparagraph 8(a), then Purchaser shall be deemed to have waived Purchaser's right to cancel this contract and to receive a refund of the Downpayment by reason of the contingency contained in this paragraph 8.

(h) If Seller has not received a copy of a commitment from an Institutional Lender accepted by Purchaser by the Commitment Date, Seller may cancel this contract by giving Notice to Purchaser within 5 business days after the Commitment Date, which cancellation shall become effective unless Purchaser delivers a copy of such commitment to Seller within 10 business days after the Commitment Date. After such cancellation neither party shall have any further rights against, or obligations or liabilities to, the other by reason of this contract, except that the Downpayment shall be promptly refunded to Purchaser (provided Purchaser has complied with all its obligations under this paragraph 8) and except as set forth in paragraph 27.

(i) For purposes of this contract, the term "Institutional Lender" shall mean any bank, savings bank, private banker, trust company, savings and loan association, credit union or similar banking institution whether organized under the laws of this state, the United States or any other state; foreign banking corporation licensed by the Superintendent of Banks of New York or regulated by the Comptroller of the Currency to transact business in New York State; insurance company duly organized or licensed to do business in New York State; mortgage banker licensed pursuant to Article 12-D of the Banking Law; and any instrumentality created by the United States or any state with the power to make mortgage loans.

(j) For purposes of subparagraph 8(a), Purchaser shall be deemed to have been given a fully executed copy of this contract on the third business day following the date of ordinary or regular mailing, postage prepaid.

**9.    Permitted Exceptions.** The Premises are sold and shall be conveyed subject to:

(a)    Zoning and subdivision laws and regulations, and landmark, historic or wetlands designation, provided that they are not violated by the existing buildings and improvements erected on the property or their use;

(b)    Consents for the erection of any structures on, under or above any streets on which the Premises abut;

(c)    Encroachments of stoops, areas, cellar steps, trim and cornices, if any, upon any street or highway;

(d)    Real estate taxes that are a lien, but are not yet due and payable; and

(e)    The other matters, if any, including a survey exception, set forth in a Rider attached.

**10.    Governmental Violations and Orders.** (a) Seller shall comply with all notes or notices of violations of law or municipal ordinances, orders or requirements noted or issued as of the date hereof by any governmental department having authority as to lands, housing, buildings, fire, health, environmental and labor conditions affecting the Premises. The Premises shall be conveyed free of them at Closing. Seller shall furnish Purchaser with any authorizations necessary to make the searches that could disclose these matters.

(b)    *(Delete if inapplicable)* All obligations affecting the Premises pursuant to the Administrative Code of the City of New York incurred prior to Closing and payable in money shall be discharged by Seller at or prior to Closing.

**11.    Seller's Representations.** (a) Seller represents and warrants to Purchaser that:

(i)    The Premises abut or have a right of access to a public road;

(ii)    Seller is the sole owner of the Premises and has the full right, power and authority to sell, convey and transfer the same in accordance with the terms of this contract;

(iii)    Seller is not a "foreign person," as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA");

(iv)    The Premises are not affected by any exemptions or abatements of taxes; and

(v)    Seller has been known by no other name for the past ten years, except **None.**

(b)   Seller covenants and warrants that all of the representations and warranties set forth in this contract shall be true and correct at Closing.

(c)   Except as otherwise expressly set forth in this contract, none of Seller's covenants, representations, warranties or other obligations contained in this contract shall survive Closing.

**12.   Condition of Property.** Purchaser acknowledges and represents that Purchaser is fully aware of the physical condition and state of repair of the Premises and of all other property included in this sale, based on Purchaser's own inspection and investigation thereof, and that Purchaser is entering into this contract based solely upon such inspection and investigation and not upon any information, data, statements or representations, written or oral, as to the physical condition, state of repair, use, cost of operation or any other matter related to the Premises or the other property included in the sale, given or made by Seller or its representatives, and shall accept the same "as is" in their present condition and state of repair, subject to reasonable use, wear, tear and natural deterioration between the date hereof and the date of closing (except as otherwise set forth in paragraph 16(e)), without any reduction in the purchase price or claim of any kind for any change in such condition by reason thereof subsequent to the date of this contract. Purchaser and its authorized representatives shall have the right, at reasonable times and upon reasonable notice (by telephone or otherwise) to Seller, to inspect the Premises before Closing.

**13.   Insurable Title.** Seller shall give and Purchaser shall accept such title as **any reputable title insurance or abstract company licensed to do business in the state of New York**

shall be willing to approve and insure in accordance with its standard form of title policy approved by the New York State Insurance Department, subject only to the matters provided for in this contract.

**14.   Closing, Deed and Title.** (a) "Closing" means the settlement of the obligations of Seller and Purchaser to each other under this contract, including the payment of the purchase price to Seller, and the delivery to Purchaser of a **bargain and sale with covenant against grantor's acts** deed in proper statutory short form for record, duly executed and acknowledged, so as to convey to Purchaser fee simple title to the Premises, free of all encumbrances, except as otherwise herein stated. The deed shall contain a covenant by Seller as required by subd. 5 of Section 13 of the Lien Law.

(b)   If Seller is a corporation, it shall deliver to Purchaser at the time of Closing (i) a resolution of its Board of Directors authorizing the sale and delivery of the deed, and (ii) a certificate by the Secretary or Assistant Secretary of the corporation certifying such resolution and setting forth facts showing that the transfer is in conformity with the requirements of Section 909 of the Business Corporation Law. The deed in such case shall contain a recital sufficient to establish compliance with that Section.

**15.   Closing Date and Place.** Closing shall take place at the office of **The Law Office of Frank E. DeEsso, P.C., 41 Joseph Court, Carmel, New York 10512**
at    11:00 a.m.  o'clock on    *See Seller's Rider    or, upon reasonable notice (by telephone or otherwise) by
Purchaser, at the office of    paragraph 19.

**16.   Conditions to Closing.** This contract and Purchaser's obligation to purchase the Premises are also subject to and conditioned upon the fulfillment of the following conditions precedent:

(a)   The accuracy, as of the date of Closing, of the representations and warranties of Seller made in this contract.

