UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
:
In re                                          :       Chapter 11
:
ALEXANDER BERNARD KASPAR         :       Case No. 22-10382 (MG)
:
Debtor.               :
:
---------------------------------------------------------- x

# STATEMENT OF THE UNITED STATES TRUSTEE IN RESPONSE TO THIS COURT'S ORDER TO SHOW CAUSE WHY THIS CASE SHOULD NOT BE CONVERTED TO A CASE UNDER CHAPTER 7, OR, ALTERNATIVELY, WHY A CHAPTER 11 TRUSTEE SHOULD NOT BE APPOINTED

William K. Harrington, the United States Trustee for Region 2 (the "United States Trustee") respectfully submits this statement (the "Statement") in response to the Court's *Order to Show Cause Why this Case Should Not be Converted to a Case Under Chapter 7, or, Alternatively, Why a Chapter 11 Trustee Should Not be Appointed* dated 2/16/23 [ECF No. 86] (the "Order to Show Cause").[1] In support of his Statement, the United States Trustee represents:[2]

## STATEMENT

The Court should order the conversion of the above-referenced Chapter 11 Case of Alexander Kaspar, the debtor herein ("Kaspar" or "Debtor") to one under Chapter 7 of the Bankruptcy Code so that an independent fiduciary can be appointed to administer this estate for the benefit of all creditors in a cost-effective manner. The Debtor cannot be allowed to remain as

---

[1] The Court issued the Order to Show Cause following a hearing on the Town of Putnam's *Motion for an Order Pursuant to 11 U.S.C. § 1112(b) Dismissing the Chapter 11 Case With Prejudice* [ECF No. 79] (the "Putnam MTD"). The Debtor opposes the Putnam MTD. *See Debtor's Opposition to Motion to Dismiss* [ECF No. 83].

[2] This Statement is supported by the Declaration of Annie Wells, attached hereto as Exhibit A.

1

debtor-in-possession because the undisputed record shows that he has already violated *two* orders of this Court from his prior chapter 11 case, Case No. 18-36862-CGM (the "Prior Case").

First, the Debtor violated the *Order Approving the Private Sale of Debtor's Right, Title and Interest in Real Property* dated 12/8/21 Case No. 18-36862, ECF No. 292] (the "Sale Order") by improperly disbursing certain sale proceeds that were required to be held in an attorney escrow to fund the cost of remediating the environmental contamination at the Debtor's land property located in Putnam County (the "Putnam Land Parcels").

In the Prior Case, the Debtor sought approval of a private sale of certain portions of the Putnam Land Parcels located at Sprout Brook Road (tax map parcels identified as: 72.19-1-29 & 83-1-1, "Sprout Brook"), to Hudson Highlands Land Trust ("HHL") for the proposed purchase price of $789,000. *See* Case No. 18-36862, ECF No. 282 (Private Sale Motion) ¶ 21. According to the Debtor, (i) Grace DeLibero ("DeLibero"), the Debtor's non-debtor girlfriend and purported 50% co-owner of Sprout Brook, consented to the private sale and to foregoing her share of the sale proceeds, and (ii) $400,000 of the sale proceeds would be escrowed and earmarked for remediation by ECMS[3] (the "Escrowed Proceeds"). *See id.* ¶ 39 ("Ms. DeLibero, the co-owner of the Property and non-Debtor, has agreed and consented to allow the sale in accordance with section 363(h) of the Bankruptcy Code and, as such, she has agreed to forego receipt of her fifty percent (50%) interest from the proceeds of the sale."); *see also* Case No. 18-36862, ECF No. 286 (Debtor's Response to Sale Objection), at 3 ("However, as set forth above, the $251,750 distribution to the co-owner and the $39,900 payment of the real estate broker's

---

[3] Environmental Consulting and Management Services ("ECMS") was retained in the Prior Case as the Debtor's environmental consultant to render remediation services to the Debtor. *See* Case No. 18-36862, ECF No. 223. In this Chapter 11 Case, ECMS was also retained as the Debtor's environmental consultant, over the objections of the United States Trustee (based in part on the lack of disclosure and clarity with respect to the Escrowed Funds and payments to ECMS). *See* ECF No. 67.

2

commission should be included in this calculation, bringing the total proceeds to $432,572.83. From this amount, $400,000.00 will be set aside in escrow to fund the remediation.").

