**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Plaintiff Marianne T. O'Toole, as Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Holly R. Holecek, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 7 |
| ALEXANDER BERNARD KASPAR, | Case No.: 22-10382-mg |
|        Debtor. | |

--------------------------------------------------------------x

| | |
|---|---|
| MARIANNE T. O'TOOLE, solely in her capacity as Chapter 7 Trustee of the Estate of Alexander Bernard Kaspar, | |
| | Adv. Pro. No.: 23-____-mg |
|        Plaintiff, | |
| -against- | |
| M. CABRERA & ASSOCIATES, P.C., MATTHEW M. CABRERA, ESQ., ALEXANDER BERNARD KASPAR, CITYGRACE CORP. a/k/a CITIGRACE CORP, GRACE A. DELIBERO, a/k/a GRACE ANGELA DELIBERO, JOHN DOE "1" THROUGH "100", JANE DOE "1" THROUGH "100", JOHN DOE CORPORATIONS "1" THROUGH "100" AND OTHER JOHN DOE ENTITIES "1" THROUGH "100" | |
|        Defendants. | |

--------------------------------------------------------------x

## <u>COMPLAINT</u>

Plaintiff Marianne T. O'Toole, solely in her capacity as Chapter 7 Trustee ("<u>Plaintiff</u>" or

"<u>Trustee</u>") of the Estate of Alexander Bernard Kaspar ("<u>Debtor</u>") by her undersigned counsel, as

and for her Complaint against defendants M. Cabrera & Associates, P.C. ("<u>Firm</u>"), Matthew M.

Cabrera, Esq. ("<u>Cabrera</u>"), Alexander Bernard Kaspar, CityGrace Corp. a/k/a CitiGrace Corp

("<u>CityGrace</u>"), and Grace A. DiLibero a/k/a Grace Angela DiLibero ("<u>DiLibero</u>") (each a

"Defendant" and collectively "Defendants"), as well as John Doe "1" through "100", Jane Doe

"1" through "100", John Doe Corporations "1" through "100" and Other John Doe Entities "1"

through "100" (collectively, "Unnamed Defendants"), alleges as follows:

## JURISDICTION AND VENUE

1.      This adversary proceeding ("Adversary Proceeding") is brought under 11 U.S.C.

§§ 105, 323, 521, 541, 542, 547, 548, 550 and 551 ("Bankruptcy Code"), Rules 6009 and 7001 of

the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), the general equitable powers of

the United States Bankruptcy Court for the Southern District of New York ("Court"), section 273

of New York Debtor and Creditor Law ("DCL"), and common law.

2.      Since this action arises under the pending Chapter 7 bankruptcy case of the Debtor,

the Court has jurisdiction over this action under 28 U.S.C. §§ 157 and 1334 and Bankruptcy Rules

6009 and 7001.

3.      This action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (K) and

(O).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

5.      Plaintiff consents to the entry of final orders and judgment by this Court if it is

determined that this Court, absent the consent of the parties, cannot enter final orders or judgment

consistent with Article III of the United States Constitution.

## PARTIES

6.      Upon information and belief, Defendant Firm is a professional service corporation

formed under the laws of the State of New Jersey with an address for service of process at 2002

Route 17M, Suite 12, Goshen, New York 10924.

7.      Upon information and belief, Defendant Cabrera is an attorney licensed to practice

law within the State of New Jersey and in this Court.

8.      Upon information and belief, Defendant Cabrera has a place of business at 2002 Route 17M, Suite 12, Goshen, New York 10924.

9.      Upon information and belief, Defendant Debtor is an individual who resides in New York, New York.

10.     Upon information and belief, Defendant Debtor resides with Defendant DiLibero at 245 E. 72nd Street, PH A, New York, New York 10021.

11.     Upon information and belief, Defendant CityGrace is a corporation formed under the laws of the State of New York with an address for service of process at 245 E. 72nd Street, PH A, New York, New York 10021.

12.     Public records reflect that Defendant CityGrace is a licensed real estate brokerage company within the State of New York.

13.     Upon information and belief, Defendant DiLibero is an individual who resides in New York, New York.

14.     Upon information and belief, Defendant DiLibero resides with the Debtor at 245 E. 72nd Street, PH A, New York, New York 10021.

15.     Upon information and belief, Defendant DiLibero is the Debtor's significant other.

16.     Public records reflect that Defendant DiLibero is the Chief Executive Officer of Defendant CityGrace.

17.     The Unnamed Defendants are those currently unknown beneficiaries or additional or subsequent transferees of the Firm Transfers (as defined below), the CityGrace Transfer (as defined below), and/or unknown individuals or entities holding property of the Debtor's estate.

18.     Plaintiff is the Chapter 7 Trustee of the Debtor's estate.

19.     Plaintiff is authorized to assert the claims in this Adversary Proceeding under section 323 of the Bankruptcy Code and Bankruptcy Rule 6009.

**ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF**

**A.     Procedural Background**

20.     On March 28, 2022 ("Filing Date"), a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code was filed on the Debtor's behalf in the Court ("Current Case").

21.     By Order dated May 19, 2022, Defendant Firm was employed as counsel to the Debtor effective as of the Filing Date.

22.     By Order dated March 9, 2023, the Court converted the Debtor's case to a case under Chapter 7 of the Bankruptcy Code as of March 9, 2023 ("Conversion Date").

23.     On March 10, 2023, Marianne T. O'Toole was appointed as the Chapter 7 Trustee of the Debtor's estate.

24.     Marianne T. O'Toole is the permanent Chapter 7 Trustee of the Debtor's estate.

**B.     Factual Background**

**i.     The Prior Chapter 11 Case**

25.     The Debtor is a repeat filer in the Court.

26.     On November 4, 2018 ("Prior Filing Date"), a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code was filed on the Debtor's behalf in the Court ("Prior Chapter 11 Case").

27.     By Order dated July 9, 2019, the Court (J. Morris) approved the employment of defendant Firm as counsel to the Debtor effective as of the Prior Filing Date.

**ii.     The Interim Compensation Awards in the Prior Chapter 11 Case**

28.     By application dated February 11, 2020 ("First Interim Application"), Defendant

4

Firm sought interim compensation for the period November 4, 2018 to January 17, 2020 in the Prior Chapter 11 Case.

29.     By Order dated March 23, 2020, the Court (J. Morris), approved the First Interim Application and awarded Defendant Firm fees of $54,060 and expenses of $2,973.32.

30.     By application dated December 7, 2020 ("Second Interim Application"), Defendant Firm sought interim compensation for the period January 18, 2020 to December 6, 2020 in the Prior Chapter 11 Case.

31.     By Order dated January 27, 2021, the Court (J. Morris), approved the Second Interim Application and awarded Defendant Firm fees of $82,825 and expenses of $1,068.85.

32.     By application dated November 2, 2021 ("Third Interim Application"), Defendant Firm sought interim compensation for the period December 7, 2020 to November 1, 2021 in the Prior Chapter 11 Case.

33.     By Order dated December 8, 2021, the Court (J. Morris), approved the Third Interim Application and awarded Defendant Firm fees of $28,947 and expenses of $585.60.

