UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ALEXANDER BERNARD KASPAR,<br><br>Debtor. | NOT FOR PUBLICATION<br><br>Case No. 22-10382 (MG)<br><br>Chapter 11 |

MEMORANDUM OPINION OVERRULING OBJECTION AND GRANTING
TRUSTEE'S MOTION TO APPROVE SECTION 363(b) SALE OF PROPERTY

*A P P E A R A N C E S:*

**LaMONICA HERBST & MANISCALCO, LLP**
*Counsel to Marianne T. O'Toole, Chapter 7 Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
By:     Holly R. Holecek, Esq.

**BRONSON LAW OFFICES P.C.**
Counsel for Grace DeLibero and Citygrace Corp.
480 Mamaroneck Ave.
Harrison, NY 10528
By:     H. Bruce Bronson, Esq.


**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion ("Motion," ECF Doc. # 170) of Marianne

O'Toole (the "Trustee"), Chapter 7 Trustee of the Estate of Alexander Bernard Kaspar

("Debtor"), seeking entry of an order, pursuant to sections 105(a) and 363(b), (f), (h), (m) and (n)

of Title 11 of the United States Code ("Bankruptcy Code") and Rules 2002 and 6004 of the

Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), authorizing and approving the

sale of certain real properties to Hudson Highlands Land Trust, Inc. ("HHLT") pursuant to an

Asset Purchase Agreement ("APA") dated October 16, 2024, a copy of which is annexed to the

Motion as Exhibit A. The deadline to object was set for November 7 at 5:00 p.m. Grace DeLibero ("DeLibero") and Citygrace Corp. filed a limited objection ("Objection") to the Motion. (ECF Doc. # 174.) DeLibero also filed a declaration in support of her Objection ("DeLibero Declaration," ECF Doc. # 175). HHLT in turn filed a certification in response to the DeLibero Declaration on November 11 ("HHLT Certification," ECF Doc. # 176). The Trustee filed a reply to DeLibero's Objection ("Reply," ECF Doc. # 177). The Trustee filed a reply supported by the affidavit of Richard B. Malz attached as Exhibit A to the Reply (ECF Doc. # 177). The Supervisor of the Town of Putnam also filed a Certification in connection with the proposed sale, denying that the Town had any communication with HHLT in connection with the terms of the sale (ECF Doc. # 181.).

For the reasons explained below, the Court **OVERRULES** the Objection and **GRANTS** the Trustee's Motion. A separate Order will be entered.

## I. BACKGROUND

### A. Background

On March 28, 2022, a voluntary petition was filed on the Debtor's behalf under chapter 11 of the Code. (Motion ¶ 1.) This is the Debtor's second bankruptcy filing. (*Id.* ¶ 2.) The history of the prior bankruptcy, and the misconduct of the Debtor and his counsel, are addressed in an earlier order of this Court that converted this case from Chapter 11 to Chapter 7. ("[T]he Court concludes that Kaspar and Cabrera [his attorney] violated the Sale Order entered in Kaspar's prior Chapter 11 case. The Sale Order required that $400,000 in proceeds for the sale of two properties owned by Kaspar be deposited in escrow with Cabrera, with that sum to be used in connection with remediation of environmental contamination on another property owned by Kaspar . . . . The Sale Order provided that the terms of the Order survived any order

dismissing the Chapter 11 case . . . . Instead, upon dismissal of the case on the Motion of the United States Trustee, Cabrera released the escrowed funds, paying a portion of the funds to Kaspar, a portion to Kaspar's partner [Grace DeLibero], and kept a portion of funds in payment of his attorney'[s] fees. None of the funds were used for remediation costs. According to Cabrera, only about $4,000 is deposited in Debtor's DIP account." (*See* Order Converting Case to a Case Under Chapter 7, ECF Doc. # 94 (March 9, 2023).) Marianne T. O'Toole was appointed as the Chapter 7 Trustee of the Estate. (ECF Doc. # 97.)