(b)   The delivery by Seller to Purchaser of a valid and subsisting Certificate of Occupancy or other required certificate of compliance, or evidence that none was required, covering the building(s) and all of the other improvements located on the property authorizing their use as a **single**
family dwelling at the date of Closing.

(c)   The delivery by Seller to Purchaser of a certificate stating that Seller is not a foreign person, which certificate shall be in the form then required by FIRPTA, or a withholding certificate from the I.R.S. If Seller fails to deliver the aforesaid certificate or if Purchaser is not entitled under FIRPTA to rely on such certificate, Purchaser shall deduct and withhold from the purchase price a sum equal to 10% thereof (or any lesser amount permitted by law) and shall at Closing remit the withheld amount with the required forms to the Internal Revenue Service.

(d)   The delivery of the Premises and all buildings(s) and improvements comprising a part thereof in broom clean condition, vacant and free of leases or tenancies, together with keys to the Premises.

(e)   All plumbing (including water supply and septic systems, if any), heating and air conditioning, if any, electrical and mechanical systems, equipment and machinery in the buildings(s) located on the property and all appliances which are included in this sale being in working order as of the date of Closing.

(f)   If the Premises are a one or two family house, delivery by the parties at Closing of affidavits in compliance with state and local law requirements to the effect that there is installed in the Premises a smoke detecting alarm device or devices.

(g)   The delivery by the parties of any other affidavits required as a condition of recording the deed.

**17.   Deed Transfer and Recording Taxes.** At Closing, certified or official bank checks payable to the order of the appropriate

State, City or County officer in the amount of any applicable transfer and/or recording tax payable by reason of the delivery or recording of the deed or mortgage, if any, shall be delivered by the party required by law or by this contract to pay such transfer and/or recording tax, together with any required tax returns duly executed and sworn to, and such party shall cause any such checks and returns to be delivered to the appropriate officer promptly after Closing. The obligation to pay any additional tax or deficiency and any interest or penalties thereon shall survive Closing.

18. **Apportionments and Other Adjustments; Water Meter and Installment Assessments.** (a) To the extent applicable, the following shall be apportioned as of midnight of the day before the day of Closing:

AK

(i)   taxes, water charges and sewer rents, on the basis of the fiscal period for which assessed; (ii) fuel; ~~(iii) interest on the existing mortgage; (iv) premiums on existing transferable insurance policies and renewals of those expiring prior to Closing; (v) vault charges; (vi) rents as and when collected.~~

GPL

(b)   If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the tax rate for the immediately preceding fiscal period applied to the latest assessed valuation.

(c)   If there is a water meter on the Premises, Seller shall furnish a reading to a date not more than 30 days before Closing and the unfixed meter charge and sewer rent, if any, shall be apportioned on the basis of such last reading.

(d)   If at the date of Closing the premises are affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this contract all the unpaid installments shall be considered due and shall be paid by Seller at or prior to Closing.

(e)   Any errors or omissions in computing apportionments or other adjustments at Closing shall be corrected within a reasonable time following Closing. This subparagraph shall survive Closing.

19. **Allowance for Unpaid Taxes, etc.** Seller has the option to credit Purchaser as an adjustment to the purchase price with the amount of any unpaid taxes, assessments, water charges and sewer rents, together with any interest and penalties thereon to a date not less than five business days after Closing, provided that official bills therefor computed to said date are produced at Closing.

20. **Use of Purchase Price to Remove Encumbrances.** If at Closing there are other liens or encumbrances that Seller is obligated to pay or discharge, Seller may use any portion of the cash balance of the purchase price to pay or discharge them, provided Seller shall simultaneously deliver to Purchaser at Closing instruments in recordable form and sufficient to satisfy such liens or encumbrances of record, together with the cost of recording or filing said instruments. As an alternative Seller may deposit sufficient moneys with the title insurance company employed by Purchaser acceptable to and required by it to assure their discharge, but only if the title insurance company will insure Purchaser's title clear of the matters or insure against their enforcement out of the Premises and will insure Purchaser's Institutional Lender clear of such matters. Upon reasonable prior notice (by telephone or otherwise), Purchaser shall provide separate certified or official bank checks as requested to assist in clearing up these matters.

21. **Title Examination; Seller's Inability to Convey; Limitations of Liability.** (a) Purchaser shall order an examination of title in respect of the Premises from a title company licensed or authorized to issue title insurance by the New York State Insurance Department or any agent for such title company promptly after the execution of this contract or, if this contract is subject to the mortgage contingency set forth in paragraph 8, after a mortgage commitment has been accepted by Purchaser. Purchaser shall cause a copy of the title report and of any additions thereto to be delivered to the attorney(s) for Seller promptly after receipt thereof.

(b)(i)If at the date of Closing Seller is unable to transfer title to Purchaser in accordance with this contract, or Purchaser has other valid grounds for refusing to close, whether by reason of liens, encumbrances or other objections to title or otherwise (herein collectively called "Defects"), other than those subject to which Purchaser is obligated to accept title hereunder or which Purchaser may have waived and other than those which Seller has herein expressly agreed to remove, remedy or discharge and if Purchaser shall be unwilling to waive the same and to close title without abatement of the purchase price, then, except as hereinafter set forth, Seller shall have the right, at Seller's sole election, either to take such action as Seller may deem advisable to remove, remedy, discharge or comply with such Defects or to cancel this contract; (ii) if Seller elects to take action to remove, remedy or comply with such Defects, Seller shall be entitled from time to time, upon Notice to Purchaser, to adjourn the date for Closing hereunder for a period or periods not exceeding 60 days in the aggregate (but not extending beyond the date upon which Purchaser's mortgage commitment, if any, shall expire), and the date for Closing shall be adjourned to a date specified by Seller not beyond such period. If for any reason whatsoever, Seller shall not have succeeded in removing, remedying or complying with such Defects at the expiration of such adjournment(s), and if Purchaser shall still be unwilling to waive the same and to close title without abatement of the purchase price, then either party may cancel this contract by Notice to the other given within 10 days after such adjourned date; (iii) notwithstanding the foregoing, the existing mortgage (unless this sale is subject to the same) and any matter created by Seller after the date hereof shall be released, discharged or otherwise cured by Seller at or prior to Closing.