Over the limited objection of the Town of Putnam, the Court ultimately approved the sale of Sprout Brook to HHLT. As relevant here, the Sale Order provided, *inter alia*, that:

> FURTHER ORDERED, that at or as promptly as practical after the closing of the sale, the Debtor shall set aside with his attorney, to be held in his attorney's escrow account, four hundred thousand dollars ($400,000.00), the estimated amount of remediation costs as estimated by Environmental Consulting and Management Services. *These funds are being escrowed for payment of the future remediation costs of parcel 72-1-47. Once approval is obtained from the New York State Department of Environmental Conservation to begin remediation, these funds will be disbursed to the Debtor's DIP account in draws*; and it is
>
> \*    \*    \*
>
> FURTHER ORDERED, that the terms and provisions of this Sale Order and any actions taken pursuant hereto *shall survive entry of an order* which may be entered: (a) confirming any chapter 11 plan in this Chapter 11 case; (b) conversion of this Chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (c) *dismissing this Chapter 11 case*; or (d) pursuant to which this Court abstains from hearing in this Chapter 11 case. The terms and provisions of this Sale Order, notwithstanding the entry of any such orders described in (a)-(d) above, shall continue in this Chapter 11 case, or following dismissal of this Chapter 11 case, it is

Sale Order at 4, 9 (emphasis added).

However, the Escrowed Proceeds were not kept for payment of any future remediation costs following approval from the New York State Department of Environmental Conservation ("NYSDEC"). Instead, counsel for the Debtor ("Counsel") disbursed these funds from the attorney escrow account shortly after the Prior Case was dismissed on February 3, 2022, notwithstanding the fact that the terms of the Sale Order, including the attorney escrow, shall survive dismissal of the Prior Case. Specifically, in response to inquiries from the United States Trustee, Counsel explained that the Escrowed Proceeds were disbursed:

(i)   50% to DeLibero;
(ii)  to Counsel for his legal fees; and
(iii) to Debtor the remainder amount.

3

*See* Wells Declaration ¶¶ 4-5, Exs. 1, 2 (email correspondence).

Disbursement of the Escrowed Proceeds to the Debtor, DeLibero, and to himself for legal fees was itself a violation of the Sale Order. But the disbursements were particularly improper because DeLibero had agreed, as a condition of the sale pursuant to section 363(h) of the Bankruptcy Code, to forego her half interest in the proceeds from the Sprout Brook sale. Moreover, Counsel never filed a final application for his professional fees prior to dismissal of the Prior Case, and the Bankruptcy Court did not authorize any further legal fees or expenses to be paid to Counsel in connection with the Prior Case.

Second, the Debtor also violated this Court's order dated 2/3/23 dismissing the Prior Bankruptcy Case (the "Dismissal Order"). *See* Case No. 18-36862, ECF No. 320. Among other things, the Dismissal Order:

> ORDERED, that *within fourteen days after entry of this Order*, *the Debtor shall file an affidavit of disbursements for each month in the which he did not file an Operating Report* and pay to the United States Trustee quarterly fees under 28 U.S.C. § 1930(a)(6), plus accrued interest under 31 U.S.C. § 3717, due and owing as of the date of dismissal of the case.

Dismissal Order at 1 (emphasis added).

The Debtor did not file the Monthly Operating Report in the Prior Case for the month ending January 2022. Nor did the Debtor file, within 14 days of the entry of the Dismissal Order, an affidavit of disbursement. *See* Wells Declaration ¶¶ 6-7, Ex. 3 (dkt sheet). Following this Court's Order to Show Cause, the Debtor belatedly filed on the docket of the (now closed) Prior Case, an Affidavit of Disbursement for the month of January 2022, at ECF No. 322. *See id.*, Ex. 4 (Affidavit of Disbursement). The January Disbursement shows, among other things, that Counsel had been paid $29,532.60 in January 2022, on account of the fees and expenses

4

approved by the Bankruptcy Court by the *Order Granting Application for Allowance of [Third] Interim Compensation and Reimbursement of Expenses*. *See* Case No. 18-36862, ECF No. 291.[4]

The Debtor's violation of the Sale Order and the Dismissal Order constitutes "cause" for conversion of this Chapter 11 Case to one under Chapter 7 pursuant to section 1112(b)(4) of the Bankruptcy Code. *See* 11 U.S.C. § 1112(b)(4)(E) (cause includes the "failure to comply with an order of the court"). *See also In re Republic, LLC*, No. 18-50631 (JAM), 2018 WL 3203869, at *5 (Bankr. D. Conn. June 26, 2018) ("The statute is written in the singular; thus failure to comply with a single order is sufficient for cause.") (citations omitted); *In re Babayoff*, 445 B.R. 64, 80 (Bankr. E.D.N.Y. 2011) ("Notably, Section 1112(b)(4)(E) does not require that the debtor's failure to comply be willful, or the product of bad faith or fraud.").