34.     The docket sheet in the Prior Chapter 11 Case reflects that Defendant Firm did not seek any interim compensation awards for the period November 2, 2021 forward.

35.     The docket sheet in the Prior Chapter 11 Case reflects that Defendant Firm never sought or obtained approval of its compensation on a final basis in the Prior Chapter 11 Case.

**iii.     The Sale Motion and Sale Order in the Prior Chapter 11 Case**

36.     By motion dated November 9, 2021 ("Sale Motion"), the Debtor, through Defendant Firm, sought entry of an Order approving the private sale of the Debtor's estate's interest in the real property located at Sprout Brook Road, Putnam Valley, New York 10579, identified as Tax Map Nos. 72.19-1-29 & 83.1-1 ("Property").

37.     The Sale Motion was signed by Defendant Cabrera.

38.     A proposed Order is annexed to the Sale Motion ("Proposed Sale Order"), which

provides, in pertinent part, as follows:

> FURTHER ORDERED, that at or as promptly as practical after the closing of the sale, the Debtor is authorized and directed to pay from the sale proceeds the reasonable, and ordinary and customary closing costs, including reasonable and customary professional fees directly related to the sale, transfer taxes, delinquent or owing real property taxes on the Property, other fees or costs to be paid by Debtor pursuant to the Purchase Agreement and reasonable title charges; and it is

> FURTHER ORDERED, that at or as promptly as practical after the closing of the sale, the Debtor shall set aside with his attorney, to be held in his attorney's escrow account, four hundred thousand dollars ($400,000.00), the estimated amount of remediation costs as estimated by Environmental Consulting and Management Services. These funds are being escrowed for payment of the future remediation costs of parcel 72-1-47. Once approval is obtained from the New York State Department of Environmental Conservation to begin remediation, these funds will be disbursed to the Debtor's DIP account in draws; and it is

> . . .

> FURTHER ORDERED, that the terms and provisions of this Sale Order and any actions taken pursuant hereto shall survive entry of an order which may be entered: (a) confirming any chapter 11 plan in this Chapter 11 case; (b) conversion of this Chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing this Chapter 11 case; or (d) pursuant to which this Court abstains from hearing in this Chapter 11 case. The terms and provisions of this Sale Order, notwithstanding the entry of any such orders described in (a)-(d) above, shall continue in this Chapter 11 case, or following dismissal of this Chapter 11 case, it is

Case No.: 18-36862-cgm, ECF No. 282-2.

39.     Upon information and belief, the Proposed Sale Order was drafted by Defendant

Cabrera.

40.     A declaration of Defendant DiLibero is annexed to the Sale Motion which provided

that, inter alia, Defendant DiLibero consented to the sale of the Property as a co-owner of the

Property.

41.    The Town of Putnam Valley objected to the Sale Motion.

42.    By response dated December 3, 2021 ("Debtor Response"), the Debtor, through

Defendant Cabrera, replied to the objection of the Town of Putnam Valley to the Sale Motion.

43.    The Debtor Response provides, in pertinent part, as follows:

> In this particular case, the Debtor and co-owner [Defendant DiLibero] both agree
> that the funds are to be deposited in the Estate and set aside in escrow for the
> remediation of the subject contaminated property.
>
> . . .
>
> The sale contract sets forth that there was no involvement of a real estate broker
> with this transaction.
>
> . . .
>
> Environmental Conservation Management Services ("ECMS") was approved by
> the Court to provide consulting, testing and oversee the remediation of the subject
> property. It was ECMS that provided the $400,000.00 estimate for remediation
> costs. . . .The calculations by the Town are misstated and should be disregarded.
> The Town calculates that only $140,922.83 will be available as proceeds of the sale
> after payment of relevant fees and distributions. However, as set forth above, the
> $251,750 distribution to the co-owner and the $39,900 payment of the real estate
> broker's commission should be included in this calculation, bringing the total
> proceeds to $432,572.83. From this amount, $400,000.00 will be set aside in escrow
> to fund the remediation.

Case No.: 18-36862-cgm, ECF No. 286.

44.    The Debtor Response was signed by Defendant Cabrera.

45.    By Order dated December 18, 2022 ("Sale Order"), the Court (J. Morris) approved

the Debtor's sale of the Property.

46.    The Sale Order provides, inter alia, as follows:

> FURTHER ORDERED, that at or as promptly as practical after the closing of the
> sale, the Debtor is authorized and directed to pay from the sale proceeds the
> reasonable, and ordinary and customary closing costs, including reasonable and
> customary professional fees directly related to the sale, transfer taxes, delinquent
> or owing real property taxes on the Property, other fees or costs to be paid by Debtor
> pursuant to the Purchase Agreement and reasonable title charges; and it is

FURTHER ORDERED, that at or as promptly as practical after the closing of the sale, the Debtor shall set aside with his attorney, to be held in his attorney's escrow account, four hundred thousand dollars ($400,000.00), the estimated amount of remediation costs as estimated by Environmental Consulting and Management Services. These funds are being escrowed for payment of the future remediation costs of parcel 72-1-47. Once approval is obtained from the New York State Department of Environmental Conservation to begin remediation, these funds will be disbursed to the Debtor's DIP account in draws; and it is

. . .

FURTHER ORDERED, that the terms and provisions of this Sale Order and any actions taken pursuant hereto shall survive entry of an order which may be entered: (a) confirming any chapter 11 plan in this Chapter 11 case; (b) conversion of this Chapter 11 case to a case under chapter 7 of the Bankruptcy Code; (c) dismissing this Chapter 11 case; or (d) pursuant to which this Court abstains from hearing in this Chapter 11 case. The terms and provisions of this Sale Order, notwithstanding the entry of any such orders described in (a)-(d) above, shall continue in this Chapter 11 case, or following dismissal of this Chapter 11 case, it is

Case No.: 18-36862-cgm, ECF No. 292.

47.     The foregoing paragraphs in the Sale Order were unchanged from the Proposed Sale Order annexed to the Sale Motion.

48.     The Sale Order does not provide for the reimbursement of any sums to Defendant DiLibero.

49.     The Sale Order does not provide for the payment of any sums to Defendant DiLibero.

50.     On January 29, 2022, a notice of consummation of the sale of the Property was filed with the Court ("Sale Notice").

51.     The Sale Notice was signed by Defendant Cabrera.

52.     The Sale Notice provides that the sale of the Property closed on December 28, 2021.

53.     The Closing Statement annexed to the Sale Notice provides for a total purchase of $798,503.31.

54.     The Closing Statement annexed to the Sale Notice provides that the sum of

8

$400,000 was payable to Defendant Cabrera.

55. The Closing Statement annexed to the Sale Notices provides that the sum of $79,800 was payable to Defendant DiLibero and the Debtor for "additional expenses".

56. The bank statement for account ending 397 at TD Bank in the name of "M Cabrera and Associates PC Esc Acct, Matthew M Cabrera Esc Agt" for the period December 1, 2021 to December 31, 2021, a copy of which is annexed as **Exhibit A**, reflects an incoming wire transfer on December 28, 2021 from SMPR Title Agency, Inc. in the amount of $400,000.