As of March 28, 2022, the Debtor jointly owned certain real property lots with his partner, Grace A. DeLibero: lots at 75 Cimarron Road, Putnam Valley, New York 10579, Section: 72, Block: 1, Lot: 47 ("Lot 47"), and Sprout Brook Road, Putnam Valley, New York 10579, Section: 72, Block: 1, Lot: 50 ("Lot 50") (together, Lot 47 and Lot 50, the "Real Property Lots"). (Motion at 4 and ¶ 5.) The Real Property Lots consist of about 138 acres of undeveloped land in Putnam Valley, New York. (*Id.* ¶ 6.) Neither the Debtor nor DeLibero live or have ever lived on the lots. (*Id.*) The Debtor testified at a meeting of creditors conducted by the Trustee that there are no leases on the Real Property Lots. (*Id.*) Public records reflect that they are encumbered by real estate tax liens held by the Town of Putnam Valley ("Town"); the Trustee is not aware of any other liens or encumbrances on the lots. (*Id.* ¶ 7.)

The Trustee points to Zillow listings to show that DeLibero has been marketing the Real Property Lots for sale since at least March of 2023. (Motion ¶ 8.) The listings ranged from $799,000 on March 21, 2023, to $599,000 on August 26, 2023, to $697,000 on October 6, 2023, to $1,595,000 on January 25, 2024. (*Id.*)

3

### B.     Planned Sale

The Trustee commenced an adversary proceeding on May 23, 2023 against DeLibero seeking authority under section 363(h) to sell the lots free and clear of DeLibero's interest therein and determining her distributive interest in and to the proceeds from the sale of the lots. (*Id.* ¶ 9; *see* Adv. Pro. No. 23-1118-mg.)  In responding to the Trustee's complaint in that adversary proceeding, DeLibero stated that she "does not contest" the legal argument laid out in the Trustee's complaint, including the portion entitling the Trustee to a judgment under section 363(h) against DeLibero authorizing the Trustee to sell the lots free and clear of DeLibero's interest therein; she also stated that she "does not oppose judgment granting the relief sought in [the Trustee's] Complaint pursuant to section 363(h)."  (Adv. Pro. No. 23-1118, ECF Doc. # 4 at 3.)

On September 11, 2023, the Court approved a stipulation ("Stipulation") between the Trustee and DeLibero resolving the adversary proceeding and providing for the consensual sale of the Real Property Lots.  (*Id.* at ECF Doc. # 10.)  The Stipulation provided, in relevant part, that: "DeLibero consents to the Trustee's sale of the Real Property Lots pursuant to, *inter alia*, section 363(h) of the Bankruptcy Code"; "DeLibero agrees to sign and execute any and all documents as may be necessary to effectuate a closing (or closings) on the sale of the Real Property Lots"; and, "[s]ubject to and contingent upon a closing (or closings) on the sale of the Real Property Lots having occurred, and the sale proceeds having cleared the Trustee's account, DeLibero shall be entitled to 50% of the net sale proceeds after satisfaction of" various costs. (*Id.* at 5–6.)  DeLibero signed the Stipulation.  (*Id.* at 7.)

On October 16, 2023, this Court authorized the Trustee to hire Maltz Auctions Inc. ("Maltz") as a real estate broker to market and sell the Real Property Lots.  (Motion ¶ 12, ECF

4

Doc. # 132.)  Maltz has been marketing the Real Property Lots since late 2023.  (Motion ¶ 13.) HHLT submitted the highest offer.  After negotiating, the Trustee agreed to sell the Real Property Lots free and clear to HHLT for $595,000 pursuant to the APA.  (*Id.* ¶ 16 and at 16.) Per the APA, upon its execution, HHLT was to deposit $59,000 with the Trustee, to be maintained in a segregated estate account, upon receipt of which the Trustee was to move for approval of the sale; if the sale were approved, HHLT would, at that time, pay the rest of the purchase price by check or wire, and would close title to the lots within 60 days of entry of the order approving the sale.  (ECF Doc. # 170-1 at 16.)

HHLT is a trust created to conserve and care for the lands and waters of the Hudson Highlands.  (Motion ¶ 17.)  It has previously purchased real property from the Debtor's estate. (*Id.*)  The Trustee's business judgment is that a sale of the Real Property Lots to HHLT would be in the best interests of the Debtor's estate and all interested parties, and the sale was "negotiated over a protracted period of time and at arm's length."  (*Id.* ¶ 24.)  The HHLT bid was the "highest, best and only firm offer received by the Trustee for the Real Property Lots in the eighteen (18) months since her appointment," and the real estate broker also thinks that the bid is a good one.  (*Id.*)  The Trustee submits that she has no connections to HHLT, and that there is nothing to suggest bad faith or collusion between the Trustee and HHLT.  (*Id.* ¶ 31.)