(c)   If this contract is cancelled pursuant to its terms, other than as a result of Purchaser's default, this contract shall terminate and come to an end, and neither party shall have any further rights, obligations or liabilities against or to the other hereunder or otherwise, except that: (i) Seller shall promptly refund or cause the Escrowee to refund the Downpayment to Purchaser and, unless

cancelled as a result of Purchaser's default or pursuant to paragraph 8, to reimburse Purchaser for the net cost of examination of title, including any appropriate additional charges related thereto, and the net cost, if actually paid or incurred by Purchaser, for updating the existing survey of the Premises or of a new survey, and (ii) the obligations under paragraph 27 shall survive the termination of this contract.

**22.  Affidavit as to Judgments, Bankruptcies, etc.** If a title examination discloses judgments, bankruptcies or other returns against persons having names the same as or similar to that of Seller, Seller shall deliver an affidavit at Closing showing that they are not against Seller.

**23.  Defaults and Remedies.** (a) If Purchaser defaults hereunder, Seller's sole remedy shall be to receive and retain the Downpayment as liquidated damages, it being agreed that Seller's damages in case of Purchaser's default might be impossible to ascertain and that the Downpayment constitutes a fair and reasonable amount of damages under the circumstances and is not a penalty.
(b)  If Seller defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

**24.  Purchaser's Lien.** All money paid on account of this contract, and the reasonable expenses of examination of title to the Premises and of any survey and survey inspection charges, are hereby made liens on the Premises, but such liens shall not continue after default by Purchaser under this contract.

**25.  Notices.** Any notice or other communication ("Notice") shall be in writing and either (a) sent by either of the parties hereto or by their respective attorneys who are hereby authorized to do so on their behalf or by the Escrowee, by registered or certified mail, postage prepaid, or
(b)  delivered in person or by overnight courier, with receipt acknowledged, to the respective addresses given in this contract for the party and the Escrowee, to whom the Notice is to be given, or to such other address as such party or Escrowee shall hereafter designate by Notice given to the other party or parties and the Escrowee pursuant to this paragraph. Each Notice mailed shall be deemed given on the third business day following the date of mailing the same, except that any notice to Escrowee shall be deemed given only upon receipt by Escrowee and each Notice delivered in person or by overnight courier shall be deemed given when delivered, or
(c)  with respect to ¶7(b) or ¶20, sent by fax to the party's attorney. Each Notice by fax shall be deemed given when transmission is confirmed by the sender's fax machine. A copy of each Notice sent to a party shall also be sent to the party's attorney. The attorneys for the parties are hereby authorized to give and receive on behalf of their clients all Notices and deliveries. This contract may be delivered as provided above or by ordinary mail.

**26.  No Assignment.** This contract may not be assigned by Purchaser without the prior written consent of Seller in each instance and any purported assignment(s) made without such consent shall be void.

**27.  Broker.** Seller and Purchaser each represents and warrants to the other that it has not dealt with any real estate broker in connection with this sale other than **NONE**.

("Broker") and Seller shall pay Broker any commission earned pursuant to a separate agreement between Seller and Broker. Seller and Purchaser shall indemnify and defend each other against any costs, claims and expenses, including reasonable attorneys' fees, arising out of the breach on their respective parts of any representation or agreement contained in this paragraph. The provisions of this paragraph shall survive Closing or, if Closing does not occur, the termination of this contract.

**28.  Miscellaneous.** (a) All prior understandings, agreements, representations and warranties, oral or written, between Seller and Purchaser are merged in this contract; it completely expresses their full agreement and has been entered into after full investigation, neither party relying upon any statement made by anyone else that is not set forth in this contract.
(b)  Neither this contract nor any provision thereof may be waived, changed or cancelled except in writing. This contract shall also apply to and bind the heirs, distributees, legal representatives, successors and permitted assigns of the respective parties. The parties hereby authorize their respective attorneys to agree in writing to any changes in dates and time periods provided for in this contract.
(c)  Any singular word or term herein shall also be read as in the plural and the neuter shall include the masculine and feminine gender, whenever the sense of this contract may require it.
(d)  The captions in this contract are for convenience of reference only and in no way define, limit or describe the scope of this contract and shall not be considered in the interpretation of this contract or any provision hereof.
(e)  This contract shall not be binding or effective until duly executed and delivered by Seller and Purchaser.

(f)  Seller and Purchaser shall comply with IRC reporting requirements, if applicable. This subparagraph shall survive Closing.

(g)  Each party shall, at any time and from time to time, execute, acknowledge where appropriate and deliver such further instruments and documents and take such other action as may be reasonably requested by the other in order to carry out the intent and purpose of this contract. This subparagraph shall survive Closing.

(h)  This contract is intended for the exclusive benefit of the parties hereto and, except as otherwise expressly provided herein, shall not be for the benefit of, and shall not create any rights in, or be enforceable by, any other person or entity.

(i)  If applicable, the complete and fully executed disclosure of information on **lead-based paint** and/or lead-based paint hazards is attached hereto and made a part hereof.

*Continued on addendum or rider attached hereto.*

**IN WITNESS WHEREOF**, this contract has been duly executed by the parties hereto.

SELLER:

A.Kaspar
Alexander Kaspar (Jul 28, 2022 20:28 EDT)
By:  **Alexander Kaspar**

PURCHASER:

By:  **Manuel Efrain Solis Riera**

*Social Security No./Fed. I.D. No.*

S. DeLib
Grace DeLibero (Jul 28, 2022 20:25 EDT)
By:  **Grace DeLibero**

*Social Security No./Fed. I.D. No.*

By: **Gladis Maria Lituma Ordonez z**

*Social Security No./Fed. I.D. No.*

*Social Security No./Fed. I.D. No.*

**Attorney for Seller: Frank E. DeEsso, Esq.**
Address:  **The Law Office of Frank E. DeEsso, P.C.**
            **41 Joseph Court**
            **Carmel , New York 10512**
Tel.:  **(845) 228-7040**          Fax:  **(845) 228-7041**
Email:  **deessolaw@gmail.com**

**Attorney for Purchaser: David Kaminsky, Esq.**
Address:  **David Kaminsky & Associates**
            **325 Broadway, Suite 504**
            **New York , New York 10007**
Tel.:  **(212) 571-1227**          Fax:
Email:  **david@davidkaminsky.com**

Receipt of the Downpayment is acknowledged and the undersigned agrees to act in accordance with the provisions of paragraph 6.