Here, conversion of the Chapter 11 Case and the appointment of a Chapter 7 trustee, is preferred over the appointment of a Chapter 11 trustee, as being in the best interest of creditors. The Debtor does not currently have any business or commercial operations for a Chapter 11 trustee to continue or maintain. Conversion of the case would also be more cost-effective, as, among other things, there will be no quarterly U.S. Trustee fees, no costs associated with the proposal, solicitation, and implementation of a plan, and reduced legal fees. A Chapter 7 trustee is empowered, and well-suited to (i) investigate the financial affairs of the Debtor, (ii) evaluate potential and prosecuted avoidance actions against DeLibero and other third-parties (which the Debtor is understandably reluctant to do), (iii) correct and cure any alleged reporting deficiencies

---

[4] The compensation order allowed fees and expenses in the total amount of $29,532.50 covering the nearly one-year interim fee period: 12/7/2020 to 11/1/2021. The amount disbursed by Counsel to himself from the Escrowed Proceeds for legal fees in the amount of $124,500 would presumably have covered the period from 11/2/2021 to 2/3/2022.

5

or non-disclosures,[5] (iv) seek the retention of estate professionals such as special counsel or accountants, (v) examine and object to claims asserted against the estate, as appropriate, and (vi) pursue any asset sales of the Debtor's non-exempt property, including the Putnam Land Parcels, and maximize recoveries for estate creditors. See 11 U.S.C. §§ 327, 704. Undoubtedly, the Chapter 7 Trustee would also have to address remediation of the environmental contamination at the Putnam Land Parcels; but according to the Debtor, ECMS is already familiar with the remediation process and efforts are well underway. See, e.g., *Sudwischer Affidavit in Support of Debtor's Opposition to Putnam's Motion to Dismiss* ¶ 7 ("The Property in question does require remediation to address the removal of material from the site in satisfaction of the violations issued only by NYSDEC. If provided approval, the remediation itself would be quite simple and quick. ECMS is set to oversee and control the plan drafted by ECMS and approved by the NYSDEC.").[6]

## CONCLUSION

In short, the Debtor has not been meeting his obligations as a debtor in possession. He has already violated two orders of this Court and has been less than forthcoming in these proceedings. Further, despite successive chapter 11 filings (neither of which has resulted in any kind of plan being filed) and over a decade of litigation in state court, the Debtor has not been

---

[5] The Town of Putnam contends, *inter alia*, that the Debtor failed to disclose transfers of monies between his DIP bank account and the bank account for Valley View Management (the Debtor's wholly owned business entity), and the details of his relationship with DeLibero and their intertwined tax obligations. See Putnam MTD, at 3-9.

[6] There is some dispute between the parties as to the causes of delay in the remediation work, with ECMS placing the blame on the Town of Putnam. See *id.* ¶ 4 ("As detailed herein, from the outset of my retention by the Debtor and my subsequent interactions with the Town of Putnam Valley and Quaglietta, I cannot recall a project wherein a local governing authority has placed more obstacles to prevent a property owner from taking the necessary actions to complete what should be, a very simple, straightforward, remediation plan."). Regardless, it is plain from the history of the bankruptcy cases and decades-plus state court litigation that there is much animus between the Debtor and the Town of Putnam. It therefore may be more effective and beneficial to all stakeholder for a neutral fiduciary, such as a Chapter 7 trustee, to take over the remediation efforts.

able to remedy the environmental contamination on the Putnam Land Parcels. It is about time that a trustworthy and capable estate fiduciary such as a Chapter 7 trustee is appointed to advance this case and administer the estate's assets for the benefit of creditors in an efficient and transparent manner.

WHEREFORE, the United States Trustee respectfully submits that the Court should convert this Chapter 11 Case to one under Chapter 7, and order such other relief as is just and proper.

Dated: March 2, 2023
New York, New York

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE, Region 2

By: /s/ Annie Wells
Annie Wells
Trial Attorney
Office of the United States Trustee-NY Office
Alexander Hamilton Custom House
One Bowling Green
New York, New York 10004
Tel. (212) 510-0500

7