57. Upon information and belief, the foregoing wire transfer represents the $400,000 the Debtor was required to set aside with Defendant Firm pursuant to the Sale Order ("Court-Ordered Escrow").

58. The bank statement for account ending 520 at Wells Fargo ("Wells Fargo 520 Account") in the name of Defendant Debtor as a Debtor In Possession for the period December 1, 2021 to December 31, 2021, a copy of which is annexed as **Exhibit B**, reflects an incoming wire transfer on December 29, 2021 from Orange County Trus/Org in the amount of $153,200.68.

59. Upon information and belief, the foregoing wire transfer represents proceeds from the sale of the Property.

**iv.     The Dismissal of the Prior Chapter 11 Case**

60. By motion dated December 18, 2021, the Office of the United States Trustee moved to dismiss or convert the Prior Chapter 11 Case.

61. The Debtor initially opposed the motion of the Office of the United States Trustee, but the opposition was withdrawn at a hearing conducted on February 1, 2022.

62. By Order dated February 3, 2022, the Court (J. Morris) dismissed the Prior Chapter 11 Case.

63.     On February 4, 2022, the Prior Chapter 11 case was closed.

**v.      The Unauthorized Transfers from the Court-Ordered Escrow**

64.     The bank statement for account ending 397 at TD Bank in the name of "M Cabrera and Associates PC Esc Acct, Matthew M Cabrera Esc Agt" for the period February 1, 2022 to February 28, 2022, a copy of which is annexed as **Exhibit C**, reflects an outgoing wire transfer on February 7, 2022 to "Citigrace Corp" in the amount of $276,100 ("CityGrace Transfer").

65.     The CityGrace Transfer was made from funds comprising the Court-Ordered Escrow.

66.     The CityGrace Transfer violated the express terms of the Sale Order.

67.     Upon information and belief, Defendant CityGrace never had an ownership interest in the Property.

68.     The bank statement for account ending 397 at TD Bank in the name of "M Cabrera and Associates PC Esc Acct, Matthew M Cabrera Esc Agt" for the period February 1, 2022 to February 28, 2022, a copy of which is annexed as **Exhibit C**, reflects two transfers to Defendant Firm totaling $124,500.00 (together "Firm Transfers") as follows: (a) the sum of $120,000 by check number 132 dated February 7, 2022 payable to Defendant Firm, with "Kasper" in the Memo; and (b) the sum of $4,500 by check number 133 dated February 7, 2022 payable to Defendant Firm, with "DiLibero" in the Memo.

69.     The Firm Transfers were made from funds comprising the Court-Ordered Escrow.

70.     The Firm Transfers violated the express terms of the Sale Order.

**vi.     The Debtor's Disclosures In The Current Case**

71.     The Current Case was filed less than two months after the Prior Chapter 11 Case was closed. The Current Case was filed in Manhattan rather than Poughkeepsie where the Prior

Chapter 11 Case was filed.

72.     The Debtor's Schedule A/B that was filed on March 28, 2022 reflects, inter alia, a checking account at Wells Fargo with a $2,000 balance.

73.     The Debtor's Schedule A/B that was filed on March 28, 2022 does not reflect the Court-Ordered Escrow.

74.     The Debtor's Schedule A/B that was filed on March 28, 2022 does not reflect any other Deposits of Money.

75.     The Debtor's Statement of Financial Affairs did not disclose the CityGrace Transfer.

76.     The Debtor's Statement of Financial Affairs did not disclose the Firm Transfers.

77.     The Debtor's Statement of Financial Affairs did not disclose the disposition of the Court-Ordered Escrow.

78.     The Debtor's Amended Statement of Financial Affairs did not disclose the CityGrace Transfer.

79.     The Debtor's Amended Statement of Financial Affairs did not disclose the Firm Transfers.

80.     The Debtor's Amended Statement of Financial Affairs did not disclose the disposition of the Court-Ordered Escrow.

**vi.     The Town's Motion**

81.     By motion dated January 24, 2023, creditor Town of Putnam Valley ("Town") moved to dismiss Defendant Debtor's Chapter 11 Case ("Town Motion").

82.     The Debtor submitted opposition to the Town Motion, which opposition was signed by Defendant Cabrera.

83.    Defendant Cabrera submitted an affirmation in opposition to the Town Motion ("Cabrera Affirmation").

84.    The Cabrera Affirmation states that "[f]rom the funds received from the sale . . . $400,000.00 from the Debtor and co-owner's funds was set aside to use toward the remediation[.]" Case No.: 22-10382-mg, ECF No. 83-1 at ¶26.

85.    The Cabrera Affirmation states that "[a]fter the Debtor's bankruptcy was dismissed, the non-debtor co-owner, Ms. DiLibero requested the return of her share of her funds." Case No.: 22-10382-mg, ECF No. 83-1 at ¶54.

86.    The Cabrera Affirmation states that "[a]s counsel, the dilemma was the Order was inconsistent . . . I had a co-owner, who was not my client demanding the return of her funds. My decision was to pay Ms. DeLibero the portion of the funds belonging to her." Case No.: 22-10382-mg, ECF No. 83-1 at ¶55.

87.    The Cabrera Affirmation states that "[t]he Debtor's portion of the escrowed funds, the same were applied toward my attorney's fees, court approved as administrative fees and given priority." Case No.: 22-10382-mg, ECF No. 83-1 at ¶56.

88.    Defendant DiLibero submitted an affidavit in opposition to the Town Motion ("DiLibero Affidavit").

89.    The DiLibero Affidavit states that "I requested that my share of the proceeds from the sale be returned to me." Case No.: 22-10382-mg, ECF No. 83-2 at ¶21.

90.    The DiLibero Affidavit states that "I still have a small portion of the funds that were returned to me from the sale of the original of the Properties [sic]." Case No.: 22-10382-mg, ECF No. 83-2 at ¶24.

91.    Defendant Debtor submitted an affidavit in opposition to the Town Motion

("<u>Debtor Affidavit</u>").

92.     The Debtor Affidavit states that "Ms. DeLibero received a check for two hundred and seventy-six thousand dollars from the escrow account. The remainder of the money was paid to my attorney to satisfy his approved attorney fees after my attorney agreed to discount his fees." Case No.: 22-10382-mg, ECF No. 83-3 at ¶38.

**vii.    <u>The Court's Order to Show Cause</u>**

93.     On February 16, 2023, the Court issued an Order to Show Cause why the Debtor's case should not be converted to a case under Chapter 7 of the Bankruptcy Code or, in the alternatively, why a Chapter 11 Trustee should not be appointed ("<u>OSC</u>").

94.     The Debtor submitted a response to the OSC ("<u>Response</u>").

95.     The Response was signed by Defendant Cabrera.

96.     The Response states that "[t]he closing statement clearly states a wire was sent to Matthew Cabrera, Esq., in the amount of $400,000.00 on December 28, 2021. The funds from the sale of parcel were sent directly into Counsel's escrow account on December 28, 2021, as a wire from SMPR Title Agency (See Exhibit D)." Case No.: 22-10382-mg, ECF No. 90 at ¶37.