The Trustee plans to satisfy the real estate tax liens held by the Town on the Real Property Lots with the proceeds from the sale to HHLT.  (*Id.* ¶ 27.)

C.     **DeLibero's Objection and Declaration**

DeLibero filed a limited objection to the sale motion, along with a declaration (filed one day late).  She "does not object to the sale of the real properties" in the abstract, but she does object to the sale to HHLT.  (Objection ¶ 1.)  She takes issue with the price and the identity of

5

the purchaser: she thinks $595,000 is too low, and that HHLT is not a good faith purchaser. DeLibero claims that the market value of the Real Property Lots is $1,595,000 (Objection ¶ 4) (she revises this amount down to $1,500,000 in her Declaration (DeLibero Decl. ¶ 4)), basing her estimate on comparative properties in the area, her "knowledge of the property" and her 35 years of experience as a real estate broker (DeLibero Decl. ¶ 4). DeLibero states that she is willing to purchase the Real Property Lots for $700,000 (but "this number would be reduced based on DeLibero's fifty-percent equity interest in the Property"), and thinks that the Trustee should be open to higher and better offers. (Objection ¶ 7, 7 n.1.)

DeLibero also thinks that the Town of Putnam Valley reduced the properties' value by filing "specious" claims for $1 million and $194,132.82. (*Id.* ¶¶ 4–5.) Specifically, she claims that the claim of $1 million for remediation is a "red hearing [sic] designed to chill bidders other than HHLT who it is believed has an agreement with the Town of Putnam Valley," and that remediation costs are, in fact, much lower. (*Id.* ¶ 5.) Her explanation of her theory in her Declaration is somewhat scrambled, but it seems as though she believes, based on prior contracts with engineering firms, that remediation can be accomplished at a cost of $190,000, and that the Town prevented remediation work from being accomplished more cheaply in the past. (DeLibero Decl. ¶¶ 8–9.)

Furthermore, DeLibero states that she has "reason to believe that HHLT has colluded with the Town to purchase the Property at a lower price," and that she is planning to sue "to uncover evidence of this through discovery and seek damages for the loss of potential purchasers that this collusion has caused." (Objection ¶ 6, p. 5.) In her Declaration, she explains that she believes HHLT has been colluding with the town for 19 years, "starting with a letter in 2006 suggesting we [DeLibero and the Debtor] put the land into a conservation easement which would

6

mean we could never sell the land." (DeLibero Declaration ¶10.) After DeLibero and the Debtor refused, "the town gave [the Debtor] his first violations and then the town commenced a lawsuit against" the Debtor; this suit is ongoing. (*Id.*) She also thinks that the Town dissuaded prior potential purchasers from buying the Real Property Lots by giving them "inaccurate, incorrect and/or false information," behavior which she alleges continues to this day. (*Id.* ¶¶ 11, 14.) DeLibero also takes issue with the Trustee's sale process, claiming that Maltz never marketed the property but instead "placed signs all over the property and on their website confusing prospective purchasers to the extent they walked away." (*Id.* ¶ 13.)

### D. HHLT's Statement

Katrina Shindledecker, the Executive Director of HHLT, filed a statement in response to the DeLibero Objection and Statement. In it, she denies that: HHLT ever colluded with the Town or ever even consulted with the Town in connection with the proposed sale terms contemplated by the Motion, HHLT ever had an agreement with the Town in connection with the property or sale, HHLT ever included the Town in negotiations with the Trustee over the property, and HHLT ever discussed the purchase price or any other sale terms with the Town. (HHLT Statement ¶¶ 5–9.) She points out that DeLibero's statement is not accompanied by any admissible evidence (*id.* ¶ 4), and that (to her knowledge) the Town was first made aware of the sale terms after the Trustee filed her sale motion with the Court (*id.* ¶ 10). She notes that HHLT will bear all costs relating to the environmental condition of the property, and the purchase price exceeded HHLT's valuation of the property minus the estimated clean-up costs and other costs set out in the purchase agreement. (*Id.* ¶ 11.) Finally, she submits that HHLT has proceeded in good faith, that all negotiations have been at arm's length, and that it is a good faith purchaser. (*Id.* ¶¶ 12–13.)

7

### E. Town of Putnam Denies Having Any Communication with HHLT About the Terms of Sale

As indicated earlier, the Town of Putnam, through its Supervisor, filed a declaration denying any communication with HHLT about the terms of Sale. (ECF Doc. # 181.)