The Law Office of Frank E. DeEsso, P.C.

Frank E. DeEsso, Esq.

NOTES ON MODEL MORTGAGE COMMITMENT CONTINGENCY CLAUSE for RESIDENTIAL CONTRACT OF SALE

1. WARNING: the mortgage commitment contingency clause for the Residential Contract of Sale is a bar association form that attempts to provide a mechanism that makes the rights and obligations of the parties clear in sales of residences in ordinary circumstances. It should be reviewed carefully by Seller and Purchaser and their attorneys in each and every transaction to make sure that all the provisions are appropriate for that transaction. Negotiated modifications should be made whenever necessary.

2. Under the clause, the obligation of Purchaser to purchase under the contract of sale is contingent on Purchaser's obtaining a mortgage commitment letter from an Institutional Lender within the number of days specified for the amount specified. This refers to calendar days. Seller's attorney should state his/her calculation of the Commitment Date in the letter delivering the executed contract to Purchaser's attorney, to prevent confusion later. Purchaser should promptly confirm or correct that date. In applying for a loan, Purchaser should inform its lender of the scheduled date of closing in the contract and request that the expiration date of the commitment occur after the scheduled date of closing. Purchaser must comply with deadlines and pursue the application in good faith. The commitment contingency is satisfied by issuance of a commitment in the amount specified on or before the Commitment Date, unless the commitment is conditioned on approval of an appraisal. If the commitment is conditioned on approval of an appraisal and such approval does not occur prior to the Commitment Date, Purchaser should either cancel the contract or obtain an extension of the Commitment Date. If the commitment is later withdrawn or not honored, Purchaser runs the risk of being in default under the contract of sale with Seller.

3. If there are loan terms and conditions that are required or would not be acceptable to Purchaser, such as the interest rate, term of the loan, points, fees or a condition requiring sale of the current home, those terms and conditions should be specified in a rider.

4. This clause assumes that initial review and approval of Purchaser's credit will occur before the commitment letter is issued. Purchaser should confirm with the lender that this is the case before applying for the commitment.

5. If, as has been common, the commitment letter itself is conditioned on sale of Purchaser's home or payment of any outstanding debt or no material adverse change in Purchaser's financial condition, such a commitment will satisfy the contract contingency nonetheless, and Purchaser will take the risk of fulfilling those commitment conditions, including forfeiture of the downpayment if Purchaser defaults on its obligation to close. Under New York case law, a defaulting purchaser may not recover any part of the downpayment, and Seller does not have to prove any damages. If Purchaser is not willing to take that risk, the clause must be modified accordingly.

6. Purchaser may submit an application to a registered mortgage broker instead of applying directly to an Institutional Lender.

7. This clause allows Seller to cancel if a commitment is not accepted by Purchaser by the Commitment Date, unless Purchaser timely supplies a copy of the commitment, to allow Seller the option to avoid having to wait until the scheduled date of closing to see if Purchaser will be able to close. Seller may prefer to cancel rather than to wait and settle for forfeiture of the downpayment if Purchaser defaults. Because of Seller's right to cancel, Purchaser may not waive this contingency clause. This clause means that Purchaser is subject to cancellation by Seller even if Purchaser is willing to risk that he/she will obtain the Commitment after the Commitment Date. Some Purchasers may not want to be subject to such cancellation by Seller.

8. Purchaser may want to add to paragraph 22 that Purchaser's reimbursement should include non-refundable financing and inspection expenses of Purchaser, which should be refunded by Seller if Seller willfully defaults under the contract of sale [alternative: if Seller is unable to transfer title under the contract of sale].

*Joint Committee on the Mortgage Contingency Clause:  Real Property Section of the New York State Bar Association; Real Property Law Committee of the Association of the Bar of the City of New York;  Real Property Committee of the New York County Lawyers Association.*

## DISCLOSURE OF INFORMATION ON LEAD-BASED PAINT
## AND LEAD-BASED PAINT HAZARDS

**Lead Warning Statement**

Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

**Seller's Disclosure** (initial)

_GDL_   _AK_   (a)    Presence of lead-based paint and/or lead-based paint hazards (check one below):
              [  ]    Known lead-based paint and/or lead-based paint hazards are present in the housing (explain).

_____

_GDL_   _AK_   [x]    Seller has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.
              (b)    Records and reports available to the seller (check one below):
              [  ]    Seller has provided the purchaser with all available records and reports pertaining to lead-based
                     paint and/or lead-based paint hazards in the housing (list documents below).

_____

              [x]    Seller has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the
                     housing.

**Purchaser's Acknowledgment** (initial)

_____   (c)    Purchaser has received copies of all information listed above.
_____   (d)    Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*
_____   (e)    Purchaser has (check one below):
         [  ]    Received a 10-day opportunity (or mutually agreed upon period) to conduct a risk assessment or
                inspection for the presence of lead-based paint and/or lead-based paint hazards; or
         [x]    Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based
                paint and/or lead-based paint hazards.

**Agent's Acknowledgment** (initial)

_____   (f)    Agent has informed the seller of the seller's obligations under 42 U.S.C. 4852(d) and is aware of
                his/her responsibility to ensure compliance.

**Certification of Accuracy**

The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

_A. Kaspar_                                          _Grace DeLibero_
Alexander Kaspar (Jul 28, 2022 20:28 EDT)            Grace DeLibero (Jul 28, 2022 20:25 EDT)

Seller **Alexander Kaspar**                Date     Seller **Grace DeLibero**                Date


_____           Date     _____         Date
Agent                                               Agent

_____                    _____
Purchaser **Manuel Efrain SoLis Riera**    Date     Purchaser: Gladis **Maria Lituma Ordonez** Z   Date

                    © 2022 Matthew Bender & Company, Inc., a member of LexisNexis.