97.     The Response states that "[t]he funds stayed in the escrow account for the remainder of December of 2021 and the entire month of January of 2022 and were not released until three disbursements were made after the case was closed in February of 2022 (See Exhibit E)." Case No.: 22-10382-mg, ECF No. 90 at ¶38.

98.     The Response states that "Counsel again acknowledges that the statement regarding the remediation money was unartfully drafted. Without a clear concise detailed plan on how the Court, the Debtor and ECMS would oversee and manage the remediation, it was a mistake to include the statement in the Sale Order." Case No.: 22-10382-mg, ECF No. 90 at ¶43.

99.     On March 9, 2023, the Court entered the Order converting Defendant Debtor's Chapter 11 case to a Chapter 7 case ("Conversion Order").

100.    The Conversion Order provides as follows:

> Having considered the Cabrera Response and the U.S.T. Response, the Court concludes that Kaspar and Cabrera violated the Sale Order entered in Kaspar's prior Chapter 11 case. The Sale Order required that $400,000 in proceeds for the sale of two properties owned by Kaspar be deposited in escrow with Cabrera, with that sum to be used in connection with remediation of environmental contamination on another property owned by Kaspar. (Sale Order at 4.) The Sale Order provided that the terms of the Order survived any order dismissing the Chapter 11 case. (*Id*. at 9.) Instead, upon dismissal of the case on the Motion of the United States Trustee, Cabrera released the escrowed funds, paying a portion of the funds to Kaspar, a portion to Kaspar's partner, and kept a portion of funds in payment of his attorney' fees. None of the funds were used for remediation costs. According to Cabrera, only about $4,000 is deposited in Debtor's DIP account.

Case No.: 22-10382-mg, ECF No. 94.

101.    The Conversion Order is final and non-appealable.

**viii.    The Turnover Demands**

102.    On April 13, 2023, the Trustee examined Defendant Debtor at Bankruptcy Code section 341(a) the meeting of creditors ("341 Meeting").

103.    At the 341 Meeting, the Trustee demanded the turnover of the $400,000 Court-Ordered Escrow from the Debtor.

104.    By letter dated May 25, 2023, a copy of which is annexed as **Exhibit D**, the Trustee reiterated the demand for the turnover of the $400,000 Court-Ordered Escrow from the Debtor.

105.    To date, the Debtor has failed to turn over the $400,000 Court-Ordered Escrow to the Trustee.

106.    To date, no portion of the $400,000 Court-Ordered Escrow has been turned over to the Trustee.

## FIRST CLAIM FOR RELIEF
### (Injunctive Relief)

107.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "106" as if set forth fully herein.

108.    The funds comprising the Court-Ordered Escrow are property of Defendant Debtor.

109.    The funds comprising the Court-Ordered Escrow were used to make the Firm Transfers.

110.    The funds comprising the Court-Ordered Escrow were used to make the CityGrace Transfer.

111.    The estate will suffer irreparable injury if Defendant Firm is permitted to transfer, hypothecate, encumber or otherwise dispose of the Firm Transfers.

112.    The estate will suffer irreparable injury if Defendant CityGrace is permitted to transfer, hypothecate, encumber or otherwise dispose of the CityGrace Transfer.

113.    Plaintiff is likely to prevail on the merits of Plaintiff's claims against Defendants based upon the allegations set forth herein and the facts of this case.

114.    The balance of hardships weighs decidedly in favor of the granting of injunctive relief as the Firm Transfers and CityGrace Transfer were made in violation of the Sale Order.

115.    Consequently, Plaintiff seeks a preliminary injunction and permanent injunction preventing: (a) Defendant Firm and Defendant Cabrera from transferring, hypothecating, encumbering or otherwise disposing of the Firm Transfers; and (b) Defendant CityGrace and Defendant DiLibero from transferring, hypothecating, encumbering or otherwise disposing of the CityGrace Transfer.

116.    Pursuant to section 105 of the Bankruptcy Code, Bankruptcy Rule 7065, and Rule 65 of the Federal Rules of Civil Procedure, the Court may enjoin a party from proceeding with or

continuing with, a course of conduct or practice which depletes, diminishes and/or affects property and/or diminishes the value of those assets or impairs Plaintiff's recovery efforts.

117.    Defendant Firm, Defendant Cabrera, Defendant CityGrace and Defendant DiLibero will not be harmed by the issuance of a temporary injunction because the requested injunctive relief is a necessary step to preserve assets of the Debtor's estate.

118.    By reason of the foregoing, Plaintiff is entitled to an order and judgment granting a preliminary and permanent injunction against Defendant Firm, Defendant Cabrera, Defendant CityGrace and Defendant DiLibero.

## SECOND CLAIM FOR RELIEF
### (Turnover of Property of the Estate- 11 U.S.C. § 542(a))

119.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "118" as if set forth fully herein.

120.    The funds comprising the Court-Ordered Escrow are property of Defendant Debtor.

121.    The Debtor has a legal and equitable interest in the Court-Ordered Escrow.

122.    The Debtor's legal and equitable interest in the Court-Ordered Escrow constitutes property of the estate.

123.    Defendants are in possession, custody or control of property of the estate.

124.    By reason of the foregoing, Plaintiff is entitled to entry of an order and judgment against Defendants, pursuant to sections 541 and 542(a) of the Bankruptcy Code, directing the immediate turnover of Court-Ordered Escrow to the Trustee.

## THIRD CLAIM FOR RELIEF
### (Turnover of Recorded Information - 11 U.S.C. § 542(e))

125.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "124" as if set forth fully herein.

16

126.    As of the Filing Date, the Debtor maintained a legal and equitable interest in the funds comprising the Court-Ordered Escrow.

127.    The Debtor's legal and equitable interest in the Court-Ordered Escrow constitutes property of the estate.

128.    The Firm Transfers were made from funds comprising the Court-Ordered Escrow.

129.    The CityGrace Transfer was made from funds comprising the Court-Ordered Escrow.

130.    By reason of the foregoing, Plaintiff is entitled to entry of an order and judgment pursuant to sections 541, 542(a) and 542(e) of the Bankruptcy Code: (a) against Defendant Firm directing the immediate turnover of all recorded information, including books, documents, records, and papers relating to the Firm Transfers including, but not limited to, the disposition of the funds comprising the Firm Transfers; and (b) against Defendant CityGrace directing the immediate turnover of all recorded information, including books, documents, records, and papers relating to the CityGrace Transfer including, but not limited to, the disposition of the funds comprising the CityGrace Transfer.

## FOURTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty of Escrow Agent)

131.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "130" as if set forth fully herein.

132.    Defendant Cabrera is an attorney licensed to practice law in the State of New Jersey and before this Court.

133.    Defendant Firm served as counsel to Defendant Debtor in the Prior Chapter 11 Case.

134.    Upon information and belief, Defendant Cabrera is the sole proprietor of Defendant

Firm.