### F. Trustee's Reply

The Trustee's Reply recounts the reason the Debtor's case was converted from a Chapter 11 to a Chapter 7, specifically the misapplication of the $400,000 in escrow with Debtor's former counsel for the remediation of Lot 47. The failure to remediate Lot 47 diminished the value of the Real Property Lots. (*Id.* ¶ 5.)

While DeLibero contends that the market value of the Real Property Lots is around $1.5 million, she provided no evidence of any offers in that range, and no offers that high were conveyed to the Trustee. (*Id.* ¶ 4.) DeLibero has never before conveyed offers to the Trustee on behalf of herself or any other party—the "offer" of $700,000 in her Objection is the first such offer, and the Trustee sees it as "flawed for any number of reasons," including the fact that it is "devoid of any details or any substantiation of . . . [her] wherewithal to finance her 'offer,' remediate the Lot 47 and/or indemnify the estate on terms set forth in the APA." (*Id.* ¶¶ 4–5.)

The Trustee attaches an affidavit from Richard Maltz ("Maltz Affidavit," ECF Doc. # 177-1), the CEO of Maltz Auctions, which sets out the steps Maltz took to advertise the Real Property Lots. Maltz solicited offers, arranged for aerial photographs of the properties to be taken by drone, and created a property-specific web page, which went live on October 23, 2023 and which has been accessed over 7,000 times. (Maltz Aff. ¶ 7.) Maltz also swore that the HHLT offer was the highest and best one received. (*Id.* ¶ 14.)

HHLT first made an offer on the properties on or around October 24, 2023, which was below what the Trustee was comfortable with. (Reply ¶ 10.) After "protracted negotiations,"

8

HHLT increased its offer, which the Trustee ultimately accepted. (*Id.*) The Trustee explains that DeLibero's "offer" of $700,000 is actually neither higher or better than HHLT's offer: DeLibero made no indication that the offer is being made on similar terms (including with regards to timing, conditions of transfer, assumption of risk and indemnification of the estate); the offer is "subject to [unspecified] remediation costs," but it is unclear if DeLibero or the Debtor's estate would bear those costs (and there is no indication DeLibero has the money to pay them); since DeLibero values the Real Property Lots at $1.5 million, it is not clear how much DeLibero would actually pay to the Trustee for the Lots after taking what she considers to be payment for her 50% equity stake; DeLibero does not clarify when or how she would pay various costs, e.g. closing costs, taxes, liens, etc.; and there is no evidence DeLibero has the financing to consummate the sale. (*Id.* ¶ 11.) DeLibero's challenges to the cost of remediation are irrelevant, the Trustee argues, because the lack of prior remediation on Lot 47 was reflected in the offers the Trustee received—essentially, there is nothing the Trustee can do about it beyond taking the highest and best offer. (*Id.* ¶ 12.) Finally, the Trustee argues that DeLibero's objection to the Town's claims are premature. (*Id.* ¶ 13.)

## II.   LEGAL STANDARD

### A.   Section 363(b) Sale

"[T]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). In approving a transaction conducted pursuant to section 363(b)(1), the courts consider whether the debtor exercised sound business judgment. *See In re Chateaugay Corp.*, 973 F.2d 141, 144–45 (2d Cir. 1992) (approving sale of assets based on a finding that sound business judgment supported sale because delay in the sale of assets may diminish their value); *Comm. of Equity Sec. Holders v.*

9

*Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983) (holding that the sale of assets out of the ordinary course of business must be supported by "some articulated business justification, other than appeasement of major creditors" and that "a judge determining a § 363(b) application [must] expressly find from the evidence presented before him at the hearing a good business reason to grant such an application"). Once the Trustee articulates a sound business justification, there "is a presumption that in making a business decision the [decisionmaker] acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citation omitted).

A determination that there are sufficient business reasons to justify a particular sale depends on the facts and circumstances of each particular case. *In re Lionel Corp.*, 722 F.2d at 1071. However, courts should consider factors such as: (1) the proportionate value of the asset to the estate as a whole, (2) the amount of time elapsed since the filing, (3) the likelihood of proposing and confirming a plan in the near future, (4) the effect of the proposed sale on any reorganization, (5) the sale price to be obtained with reference to any appraisals of the property, (6) alternative uses of the property, and (7) whether the asset is increasing or decreasing in value. *Id*.