**SELLER'S RIDER TO CONTRACT OF SALE**
**BETWEEN**
**ALEXANDER KASPAR AND GRACE DELIBERO, SELLERS**
**AND**
**MANUEL EFRAIN SOLIS RIERA AND MARIA LITUMA**
**ORDONES  PURCHASER**

**DATED:** August 1, 2022

---

1. **CONFLICTS IN PROVISIONS:** In the event of any inconsistencies or conflicts between the terms of the printed portion of this Contract and this Rider, the terms of this Rider shall govern and be binding upon the parties hereto.

2. **DELIVERY OF DEED-FULL COMPLIANCE;** Except as otherwise provided herein, it is specifically understood and agreed by and between the parties hereto that the acceptance and delivery of the Deed at the time of closing of title hereunder shall be deemed to constitute full compliance by the Seller with the terms, covenants and conditions of this Contract to be performed on his/her part.

3. **OTHER PERMITTED EXCEPTIONS:**
Supplementing Paragraph 9 of the printed form:
 (f) Easements and utility easements of record, to the extent that they may be currently in force and effect and may affect the Premises;

 (g) Covenants, reservations, and restrictions of record, to the extent that they may be currently in force and effect and may affect the Premises provided they do not prohibit existing structures or their use and are not violated.

 (h) Agreements and consents of record, to the extent that they may be currently in force and effect and may affect the Premises provided they do not prohibit existing structures or their use;

 (i) Any state of facts which a survey or personal inspection of the Premises would show, provided such state of facts do not render title unmarketable. Any variation between lines of record title, and any fences, hedges, walls, retaining walls and/or driveway(s) shall not be deemed to render title unmarketable.

 (j) This contract is subject to and conditioned upon approval of the bankruptcy court authorizing Sellers to transfer title to subject premises in accordance with the provisions of this Contract and Rider(s)thereto. In the event Sellers are not authorized by the bankruptcy court to transfer subject premises on or before the actual date of closing, then unless an extension of the actual closing date is agreed upon in writing by the parties hereto, then either party may cancel this contract and upon the full refund of Purchaser's down payment, neither party shall have any further right or liability against the other.

4. **CLOSING DATE AND PLACE:** Supplementing paragraph 15 of the printed form Seller and Purchaser agree that if the closing location is outside Westchester, Dutchess, Orange or Seller's counsel's Putnam office, then Purchaser shall pay to Seller's counsel at closing, by

certified or bank check, the sum of Two Hundred Fifty ($250.00) Dollars as an attendance fee.

5. Supplementing Contract of Sale Paragraph 17, Seller shall be responsible to pay the applicable New York State transfer tax Seller and Purchaser agree to execute all documents required in relation to the payment of subject taxes.

6. **TITLE EXAMINATION:**  Purchaser shall order a policy of title insurance for the premises within seven (7) days of the date of this Contract and request that a copy be sent directly to the attorneys for Seller.  Purchaser shall notify Seller, in writing, within ten (10) days of Purchaser's receipt of said title report as to any objections to title as shown in such report.  Delivery pf a title report to Seller's Attorney shall constitute such notice. In the absence of such notification, it will be conclusively presumed that Purchaser has no objection to title.  However, in the event there are any valid objections to this title, Seller shall have a reasonable amount of time within which to remove any such objections.  Seller, however, will not be required to bring any action at law or in equity to remove such objection, and, if Seller cannot remove such objections or if it shall be too costly to remove the same, Seller may cancel this Agreement and return to Purchaser the Down Payment and reimburse Purchasers for Purchasers' title company expenses for the examination of title and any survey costs actually expended and thereafter this Contract shall be null and void and the parties shall have no further obligations hereunder or Purchaser my accept the property as-is.

7. **[INTENTIONALLY OMITTED]**

8. **NO OFFER:** Nothing herein contained shall be deemed an offer on behalf of the Seller and shall in no manner be binding upon the Seller until such time as the Contract is signed by the Seller.

9. **LEAD BASED PAINT:** This contract is contingent upon a risk assessment or inspection of the property for the presence of lead-based paint and/or lead-based paint hazards at the Purchaser's expense until 9 p.m. on the tenth calendar day of the date of this contract.  This contingency will terminate at the above predetermined deadline unless the Purchaser (or Purchaser's agent) delivers to the Seller (or Seller's agent) a written contract addendum listing the specific existing deficiencies and corrections needed, together with a copy of the inspection and/or risk assessment report.  The Seller may, at the Seller's option, within (10) ten days after Delivery of the addendum, elect in writing whether to correct the condition(s) prior to settlement.  If the Seller will correct the condition, the Seller shall furnish the Purchaser with certification from a risk assessor or inspector demonstrating that the condition has been remedied before the date of the settlement.  If the Seller does not elect to make the repairs, or if the Seller makes a counter-offer, the Purchaser shall have (10) ten days to respond to the counter-offer or remove this contingency and take the property in "as is" condition or this contract shall become void.  The Purchaser may remove this contingency at any time without cause.  If Seller is aware of the existence of lead-based paint hazards, same must be disclosed to Purchaser within (10) ten days of the date of this contract.  Seller may opt to cure or either party may cancel this contract with a full refund of Purchaser's down payment. Purchaser shall notify Seller in writing of the results of said inspection within fifteen (15) days of this Contract.  If the inspection is not conducted within the (10) ten-day period, or the Seller is not notified in writing of the results within the (15) fifteen-day period provided above, Purchaser shall have waived its rights under this paragraph.

10. Supplementing the form Contract of Sale, Paragraphs 10, 12 and 16 – Purchaser understands and agrees that they are purchasing subject premises "AS IS" except as otherwise set forth in paragraph 16(e). Sellers make no representation as to the condition of subject premises and shall not be required to take any action or performance to change the existing structure nor will Sellers be required to remove any violation that may exist against subject premises by local, state or federal agencies. However, if subject violation exists, Seller shall cure such violations costing up to **$5,000.00.** If the cost exceeds this amount then. Seller may opt to cure said violation or cancel this Contract with a full refund of Purchasers' down payment and reimburse Purchasers for Purchasers' title company expenses for the examination of title and any survey costs actually expended and neither party shall have any right or liability against the other, except that Purchaser may proceed "as-is" with a credit at closing of $**5,000.00.**

11. Notwithstanding the acceptance of any uncertified funds by the Seller in consideration for the delivery of the Deed herein, said acceptance shall not constitute a waiver of any right under this Contract or shall be construed as an unconditional delivery of the Deed to the Purchaser by the Seller, it being the intention of the parties hereto that the Purchaser shall personally guarantee, as part of Purchaser's consideration hereunder, said uncertified funds to be honored upon presentment to an appropriate bank shall constitute a failure of consideration under this Contract and shall require the Purchaser to tender the Deed back to the Seller on (10) ten days' written notice of that event. This provision shall survive closing of title.

12. Purchasers agree that the Purchasers shall be responsible for the replacement of any checks paid to the Sellers or Escrowee on Sellers' behalf (1) on signing of this contract as down payment monies and (2) at the closing of title for the balance of the purchase price and tax adjustments in the event that any such checks are returned to the Sellers due to insufficient funds or any other reason, whether such checks shall be tendered by the Purchasers, the Purchasers' lending institution or any other party acting on behalf of the Purchasers. The terms of this paragraph shall survive delivery of the deed. All checks shall be drawn to the order of Sellers or to such payees as they shall designate in advance of closing. Sellers will not accept checks which are endorsed over by Purchasers.

13. In the event Purchaser fails to make any payments due under this Contract, fails or refuses to sign any documents required to close title, refuses to pay any costs required by this Contract or fails to keep any promises made by Purchaser pursuant to this Contract, Seller shall provide written notice of Purchaser's failure (also known as a "default"). If Purchaser fails to correct a default within five (5) days after receipt of notice from Seller, Seller may terminate this Contract, and retain the down payment made hereunder as Seller's sole remedy. The amount retained by Seller shall be considered "liquidated damages" based upon an understanding between the parties hereto that Seller will have suffered damages due to the withdrawal of the premises from sale to the general public. The damages suffered by Seller as a result thereof will be substantial, but incapable of determination with mathematical precision. It is, therefore, agreed by the parties that the mount retained by Seller is not a penalty, but rather a mutually beneficial estimate of the damages suffered by Seller. If Seller willfully defaults hereunder, Purchaser shall have such remedies as Purchaser shall be entitled to at law or in equity, including, but not limited to, specific performance.

14. At the closing, all checks payable to the Seller **must** be made payable directly to the Seller or to A person or institution as directed by the Seller, and the Seller will **not** accept any check or money order that is made payable to the Purchaser or someone else and endorsed to the Seller.

15. **NOTICES VIA FAX OR E-MAIL**: Attorneys for both parties agree to accept notices via facsimile or electronic mail.

16. Seller and Purchaser herewith agree to accept electronic and facsimile signatures as true and original.

17. **REAL PROPERTY CONDITION DISCLOSURE**: The parties agree that the Property Condition Disclosure Act set forth in the Real Property Law Section 467 applies to this sale and purchase. Section 465(1) of the Real Property Law provides:

"In the event a Seller fails to perform the duty described in this article to deliver a disclosure statement prior to the signing by the buyer of a binding contract of sale, the buyer shall receive upon the transfer of title a credit of $500.00 (Five Hundred 00/100Dollars) against the agreed upon purchase price of the residential real property." Seller has been counseled by their attorney about the risks and benefits of providing or not providing a Property Condition Disclosure Statement. Seller has elected not to deliver a disclosure statement to the buyer. Seller will give to Purchaser a $500.00 (Five Hundred 00/100 Dollars) credit at closing. Purchaser has agreed to purchase the subject property with the knowledge that in lieu of a Property Condition Disclosure Statement they will receive a $500.00 (Five Hundred 00/100 Dollars) credit at closing. In the event that, prior to the date of this contract, and prior to consultation with their attorney, Seller has prepared a Property Condition Disclosure Statement, that document, whether or not delivered to Purchaser, is considered to be a nullity and Purchaser will not use that document at any time as the basis for a claim against the Seller. This provision will survive delivery of the deed. Purchaser acknowledges that Purchaser has had an opportunity to have the house examined by experts of Purchaser's own selection and are fully familiar with the condition of the subject premises, and the knowledge gained by the Purchaser from such experts and from their own personal inspection of the premises is the only basis on which Purchaser has entered into this contract. No further representations or claims as to the condition of the premises, whether verbal or written, have been made to Purchaser by Seller to induce them to sign this contract.

18. **SHORT SALE:** It is expressly agreed and understood that the total encumbrances against this property plus closing costs payable by seller are in excess of the sale price pursuant to this contract. Inasmuch, as sellers do not have the ability to provide funds to satisfy such liens and expenses to the extent they exceed the purchase price, seller represents that they are making a good faith effort to work out a lesser pay off so they are able to close without the expenditure of additional sums in excess of the purchase price. In the event that seller is unable to receive written verification from the existing mortgage that they will accept the lesser terms as are necessary pursuant hereto within 120 days from the date hereof then either party may cancel, whereupon down payment monies shall be refunded to purchaser and neither party shall have any further liability hereunder.

Purchaser and seller understand that short sale lenders, (a) Are not obligated to accept a short sale; (b) May require the seller to forward any other offers received; and (c) may accept other offers. Short sale lenders may require that in order to obtain their approval for a short sale, some terms of the contract of sale, such as date of the closing, may be amended or the seller may be required to sign a personal note or some other obligation for all or a portion of the amount of the secured debt reduction. Seller and purchaser do not have to agree to any of the short sale lender's proposed terms. The Purchaser understands that in the event the short sale lender is unwilling to release all borrowers from future personal liability on the Note, Seller may opt to cancel this transaction, whereupon the down payment monies shall be returned to Purchaser and neither party shall have any further right or liability against the other. Neither the purchaser, the seller or the broker(s) have control.

over whether the short sale lenders will consent to a short sale or to any act, omission or decision by any short sale lender in the short sale.

Purchaser and seller each acknowledge that they may incur cost and expenditures in connection with this transaction. These costs include but are not limited to payments for loan applications, inspections, appraisal, abstract searches and other reports. If the short sale lender does not approve this transaction, such cost will be the responsibility of the party who incurred them.

The seller has been informed and is aware that a short sale may have credit and legal consequences and may result in taxable income. The seller is advised to seek advice from an attorney, certified public accountant or other expert regarding the potential consequences of the short sale. Seller and purchaser are advised that in the event the Home Equity Theft Prevention Act is applicable to this transaction, that the seller and purchaser shall cooperate and obtain the advice of their respective attorneys to ensure that the transaction complies with the terms and conditions of the act.

Purchaser acknowledges that the seller makes no representations as to the condition of the premises or appliances. The purchaser has completed and has relied solely upon their own property inspection report.

19. Supplementing Residential Contract of Sale Paragraph No. 15, the closing date is hereby changed to on or about (90) ninety days from the fully executed Contract.

20. **BANKRUPTCY APPROVAL:** This contract is subject to and conditioned upon approval of the bankruptcy court authorizing Sellers to transfer title to subject premises and authorizing The Law Office of Frank E. DeEsso, P.C., to represent Seller, in accordance with the provisions of this Contract and Rider(s)thereto. Once Seller obtains bankruptcy court approval to transfer subject premises in accordance herewith, said approval shall be provided to Purchaser's title company for review and Purchaser shall be obligated to proceed with this transaction, provided title is insurable at usual and customary rates. In the event Sellers are not authorized by the bankruptcy court to transfer subject premises on or before the actual date of closing, then unless an extension of the actual closing date is agreed upon in writing by the Sellers herein, then either party may cancel this contract and upon the full refund of Purchaser's down payment, neither party shall have any further right or liability against the other.

Signature Page for Seller's Rider to Contract of Sale – KASPAR/DELIBERO TO SOLIS

Alexander Kaspar (Jul 28, 2022 20:28 EDT)

**ALEXANDER KASPAR,**                    SELLER   **MANUEL EFRAIN SOLIS RIERA, PURCHASER**

SS#: _____                            SS#: _____

Grace Delibero (Jul 28, 2022 20:25 EDT)

**GRACE DELIBERO,**                      SELLER   **MARIA LITUMA ORDONEZ, PURCHASER**
                                                  Gladis

SS#: _____                            SS#: _____

**PURCHASER'S RIDER TO CONTRACT OF SALE BETWEEN MANUEL EFRAIN SOLIS RIERA
AND MARIA LITUMA ORDONEZ AS PURCHASERS AND ALEXANDER KASPAR AND
GRACE DELIBERO AS SELLERS WITH REGARDS TO 33 GILBERT LANE, PUTNAM
VALLEY, NEW YORK 10579**

1.    In the event of any inconsistency between the terms of this Rider and those contained in
the printed form of Contract or the Rider to Contract of Sale, the terms of this Rider shall govern.
All references to "this Contract" herein shall be deemed to mean and refer to the printed form of
Contract of Sale and each Rider attached thereto, collectively.

2.    If two or more persons constitute the Purchaser and/or Seller, the word "Purchaser"
and/or "Seller" shall be construed as if read "Purchasers" and/or "Sellers" whenever the sense of
this agreement so requires.

3.    Purchaser shall have reasonable access on **48-hour notice to Seller on only (2) two
occasions for (2) hours each occasion** of the subject premises for the sole purpose of taking
measurements and contractor access for estimates only.

4.    In the event that the check given as and for the Contract Deposit by the Purchaser upon the
execution of this Contract is dishonored for any reason by the bank upon which it is drawn,
Purchaser shall have 3 business days to replace said check with official check or funds wire.
Purchaser is to pay any bank charges imposed on Seller as a result of a dishonored check.

5.    [INTENTIONALLY OMITTED]

6.    Seller represents that as of the date of this Contract Seller has received no notice and has
no knowledge of any pending or threatened litigation or claim against or concerning Seller, the
subject property and/or the personal Property included in this sale.

7.    This Rider, together with the printed form Contract and any other Riders appended thereto,
may be executed in two or more counterparts, each of which shall be deemed an original, but all
of which together shall constitute one and the same instrument. In addition, facsimile or .pdf
signatures to this documents shall have the same force and effect as "ink" signatures and no "ink"
copy of any facsimile or .pdf signature is required to bind the party signing by facsimile or .pdf to
this document.

8.    [INTENTIONALLY OMITTED]

1

9.    Seller represents that neither Seller nor any tenant and/or occupants of the premises have complained about bed bugs in the Premises within the past twelve (12) months nor have bed bugs been present in the premises within the past twelve (12) months.

10.    Prior to or simultaneous with the Closing, Seller shall deliver to Purchaser all warranties, instructions manuals, service manuals and similar items with respect to the appliances, equipments and systems, including but not limited to, the heating, AC equipment, refrigerator, stove and dishwasher, to the extent that same are available and in Seller's possession.

*AK*

*GDL*

11.    Seller represents that it has obtained or will, prior to closing, obtain all necessary approvals, permits and certificates from the local Buildings Department for any work done by Seller or any previous owner or any other person or entity to the premises.

12.    It shall be a condition of the closing that at the time of closing gas and electric service shall be provided by the appropriate utility company and shall not be interrupted or disrupted for any reason provided the Purchaser has prior to the closing contacted such utility companies and arranged to have new utility accounts established in the Purchaser's name.

13.    At Closing, Seller shall assign to Purchaser any assignable warranties, to the extent they exist, with respect to the Premises or the personal property included in this sale and deliver to Purchaser any plans, surveys, environmental reports, and operating manuals which Seller has for the Premises or the Personal Property.

14.    It is agreed that the Purchaser, at Purchaser's own expense, may have a termite inspection of the premises within (10) days from the date of this Contract and Riders. If such inspection discloses a termite or other wood destroying insect condition, Seller shall repair up to $10,000.00 in such termite and/or insect damage before Seller shall have the right to cancel the contract. If the cost to repair the damage exceeds $10,000.00, Seller may cancel the contract within five (5) days of receipt of the estimate/proposal to repair same when Purchaser elects to accept credit of $10,000.00. If Seller does not timely cancel the contract pursuant to this clause, Seller shall be responsible for the full cost of termite/insect damage repair. Notice of such cancellation must be served upon the attorney for either party in writing. In any event, the Purchaser shall have the right to accept title to the premises subject to the termite or other wood destroying insect condition without any allowances on the purchase price in excess of $10,000.00.

*GDL*

*AK*

15.    Seller agrees to indemnify and hold Purchaser harmless from and against all loss, cost, damage and expense (including reasonable attorneys' fees and expenses) that Purchaser may incur by reason of Seller's failure to promptly file or pay when due any New York City Real Property Transfer Tax or New York State Real Estate Transfer Tax. The provisions of this Paragraph shall survive Closing.

16.    Seller represents that there are no floor or wall discolorations or damages that are currently hidden by furnishings, carpets, wall hangings or other items which could hinder Purchaser's ability to completely view the subject premises. In the event there are such conditions as stated above, Seller is obligated to disclose same to Purchaser, give Purchaser an opportunity to view same prior to closing and Seller shall remedy such conditions to the satisfaction of Purchaser prior to closing.

*GDL*

*AK*

2

~~CGL~~
GDL
~~AK~~

~~17.    The Purchaser, at Purchaser's own expense, may conduct water and radon tests at the~~
premises within ten (10) days from the date of this Contract ~~and if such tests reveal a level of
contaminants or radon that exceeds the local health allowances, Purchaser may cancel this
contract and receive a prompt refund of its contract deposit.~~

18.    At or prior to closing, Seller shall give to Purchaser all available information on any and
all service contracts, including, but not limited to, security systems, lawn/landscaping, HVAC
and fuel systems.

19.    Attorney Authorization to Act

The respective attorneys of the parties are hereby authorized to:

(a)    give any notice which the attorney's client is required for may give under
this contract; and

~~CGL~~
GDL
~~AK~~

~~(b)    agree to stipulations as to extensions, adjournment or changes in any time
periods in this Contract, including, but not limited to, times relative to mortgage contingencies
and to closing dates.~~

20.    Construction

This contract shall be construed without regard to any presumption or other rule
requiring construction against the party causing this contract to be drafted.  If any words or
phrases in this contract shall have been stricken out or otherwise eliminated, whether or not any
other words or phrases have been added, this contract shall be construed as if the words or
phrases so stricken out or otherwise eliminated were never included in this contract and no
implication or inference shall be drawn form the fact that said words or phrases were so stricken
out or otherwise eliminated.

21.    In the event that Purchaser's lender and/or lending institution requests that certain
handwritten changes, strikeouts/cross outs or additions to the contract be initialed or re-executed,
Seller shall promptly cooperate with such requests.

22.    Notwithstanding anything to the contrary contained herein, the parties agree that any
changes or additions in the within contract may be initialed by the respective attorneys for the
parties with the same force and effect as if initialed by the parties and the attorneys may agree to
adjournments in writing.

23.    Notwithstanding anything contained herein to the contrary, in the event that, due to a
force majeure event (as hereinafter defined) affecting purchaser, purchaser's lender, and/or the
title company, purchaser is prevented from closing in accordance with the contract, then such
delay shall not constitute a default by purchaser under the contract and the closing shall be
adjourned until such date as the force majeure event no longer prohibits purchaser from closing
in accordance with the contract. The term "force majeure event" shall mean an event beyond

3

purchaser's control, which prevents purchaser from complying with its obligations, including but not limited to; (a) an act of god (such as, but not limited to, fires, explosions, floods, pandemic (including the "covid-19" virus) or any natural disaster), (b) an act of war, acts or threats of terrorism or civil disorder, (c) strikes, (d) specific incidents of exceptional adverse weather conditions, (e) discontinuation of electrical supply, (f) government shutdown, mass quarantine or suspension of public transportation or (g) any other unforeseeable circumstances beyond the control of the purchaser. The declaration of a national emergency or issuance of a major disaster declaration by the President of the United States, or the declaration of a statewide or countywide disaster emergency by the Governor of the State of New York, covering the geographic area in which the Condominium is located shall be conclusively presumed to constitute a force majeure event. Purchaser expressly agrees that its sole remedy shall be an adjournment of the closing as provided herein, up until 120 days after the proposed closing date herein at which time either purchaser or seller shall have the right to terminate this contract as a result of a force majeure event.

24.    It is a condition of this closing that Purchaser's employment continue through the date of closing and that Purchaser has not been informed in writing prior to closing that Purchaser's employment has been or will be terminated in the future.

25.    Supplementing any reference to "as-is" condition throughout the contract and riders, it is understood that "as-is" means "as-is" as of the date of Contract, and not as of the date of closing. Any change in condition after the date of Contract must be remedied by Seller prior to closing.

1.    If there is more than one Purchaser, in the event that any one of the Purchaser becomes deceased, becomes totally disabled or is diagnosed with a terminal illness at any time prior to the closing, this Contract shall be null and void and Purchaser's estate and/or surviving Purchaser shall be entitled to a refund of the contract deposit.

2.    Seller shall not be required to remove any title defects and/or violations which would require the commencement of any action or proceeding to remove such title defect and/or violations unless the cost of same is less than $5,000.00. If Seller elects not to remove any such title defects and/or violations, Seller shall be deemed unable to transfer the Property in accordance with this Contract, and Purchasers may refuse to close and shall receive a refund of contract deposit. Purchasers may nevertheless elect to close with a credit against the purchase price equal to the amount necessary to remove any such title defect and/or violations not to exceed $5,000.00.

**IN WITNESS WHEREOF**, the parties hereto have executed this Rider to Contract of Sale as of the date first set forth above.

Dated:    July _____, 2022

_____
Alexander Kaspar (Jul 28, 2022 20:28 EDT)
**Alexander Kaspar**
**Seller**

_____
Grace DeLibero (Jul 28, 2022 20:25 EDT)

_____
**Manuel Efrain Solis Riera**
**Purchaser**

_____
Maria

4