135.    Defendant Cabrera prepared the Sale Order.

136.    Defendant Cabrera sought entry of the Sale Order on Defendant Debtor's behalf.

137.    The Sale Order required that $400,000 in proceeds from the sale of the Property be set aside with Defendant Debtor's "attorney, to be held in his attorney's escrow account[.]"

138.    The Sale Order required that the Court-Ordered Escrow be used in connection with remediation of environmental contamination on another property owned by the Debtor.

139.    The Sale Order required that the Court-Ordered Escrow would be disbursed to the Debtor's DIP account in draws once approval was obtained from the New York State Department of Environmental Conservation to begin remediation.

140.    The Sale Order provides that its terms survived any order dismissing Defendant Debtor's Chapter 11 case.

141.    Defendant Cabrera was the escrow agent for the Court-Ordered Escrow.

142.    As escrow agent, Defendant Cabrera owed the Debtor and his creditors a duty of care with respect to the Court-Ordered Escrow.

143.    Within four days of dismissal of the Prior Chapter 11 Case, Defendant Firm or Defendant Cabrera released the Court-Ordered Escrow to Defendant Firm and Defendant CityGrace in violation of the Sale Order.

144.    Defendant Cabrera had a duty not to disburse the Court-Ordered Escrow except upon strict compliance with the Sale Order.

145.    No portion of the Court-Ordered Escrow was disbursed by Defendant Cabrera in accordance with the Sale Order.

146.    No portion of the Court-Ordered Escrow was disbursed by Defendant Firm in

18

accordance with the Sale Order.

147. Defendant Cabrera breached his fiduciary duty as escrow agent by making the CityGrace Transfer.

148. Defendant Cabrera breached his fiduciary duty as escrow agent by making the Firm Transfers.

149. Defendant Cabrera breach of his fiduciary duty harmed the Debtor's estate and its creditors.

150. By reason of the foregoing, Plaintiff is entitled to entry of an order and judgment against Defendant Cabrera and Defendant Firm: (a) adjudging that Defendant Firm and Defendant Cabrera breached their fiduciary duties owed to the Debtor and his creditors; (b) awarding damages in favor of Plaintiff and against Defendant Cabrera and Defendant Firm in an amount not less than $400,000, representing the amount of the Court-Ordered Escrow; (c) ordering the disgorgement of all compensation paid to Defendant Firm from the Court-Ordered Escrow; and (d) awarding punitive damages against Defendant Cabrera and Defendant Firm to punish and deter others from the wrongful conduct alleged herein.

## FIFTH CLAIM FOR RELIEF
### (Aiding and Abetting Breach of Fiduciary Duty of Escrow Agent)

151. Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "150" as if set forth fully herein.

152. Within four days of dismissal of the Prior Chapter 11 Case, Defendant Firm or Defendant Cabrera released the Court-Ordered Escrow to Defendant Firm and Defendant CityGrace in violation of the Sale Order.

153. Defendant Cabrera had a duty not to disburse the Court-Ordered Escrow except upon strict compliance with the Sale Order.

154.    No portion of the Court-Ordered Escrow was disbursed by Defendant Cabrera in accordance with the Sale Order.

155.    No portion of the Court-Ordered Escrow was disbursed by Defendant Firm in accordance with the Sale Order.

156.    Defendant Cabrera breached his fiduciary duty as escrow agent by making the CityGrace Transfer.

157.    Defendant Cabrera breached his fiduciary duty as escrow agent by making the Firm Transfers.

158.    Upon information and belief, Defendant DiLibero directed the payment of the CityGrace Transfer to Defendant CityGrace.

159.    Upon information and belief, Defendant DiLibero had knowledge of the Sale Order.

160.    Upon information and belief, Defendant DiLibero had knowledge of the Court-Ordered Escrow.

161.    Upon information and belief, Defendant DiLibero had knowledge of the provisions in the Sale Order relating to the Court-Ordered Escrow.

162.    Defendant DiLibero knowingly induced or participated in the breach of fiduciary duty and substantially assisted the breach of fiduciary duty by requesting payment from the Court-Ordered Escrow.

163.    Upon information and belief, Defendant Debtor caused or authorized the Firm Transfers from the Court-Ordered Escrow.

164.    Upon information and belief, Defendant Debtor had knowledge of the Sale Order.

165.    Upon information and belief, Defendant Debtor had knowledge of the Court-Ordered Escrow.

20

166.    Upon information and belief, Defendant Debtor had knowledge of the provisions in the Sale Order relating to the Court-Ordered Escrow.

167.    Defendant Debtor knowingly induced or participated in the breach of fiduciary duty and substantially assisted the breach of fiduciary duty by causing or authorizing the Firm Transfers.

168.    By reason of the foregoing, Plaintiff is entitled to entry of an order and judgment against Defendant DiLibero and Defendant Debtor: (a) adjudging Defendant DiLibero and Defendant Debtor liable for aiding and abetting Defendant Cabrera's breach of fiduciary duty; (b) awarding damages in favor of Plaintiff and against Defendant DiLibero and Defendant Debtor in an amount not less than $400,000, representing the amount of the Court-Ordered Escrow; and (c) awarding punitive damages against Defendant DiLibero and Defendant Debtor to punish and deter others from the wrongful conduct alleged herein.

## SIXTH CLAIM FOR RELIEF
### (Negligence of Escrow Agent)

169.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "168" as if set forth fully herein.

170.    As escrow agent, Defendant Cabrera owed the Debtor and his creditors a duty of care with respect to the Court-Ordered Escrow.

171.    Defendant Cabrera had a duty not to disburse the Court-Ordered Escrow except upon strict compliance with the Sale Order.

172.    Within four days of dismissal of the Prior Chapter 11 Case, Defendant Firm or Defendant Cabrera released the Court-Ordered Escrow to Defendant Firm and Defendant CityGrace in violation of the Sale Order.

173.    No portion of the Court-Ordered Escrow was disbursed by Defendant Cabrera in accordance with the Sale Order.

21

174.    No portion of the Court-Ordered Escrow was disbursed by Defendant Firm in accordance with the Sale Order.

175.    Defendant Cabrera breached his fiduciary duty as escrow agent by making the CityGrace Transfer.

176.    Defendant Cabrera breached his fiduciary duty as escrow agent by making the Firm Transfers.

177.    Defendant Cabrera's violation of the Sale Order was knowing.

178.    Defendant Cabrera did not act in good faith with respect to the Court-Ordered Escrow.

179.    Defendant Cabrera's conduct with respect to the Court-Ordered Escrow was a departure from the ordinary standard of care of an escrow agent.

180.    Defendant Cabrera's conduct with respect to the Court-Ordered Escrow was negligent.

181.    By reason of the foregoing, Plaintiff is entitled to entry of an order and judgment against Defendant Cabrera and Defendant Firm: (a) adjudging that Defendant Cabrera was negligent; (b) awarding damages in favor of Plaintiff and against Defendant Cabrera and Defendant Firm in an amount not less than $400,000, representing the amount of the Court-Ordered Escrow; and (c) ordering the disgorgement of all compensation paid to Defendant Firm from the Court-Ordered Escrow.

## SEVENTH CLAIM FOR RELIEF
### (Legal Malpractice)

182.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "181" as if set forth fully herein.

183.    As counsel to the Debtor, Defendant Cabrera owed the Debtor a duty of care to

exercise the skills and knowledge ordinarily possessed by a member of the legal profession experienced in such matters and to exercise reasonable care, prudence and diligence of its professional obligations.

184.    Within four days of dismissal of the Prior Chapter 11 Case, Defendant Firm or Defendant Cabrera released the Court-Ordered Escrow to Defendant Firm and Defendant CityGrace in violation of the Sale Order.

185.    No portion of the Court-Ordered Escrow was disbursed by Defendant Cabrera in accordance with the Sale Order.

186.    No portion of the Court-Ordered Escrow was disbursed by Defendant Firm in accordance with the Sale Order.

187.    Defendant Cabrera failed to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession.

188.    Defendant Cabrera's failure to exercise the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession was not a reasonable error in professional judgment.

189.    Defendant Cabrera failed to exercise reasonable care in representing the Debtor with respect to the Court-Ordered Escrow.

190.    As a result of the negligence of Defendant Cabrera, the Debtor sustained damages of not less than $400,000.

191.    By reason of the foregoing, Plaintiff is entitled to entry of an order and judgment against Defendant Cabrera and Defendant Firm: (a) adjudging that Defendant Firm and Defendant Cabrera were negligent; (b) awarding damages in favor of Plaintiff and against Defendant Cabrera in an amount not less than $400,000, representing the amount of the Court-Ordered Escrow; and

23

(c) ordering the disgorgement of all compensation paid to Defendant Firm from the Court-Ordered

Escrow.

## EIGHTH CLAIM FOR RELIEF
### (Avoidance and Recovery of Preferential Transfers– 11 U.S.C. §§547 & 550)

192.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through

"191" as if set forth fully herein.

193.    Plaintiff brings this Eighth Claim for Relief following reasonable due diligence in

the circumstances of this case.

194.    The funds comprising the Court-Ordered Escrow are property of Defendant Debtor.

195.    Each of the Firm Transfers was made from the Court-Ordered Escrow.

196.    Each of the Firm Transfers was made within ninety (90) days of the Filing Date.

197.    Upon information and belief, each of the Firm Transfers was made to Defendant

Firm while the Debtor was insolvent.

198.    Each of the Firm Transfers was made to or for the benefit of Defendant Firm within

the meaning of section 547(b)(1) of the Bankruptcy Code because the Firm Transfers either

reduced or fully satisfied a debt or debts then owed by the Debtor to Defendant Firm.

199.    Each of the Firm Transfers was made on account of an antecedent debt owed by

the Debtor to Defendant Firm.

200.    Defendant Firm was a creditor of the Debtor at the time each of the Firm Transfers

was made.

201.    Upon information and belief, as a result of the Firm Transfers, Defendant Firm

received more than it would have otherwise received if: (a) the Firm Transfers had not been made;

and (b) Defendant Firm received payment of the debt(s) underlying the Firm Transfers under the

provisions of the Bankruptcy Code.

24

202.    In accordance with the foregoing, the Firm Transfers are avoidable pursuant to section 547(b) of the Bankruptcy Code.

203.    Pursuant section 550(a) of the bankruptcy Code, the recovery of property for the benefit of Debtor's estate is authorized to the extent avoided under section 547 of the Bankruptcy Code.

204.    By reason of the foregoing, pursuant to sections 547, 550 and 551 of the Bankruptcy Code, Plaintiff is entitled to entry of an order and judgment against Defendant Firm: (a) avoiding and setting aside the Firm Transfers; and (b) recovering from Defendant Firm an amount equal to the Firm Transfers, plus interest at the maximum legal rate and costs.

<u>NINTH CLAIM FOR RELIEF</u>
**(Avoidance and Recovery of Fraudulent Transfer – 11 U.S.C. §§548 & 550)**

205.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "204" as if fully set forth herein.

206.    The funds comprising the Court-Ordered Escrow are property of Defendant Debtor.

207.    The CityGrace Transfer was made from the Court-Ordered Escrow.

208.    The CityGrace Transfer was made within two (2) years of the Filing Date.

209.    Upon information and belief, the Debtor was insolvent as of the date of the CityGrace Transfer, or became insolvent as a result of the CityGrace Transfer.

210.    Upon information and belief, the Debtor was engaged, or about to engage, in business or a transaction for which any property remaining with the Debtor or for whose benefit the CityGrace Transfer was made was an unreasonably small capital.

211.    The Debtor intended to incur, or believed it would incur, debts beyond his ability to pay upon maturity.

25

212.    By reason of the foregoing, pursuant to sections 548(a)(1)(B), 550 and 551 of the Bankruptcy Code, Plaintiff is entitled to entry of an order and judgment against Defendant CityGrace: (a) avoiding and setting aside the CityGrace Transfer; and (b) recovering from Defendant CityGrace an amount equal to the CityGrace Transfer, plus interest at the maximum legal rate and costs.

## TENTH CLAIM FOR RELIEF
### (Avoidance and Recovery of Fraudulent Transfer – 11 U.S.C. §§548 & 550)

213.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "212" as if fully set forth herein.

214.    The funds comprising the Court-Ordered Escrow are property of Defendant Debtor.

215.    The CityGrace Transfer was made from the Court-Ordered Escrow.

216.    The CityGrace Transfer was made in violation of the Sale Order.

217.    CityGrace had no ownership interest in the Property.

218.    The CityGrace Transfer was made within two (2) years of the Filing Date.

219.    At the time of the CityGrace Transfer, the Debtor knew, or should have known, that his creditors held claims against him.

220.    The CityGrace Transfer was made on behalf of the Debtor with the intent to hinder, delay, or defraud the Debtor's creditors.

221.    The CityGrace Transfer constitutes a fraudulent transfer under section 548(a)(1)(A) of the Bankruptcy Code.

222.    By reason of the foregoing, pursuant to sections 548(a)(1)(A), 550 and 551 of the Bankruptcy Code, Plaintiff is entitled to entry of an order and judgment against Defendant CityGrace: (a) avoiding and setting aside the CityGrace Transfer; and (b) recovering from

Defendant CityGrace an amount equal to the CityGrace Transfer, plus interest at the maximum

legal rate and costs.

## ELEVENTH CLAIM FOR RELIEF
### (Avoidance and Recovery of Fraudulent Transfer
– New York Debtor Creditor Law 273(a)(1))

223.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through

"222" as if fully set forth herein.

224.    The funds comprising the Court-Ordered Escrow are property of Defendant Debtor.

225.    The CityGrace Transfer was made from the Court-Ordered Escrow.

226.    The CityGrace Transfer was made in violation of the Sale Order.

227.    CityGrace had no ownership interest in the Property.

228.    The CityGrace Transfer was made within two (2) years of the Filing Date.

229.    At the time of the CityGrace Transfer, the Debtor knew, or should have known, that

his creditors held claims against him.

230.    The CityGrace Transfer was made on behalf of the Debtor with the intent to hinder,

delay, or defraud the Debtor's creditors.

231.    The CityGrace Transfer constitutes a fraudulent transfer in violation of section 273

(a)(1) of the DCL.

232.    Under sections 544(b) and 550 of the Bankruptcy Code, and section 273 of the

DCL, the Plaintiff may avoid the CityGrace Transfer.

233.    By reason of the foregoing, pursuant to sections 544(b) and 550 of the Bankruptcy

Code, and section 273(a)(1) of the DCL, Plaintiff is entitled to entry of an order and judgment

against Defendant CityGrace: (a) avoiding and setting aside the CityGrace Transfer; and (b)

recovering from Defendant CityGrace an amount equal to the CityGrace Transfer, plus interest at the maximum legal rate and costs.

## TWELFTH CLAIM FOR RELIEF
### (Avoidance and Recovery of Fraudulent Transfer
– New York Debtor Creditor Law 273(a)(2))

234.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "233" as if fully set forth herein.

235.    The funds comprising the Court-Ordered Escrow are property of Defendant Debtor.

236.    The CityGrace Transfer was made from the Court-Ordered Escrow.

237.    The CityGrace Transfer was made in violation of the Sale Order.

238.    CityGrace had no ownership interest in the Property.

239.    The CityGrace Transfer was made within two (2) years of the Filing Date.

240.    At the time of the CityGrace Transfer, the Debtor knew, or should have known, that his creditors held claims against him.

241.    Upon information and belief, the Debtor did not receive reasonably equivalent value in exchange for the CityGrace Transfer.

242.    Upon information and belief, at the time of the CityGrace Transfer, the Debtor was engaged or was about to be engaged in a business or transaction for which the remaining assets of the Debtor were unreasonable small in relating to the business or transaction.

243.    Upon information and belief, at the time of the CityGrace Transfer, the Debtor intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

244.    The CityGrace Transfer constitutes a fraudulent transfer in violation of section 273 (a)(2) of the DCL.

245.    Under sections 544(b) and 550 of the Bankruptcy Code, and section 273 of the DCL, the Plaintiff may avoid the CityGrace Transfer.

246.    By reason of the foregoing, pursuant to sections 544(b) and 550 of the Bankruptcy Code, and section 273(a)(2) of the DCL, Plaintiff is entitled to entry of an order and judgment against Defendant CityGrace: (a) avoiding and setting aside the CityGrace Transfer; and (b) recovering from Defendant CityGrace an amount equal to the CityGrace Transfer, plus interest at the maximum legal rate and costs.

### THIRTEENTH CLAIM FOR RELIEF
**(Avoidance and Recovery of Preferential Transfer– 11 U.S.C. §§547 & 550)**

247.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "106" as if set forth fully herein.

248.    To the extent the CityGrace Transfer was made on account of an antecedent debt, Plaintiff alternatively brings this Thirteenth Claim for Relief following reasonable due diligence in the circumstances of this case.

249.    The funds comprising the Court-Ordered Escrow are property of Defendant Debtor.

250.    The CityGrace Transfer was made from the Court-Ordered Escrow.

251.    The CityGrace Transfer was made within ninety (90) days of the Filing Date.

252.    Upon information and belief, the CityGrace Transfer was made to Defendant CityGrace while the Debtor was insolvent.

253.    To the extent the CityGrace Transfer was made on account of an antecedent debt, the CityGrace Transfer was made to or for the benefit of Defendant CityGrace within the meaning of section 547(b)(1) of the Bankruptcy Code because the CityGrace Transfer either reduced or fully satisfied a debt or debts then owed by the Debtor to Defendant CityGrace.

29

254.    To the extent the CityGrace Transfer was made on account of an antecedent debt, Defendant CityGrace was a creditor of the Debtor at the time the CityGrace Transfer was made.

255.    Upon information and belief, to the extent the CityGrace Transfer was made on account of an antecedent debt, Defendant CityGrace received more than it would have otherwise received if: (a) the CityGrace Transfer had not been made; and (b) Defendant CityGrace received payment of the debt(s) underlying the CityGrace Transfer under the provisions of the Bankruptcy Code.

256.    In accordance with the foregoing, the CityGrace Transfer is avoidable pursuant to section 547(b) of the Bankruptcy Code.

257.    Pursuant section 550(a) of the bankruptcy Code, the recovery of property for the benefit of Debtor's estate is authorized to the extent avoided under section 547 of the Bankruptcy Code.

258.    By reason of the foregoing, pursuant to sections 547, 550 and 551 of the Bankruptcy Code, Plaintiff is alternatively entitled to entry of an order and judgment against Defendant CityGrace: (a) avoiding and setting aside the CityGrace Transfer; and (b) recovering from Defendant CityGrace an amount equal to the CityGrace Transfer, plus interest at the maximum legal rate and costs.

## FOURTEENTH CLAIM FOR RELIEF
### (Monies Had and Received)

259.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "258" as if set forth fully herein.

260.    Defendant Firm received the Firm Transfers.

261.    The Firm Transfers were made from funds comprising the Court-Ordered Escrow.

262.    The funds constituting the Firm Transfers are property of the Debtor's estate.

263.    Pursuant to the express terms of the Sale Order, Defendant Firm had no entitlement to the Court Ordered Escrow.

264.    Defendant Firm is not entitled to retain the Firm Transfers.

265.    By reason of the foregoing, Plaintiff is entitled to entry of an order and judgment against Defendant Firm: (a) avoiding and setting aside the Firm Transfers; and (b) recovering from Defendant Firm an amount equal to the Firm Transfers, plus interest at the maximum legal rate and costs.

## FIFTEENTH CLAIM FOR RELIEF
### (Monies Had and Received)

266.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "265" as if set forth fully herein.

267.    Defendant CityGrace received the CityGrace Transfer.

268.    The CityGrace Transfer was made from funds comprising the Court-Ordered Escrow.

269.    The funds constituting the CityGrace Transfer are property of the Debtor's estate.

270.    Pursuant to the express terms of the Sale Order, Defendant CityGrace had no entitlement to the Court Ordered Escrow.

271.    Defendant CityGrace is not entitled to retain the CityGrace Transfer.

272.    By reason of the foregoing, Plaintiff is entitled to entry of an order and judgment against Defendant CityGrace: (a) avoiding and setting aside the CityGrace Transfer; and (b) recovering from Defendant CityGrace an amount equal to the CityGrace Transfer, plus interest at the maximum legal rate and costs.

## SIXTEENTH CLAIM FOR RELIEF
### (Unjust Enrichment)

273.    Plaintiff repeats and realleges the allegations set forth in paragraphs "1" through "272" as if set forth fully herein.

274.    Defendant CityGrace received the CityGrace Transfer.

275.    The CityGrace Transfer was made from funds comprising the Court-Ordered Escrow.

276.    The funds constituting the CityGrace Transfer are property of the Debtor's estate.

277.    Pursuant to the express terms of the Sale Order, Defendant CityGrace had no entitlement to the Court Ordered Escrow.

278.    Defendant CityGrace is not entitled to retain the CityGrace Transfer.

279.    Defendant CityGrace has failed to remit the CityGrace Transfer to Plaintiff.

280.    It would be unjust to allow Defendant CityGrace to retain the CityGrace Transfer because Defendant CityGrace did not provide consideration to the Debtor in exchange for the CityGrace Transfer.

281.    By reason of the foregoing, Plaintiff is entitled to entry of an order and judgment against Defendant CityGrace: (a) avoiding and setting aside the CityGrace Transfer; and (b) recovering from Defendant CityGrace an amount equal to the CityGrace Transfer, plus interest at the maximum legal rate and costs.

**WHEREFORE**, Plaintiff respectfully requests judgment be entered in her favor and against Defendants as follows:

i.    on the First Claim for Relief, an order and judgment granting a preliminary and permanent injunction against Defendant Firm, Defendant Cabrera, Defendant CityGrace and Defendant DiLibero;

ii.    on the Second Claim for Relief, an order and judgment against Defendants, pursuant to sections 541 and 542(a) of the Bankruptcy Code, directing the

32

immediate turnover of Court-Ordered Escrow to the Trustee;

iii.    on the Third Claim for Relief, an order and judgment pursuant to sections 541, 542(a) and 542(e) of the Bankruptcy Code: (a) against Defendant Firm directing the immediate turnover of all recorded information, including books, documents, records, and papers relating to the Firm Transfers including, but not limited to, the disposition of the funds comprising the Firm Transfers; and (b) against Defendant CityGrace directing the immediate turnover of all recorded information, including books, documents, records, and papers relating to the CityGrace Transfer including, but not limited to, the disposition of the funds comprising the CityGrace Transfer;

iv.    on the Fourth Claim for Relief, an order and judgment against Defendant Cabrera and Defendant Firm: (a) adjudging that Defendant Firm and Defendant Cabrera breached their fiduciary duties owed to the Debtor and his creditors; (b) awarding damages in favor of Plaintiff and against Defendant Cabrera and Defendant Firm in an amount not less than $400,000, representing the amount of the Court-Ordered Escrow; (c) ordering the disgorgement of all compensation paid to Defendant Firm from the Court-Ordered Escrow; and (d) awarding punitive damages against Defendant Cabrera and Defendant Firm to punish and deter others from the wrongful conduct alleged herein;

v.    on the Fifth Claim for Relief, an order and judgment against Defendant DiLibero and Defendant Debtor: (a) adjudging Defendant DiLibero and Defendant Debtor liable for aiding and abetting Defendant Cabrera's breach of fiduciary duty; (b) awarding damages in favor of Plaintiff and against Defendant DiLibero and Defendant Debtor in an amount not less than $400,000, representing the amount of the Court-Ordered Escrow; and (c) awarding punitive damages against Defendant DiLibero and Defendant Debtor to punish and deter others from the wrongful conduct alleged herein;

vi.    on the Sixth Claim for Relief, an order and judgment against Defendant Cabrera and Defendant Firm: (a) adjudging that Defendant Cabrera was negligent; (b) awarding damages in favor of Plaintiff and against Defendant Cabrera and Defendant Firm in an amount not less than $400,000, representing the amount of the Court-Ordered Escrow; and (c) ordering the disgorgement of all compensation paid to Defendant Firm from the Court-Ordered Escrow;

vii.    on the Seventh Claim for Relief, an order and judgment against Defendant Cabrera and Defendant Firm: (a) adjudging that Defendant Firm and Defendant Cabrera were negligent; (b) awarding damages in favor of Plaintiff and against Defendant Cabrera in an amount not less than $400,000, representing the amount of the Court-Ordered Escrow; and (c) ordering the disgorgement of all compensation paid to Defendant Firm from the Court-Ordered Escrow;

viii.    on the Eighth Claim for Relief, an order and judgment against Defendant Firm: (a) avoiding and setting aside the Firm Transfers; and (b) recovering from Defendant Firm an amount equal to the Firm Transfers, plus interest at the maximum legal rate

and costs;

ix.      on the Ninth Claim for Relief, an order and judgment against Defendant CityGrace: (a) avoiding and setting aside the CityGrace Transfer; and (b) recovering from Defendant CityGrace an amount equal to the CityGrace Transfer, plus interest at the maximum legal rate and costs;

x.      on the Tenth Claim for Relief, an order and judgment against Defendant CityGrace: (a) avoiding and setting aside the CityGrace Transfer; and (b) recovering from Defendant CityGrace an amount equal to the CityGrace Transfer, plus interest at the maximum legal rate and costs;

xi.      on the Eleventh Claim for Relief, an order and judgment against Defendant CityGrace: (a) avoiding and setting aside the CityGrace Transfer; and (b) recovering from Defendant CityGrace an amount equal to the CityGrace Transfer, plus interest at the maximum legal rate and costs;

xii.      on the Twelfth Claim for Relief, an order and judgment against Defendant CityGrace: (a) avoiding and setting aside the CityGrace Transfer; and (b) recovering from Defendant CityGrace an amount equal to the CityGrace Transfer, plus interest at the maximum legal rate and costs;

xiii.      on the Thirteenth Claim for Relief, an order and judgment against Defendant CityGrace: (a) avoiding and setting aside the CityGrace Transfer; and (b) recovering from Defendant CityGrace an amount equal to the CityGrace Transfer, plus interest at the maximum legal rate and costs;

xiv.      on the Fourteenth Claim for Relief, an order and judgment against Defendant Firm: (a) avoiding and setting aside the Firm Transfers; and (b) recovering from Defendant Firm an amount equal to the Firm Transfers, plus interest at the maximum legal rate and costs;

xv.      on the Fifteenth Claim for Relief, an order and judgment against Defendant CityGrace: (a) avoiding and setting aside the CityGrace Transfer; and (b) recovering from Defendant CityGrace an amount equal to the CityGrace Transfer, plus interest at the maximum legal rate and costs;

xvi.      on the Sixteenth Claim for Relief, an order and judgment against Defendant CityGrace: (a) avoiding and setting aside the CityGrace Transfer; and (b) recovering from Defendant CityGrace an amount equal to the CityGrace Transfer, plus interest at the maximum legal rate and costs;

xvii.      on all claims, awarding pre- and post- judgment interest, costs and disbursements as allowed by law;

xviii.      on all claims, awarding attorneys' fees as allowed by law;

xix.      on all claims, allowing punitive damages, as allowed by law; and

xx.        on all claims, awarding such other and further relief as may appear just and proper.

Dated: July 28, 2023
    Wantagh, New York          **LaMONICA HERBST & MANISCALCO, LLP**
                                 *Counsel to Plaintiff Marianne T. O'Toole, as Trustee*

                  By:     *s/ Holly R. Holecek*
                           Holly R. Holecek, Esq.
                           A Partner of the Firm
                           3305 Jerusalem Avenue, Suite 201
                           Wantagh, New York 11793
                           Telephone: (516) 826-6500