"When a debtor desires to sell an asset, its main responsibility, and the primary concern of the bankruptcy court, is the maximization of the value of the asset sold." *In re Integrated Res., Inc.*, 135 B.R. 746, 750 (Bankr. S.D.N.Y. 1992), *aff'd*, 147 B.R. 650 (S.D.N.Y. 1992). "In general, to receive approval of a proposed sale of assets, the debtor will need to demonstrate to the bankruptcy court that the proffered purchase price is the highest and best offer." *Id*.

10

The business judgment of the estate representative is entitled to great deference. *See In re Borders Grp., Inc.*, 453 B.R. 477, 483 (Bankr. S.D.N.Y. 2011) ("Indeed, the trustee or DIP is entitled to great judicial deference in deciding which bid to accept as the best and highest bid on the sale of the Debtor's assets." (cleaned up)). Courts should not generally interfere with business decisions absent a showing of "bad faith, self-interest, or gross negligence." *In re Integrated Res., Inc.*, 147 B.R. at 656 (citing *Smith v. Van Gorkom*, 488 A.2d 858, 872–73 (Del. 1985)).

### B. Free and Clear Sale Under Section 363(f)

Section 363(f) provides:

> (f) The trustee may sell property under subsection (b) or (c) of [section 363] free and clear of any interest in such property of an entity other than the estate, only if—
>
> > (1) applicable nonbankruptcy law permits sale of such property free and clear of such interest;
> >
> > (2) such entity consents;
> >
> > (3) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
> >
> > (4) such interest is in bona fide dispute; or
> >
> > (5) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

"The language of section 363(f) is in the disjunctive, that is, the sale free of the interest may occur if any one of the conditions of section 363(f) has been met." 3 COLLIER ON BANKRUPTCY ¶ 363.06. The Code does not define the concept of "interest," but courts have given that term a broad definition that encompasses other obligations, in addition to liens, that

11

may flow from ownership of the property at issue.  *See* 3 COLLIER ON BANKRUPTCY ¶ 363.06[1].

A debtor is permitted to sell property of a bankruptcy estate free and clear if one of the five conditions under section 363(f) is satisfied.  *See In re Grubb & Ellis Co.*, No. 12-10685-MG, 2012 WL 1036071, at *6, 10 (Bankr. S.D.N.Y. Mar. 27, 2012), *aff'd*, 523 B.R. 423 (S.D.N.Y. 2014).

      C.      **Good Faith Purchaser Under Section 363(m)**

Section 363(m) provides:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

It has been held that a purchaser's good faith "is shown by the integrity of his conduct during the course of the sale proceedings . . . [and] is lost by 'fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders.'"  *Licensing by Paola v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)); *see also In re Borders Grp., Inc.*, 453 B.R. 477, 484 (Bankr. S.D.N.Y. 2011) ("The proponent of good faith carries the burden to show good faith . . . . In considering whether a sale is in 'good faith' under section 363(m), courts may consider whether a potential purchaser is an insider of the debtor.").

      **III.     DISCUSSION**

The Court finds and concludes that the Trustee appropriately exercised sound business judgment in choosing the highest and best bidder for the Real Property Lots.  The Court also

12

finds and concludes that HHLT is a good faith bidder. DeLibero's Objection lacks merit and is **OVERRULED**.

The Trustee spent months attempting to sell the Real Property Lots. Both the Trustee and Maltz demonstrate that HHLT's bid was the highest. After HHLT originally submitted a lower offer, the Trustee negotiated HHLT's bid up in value, over a period of months. The Court finds and concludes that the Trustee has at all times acted appropriately in seeking to maximize the value of the estate's property while liquidating it. *See In re Integrated Res., Inc.*, 135 B.R. at 750. The Maltz Affidavit concerning the sale methods employed sets out the significant efforts undertaken by the Trustee to sell the property. There is no evidence that the Trustee has done anything but try to sell the Real Property Lots at the highest value possible. And DeLibero's claim that the "market value" of the property is $1.5 million is specious, as evidenced by DeLibero's failure to sell the property for $1.5 million via a Zillow listing in January of 2024.

There is no evidence of bad faith, self-interest, or gross negligence in connection with the proposed sale to HHLT.

## IV.    CONCLUSION

For the foregoing reasons, the Court **OVERRULES** the Objection and **GRANTS** the Trustee's Motion. A separate Order approving the sale will be entered.

Dated:    November 14, 2024
         New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge