UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>ALEXANDER BERNARD KASPAR,<br><br>Debtor. | **NOT FOR PUBLICATION**<br><br>Case No. 22-10382 (MG)<br><br>Chapter 7 |
| O'TOOLE,<br><br>Plaintiff,<br><br>v.<br><br>M. CABRERA & ASSOCIATES, *et al.,*<br><br>Defendants. | Adv. Proc. 23-01154 (MG) |

*A P P E A R A N C E S*

LaMONICA HERBST & MANISCALCO, LLP
*Attorneys for Marianne T. O'Toole, as Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
By:    Holly R. Holecek, Esq

GRACE DE LIBERO
*Pro Se*

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

**MEMORANDUM OPINION AND ORDER APPROVING SETTLEMENT**

Pending before the Court is the motion (the "Motion," ECF Doc. # 239, Adv. Pro. ECF Doc. # 68) of Marianne T. O'Toole (the "Trustee") in her capacity as Chapter 7 Trustee of the estate of Alexander Bernard Kasper (the "Debtor") for entry of an order approving the settlement (the "Settlement") between Trustee, the Debtor, Grace De Libero, named as Grace A. DeLibero,

a/k/a Grace Angela DiLibero ("De Libero"), individually and on behalf of CityGrace Corp., and Matthew M. Cabrera, Esq., individually and on behalf of M. Cabrera & Associates, P.C. (together, "Cabrera"). The Settlement was reached in a mediation of all the parties, but De Libero, after agreeing to the Settlement, filed an objection to the Settlement (the "Objection," Adv. Pro. ECF Doc. # 70)[1] on October 28, 2025. The Objection was initially sent to the Court via email prior to the Objection deadline but was ultimately filed after the deadline. The Trustee replied to the Objection (the "Reply," Adv. Pro. ECF Doc. # 71) on November 4, 2025.

## I. BACKGROUND

### A. Bankruptcy Filing and Property at Issue

On March 28, 2022, the Debtor filed a voluntary petition pursuant to Chapter 11 of the Bankruptcy Code. (ECF Doc. # 1.) (Motion ¶ 5.) As of the filing date, the Debtor and De Libero jointly owned the following real properties: (a) 245 East 72nd Street, Apt. PHA, New York, New York 10021-4553 ("NYC Property"); and (b) 75 Cimarron Road, Putnam Valley, New York 10579, Section: 72, Block: 1, Lot: 47 ("Lot 47"), and Sprout Brook Road, Putnam Valley, New York 10579, Section: 72, Block: 1, Lot: 50 ("Lot 50") (together, the "Lots"). (*Id.* ¶ 6.) Cabrera was Debtor's counsel on the filing date and was counsel to the Debtor for the Debtor's prior Chapter 11 case. (*Id.* ¶¶ 7-8.) By Order of the Court, the Debtor's second Chapter 11 case was converted to a Chapter 7 on March 9, 2023. (*Id.* ¶ 9.) Before the Bar date, both De Libero and Cabrera filed claims against the Debtor's estate:

- De Libero filed a proof of claim against the Debtor's estate as a general unsecured claim in the amount of $124,000.00

---

[1] Documents denoted by Adv. Pro. are used to refer to those filed on the docket of Case No 23-01154. All documents without this denotation are filed on the docket of the main proceeding Case No. 22-10964.

- Cabrera filed a proof of claim against the Debtor's estate as a general unsecured claim in the amount of $144,461.00 and

- Cabrera filed a proof of claim against the Debtor's estate as a priority section 507(a)(2) claim in the amount of $57,274.23.

(*Id.* ¶ 12). The Trustee commenced this adversary proceeding against Cabrera, the Debtor, De Libero and CityGrace in relation to remediation costs related to the Lots. (*Id.* ¶ 16.) After a Court approved sale of the Lots to Hudson Highlands Land Trust, Inc. for the sum of $595,000.00 (*Id.* ¶¶ 20-24), the parties were referred to mediation (the "Mediation") before the Honorable Philip Bentley, United States Bankruptcy Judge for the Southern District of New York ("Judge Bentley"), resulting in the Settlement. (*Id*. ¶¶ 25-26.)

### B. Proposed Settlement

The Settlement resolves all disputes among the Trustee, the Debtor, De Libero, CityGrace, and Cabrera. (*Id.* ¶ 9.) The material terms of the Settlement are as follows:

- As to the Debtor, De Libero and CityGrace, the Stipulation provides that:
  - (a) the sum of $90,000.00 from the De Libero Sale Proceeds shall be deemed property of the Debtor's estate, free and clear of any and all claims of De Libero;
  - (b) and the sum of $55,428.93 shall be deemed De Libero's share of the De Libero Sale Proceeds.
    - Within seven (7) days of the Effective Date (as defined in the Stipulation), the Trustee shall pay the sum of $55,428.93 to De Libero by check.
  - Upon the Effective Date, the Stipulation provides for:
    - (a) a release to the Debtor, De Libero and CityGrace;
    - (b) the dismissal, with prejudice, of the adversary proceeding as to the Debtor, De Libero and CityGrace; and
    - (c) the abandonment of the estate's interest in the NYC Property to Alexander Kaspar, individually.
  - Upon the Effective Date, the Stipulation provides for a release from the Debtor, De Libero and CityGrace of the Trustee, the Trustee's professionals, and Cabrera from any

3

> > and all claims relating to the Debtor and relating to the Adversary Proceeding.
> > - The Stipulation further provides:
> >   - (a) for the withdrawal, with prejudice, of De Librero's claim against the Debtor;
> >   - (b) that neither the Debtor, De Libero nor CityGrace shall assert any additional claims against the Debtor's estate; and
> >   - (c) the express waiver of rights (if any) of the Debtor, De Libero and CityGrace to object to the applications for compensation of the Trustee and the Trustee's professionals.
> - As to Cabrera, the Stipulation provides that:
>   - Within seven (7) days of the Effective Date (as defined in the Stipulation), Cabrera shall pay the sum of $25,000.00 to the Trustee by wire transfer ("Cabrera Settlement Sum").
>   - Upon the later of the Effective Date and the Trustee's receipt of the Cabrera Settlement Sum, the Stipulation provides for a release to Cabrera and the dismissal, with prejudice, of the adversary proceeding as to Cabrera.
>   - Upon the Effective Date, the Stipulation provides for a release from Cabrera of the Trustee, the Trustee's professionals, the Debtor's estate, the Debtor, De Libero and CityGrace from any and all claims relating to the Debtor and relating to the Adversary Proceeding.
>   - The Stipulation further provides for the withdrawal, with prejudice, of Cabrera's two claims and that Cabrera shall not assert any additional claims against the Debtor's estate.

(*Id.* ¶¶ 29-30.)

### C. De Libero Objection

On October 28, 2025, De Libero filed an Objection to the Settlement agreement. She claims that the Trustee coerced her to settle, threatening to take away her home if she did not sign the agreement. (Objection at 3.) De Libero claims that the auction company, Maltz Auctions Inc. d/b/a Maltz Auctions, hired by the Trustee as real estate broker (the "Broker") to solicit offers on the Lots, did a subpar job in securing bids. (*Id*. at 1-2.) She claims that the Trustee accepted an offer from a buyer solicited by the Broker over a superior all-cash offer presented to the Trustee by De Libero. (*Id*. at 3-4.) De Libero believes that she is also entitled to

4

additional funds that the Trustee is withholding from her as a commission payment to the Broker and asks the Court to amend her share of the proceeds to reflect what she believes she is rightfully owed. (*Id.* at 5.)

### D. Trustee's Reply

On November 4, 2025, the Trustee filed a reply to the Objection. The Trustee argues that the Objection should be overruled for three reasons.

*First*, the Trustee argues the Settlement is an enforceable contract that is binding and conclusive. It should not be rejected by the Court solely because a party is having second thoughts. The Trustee notes that De Libero attended the Mediation, where she was in a room with her counsel while all negotiations between the parties were conducted through the Mediator, Judge Bentley. (Reply ¶ 8.) In signing the stipulation, De Libero agreed that the Settlement was "fully negotiated" by the parties and that each party entered into the Settlement agreement "voluntarily and without duress." (*Id.* ¶ 18.) A change of mind about the terms that De Libero agreed are insufficient to sustain her Objection to the 9019 Motion. (*Id.* ¶ 19.)

*Second*, the Trustee argues that De Libero has provided no evidence that she was coerced into entering the Settlement agreement. Rather, the Trustee argues that the Record reflects the opposite, that all negotiations during the eleven-hour Mediation were conducted through the mediator Judge Bentley and at no point did the Trustee or her counsel directly negotiate with De Libero. (*Id.* ¶ 22.) The Trustee also points to the Settlement, which itself provides that it was signed by the parties "voluntarily and without duress." (*Id.* ¶ 18.)

*Third*, the Trustee contends that the Objection is improperly collaterally attacking prior Court Orders by asking the Court to award her an additional "share" of the proceeds from the sale of the Lots. The Trustee notes two orders entered by this Court: an October 16, 2023 order

5

approving the Trustee's employment of the Broker to sell the Lots (*Id.* ¶ 4; Maltz Auctions Authorization Order, ECF Doc. # 132); and the November 15, 2024 order authorizing the sale of the Lots to Hudson Highlands Land Trust, Inc (Reply ¶ 5; Sale Authorization Order, ECF Doc. # 183). De Libero appealed the Sale Order, which was affirmed by the District Court. (Reply ¶ 6; District Court Order, ECF Doc. # 229.) The Trustee notes that the order approving the Broker's employment granted the Broker the ability to seek compensation in the form of a five percent (5%) commission of the gross sales price, inclusive of all marketing expenses. (Reply ¶ 4; Maltz Auctions Authorization Order.) The Trustee claims that De Libero did not object to the Broker and her appeal of the Sale Order was unsuccessful—she cannot relitigate these issues again through objecting to the Settlement agreement that she signed. (*Id.* ¶ 26.)

Ultimately, the Trustee restates that the Settlement is in the best interests of all the parties in resolving all disputes among the parties and falls above the lowest point in the range of reasonableness.

## II.   LEGAL STANDARD

### A. Rule 9019

Rule 9019(a) of the Bankruptcy Rules governs the approval of compromises and settlements, and provides as follows:

> On motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States Trustee, the debtor, and indenture trustees as provided in Rule 2002 and to any other entity as the court may direct.

FED. R. BANKR. P. 9019(a).

"[S]ettlements . . . are favored in bankruptcy and, in fact, encouraged." *In re Chemtura Corp.*, 439 B.R. 561, 595 (Bankr. S.D.N.Y. 2010). However, before approving a settlement, a

court must determine that it "is fair and equitable and in the best interests of the estate." *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. 493, 496 (Bankr. S.D.N.Y. 1991) (internal quotation marks omitted) (citing *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).

The Second Circuit follows a seven-factor test outlined in in *In re Iridium Operating LLC,* 478 F.3d 452, 462 (2d Cir. 2007) (the "*Iridium* Factors") in deciding whether to approve a compromise or settlement:

> (1) the balance between the litigation's possibility of success and the settlement's future benefits; (2) the likelihood of complex and protracted litigation, "with its attendant expense, inconvenience, and delay," including the difficulty in collecting on the judgment; (3) "the paramount interests of the creditors," including each affected class's relative benefits "and the degree to which creditors either do not object to or affirmatively support the proposed settlement;" (4) whether other parties in interest support the settlement; (5) the "competency and experience of counsel" supporting, and "[t]he experience and knowledge of the bankruptcy court judge" reviewing, the settlement; (6) "the nature and breadth of releases to be obtained by officers and directors;" and (7) "the extent to which the settlement is the product of arm's length bargaining."

In passing upon a proposed settlement, "the bankruptcy court does not substitute its judgment for that of the trustee." *Depo v. Chase Lincoln First Bank, N.A.*, 77 B.R. 381, 384 (N.D.N.Y. 1987), *aff'd sub nom. Depo v. Lincoln Bank*, 863 F.2d 45 (2d Cir. 1988) (citations omitted). The bankruptcy court is not required "to decide the numerous questions of law and fact raised by [objectors]," rather the Court should "canvas the issues and see whether the settlement falls below the lowest point in the range of reasonableness." *In re Bell & Beckwith*, 77 B.R. 606, 612 (Bankr. N.D. Ohio), *aff'd*, 87 B.R. 472 (N.D. Ohio 1987). Settlements and "[c]ompromises are favored in bankruptcy" as they minimize costly litigation and further parties' interests in expediting the administration of the bankruptcy estate. *Myers v. Martin (In re*

7

*Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (quoting 10 COLLIER ON BANKRUPTCY ¶ 9019.01 (16th 2019)).

"[W]hile the 'approval of a settlement rests in the Court's sound discretion, the debtor's business judgment should not be ignored.'" *JPMorgan Chase Bank, N.A. v. Charter Communs. Operating, LLC* (*In re Charter Communs.*), 419 B.R. 221, 252 (Bankr. S.D.N.Y. 2009) (quoting *In re Stone Barn Manhattan LLC*, 405 B.R. 68, 75 (Bankr. S.D.N.Y 2009)). In addition, the court may "give weight to the informed judgments of the trustee or debtor-in-possession and their counsel that a compromise is fair and equitable." *In re Kerner*, 599 B.R. 751, 756 (Bankr. S.D.N.Y. 2019) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 134 B.R. at 505).

### III.    DISCUSSION

De Libero's assertions in the Objection are rejected. The *Iridium* Factors weigh in favor of towards approving the Settlement. The Court **OVERRULES** the Objection and **GRANTS** the Motion approving the Settlement in its entirety.

#### A. The *Iridium* Factors Strongly Weigh Towards Approving the Settlement

1. <u>The First and Second Factors: The Balance Between the Litigation's Possibility of Success and the Settlement's Future Benefits and the Likelihood of Complex and Protracted Litigation</u>

The Settlement provides for (i) the payment of the Cabrera Settlement Sum; (ii) the estate's retention of $90,000.00 of the De Libero Sale Proceeds; (iii) the withdrawal of De Libero's and Cabrera's claims. Without the Settlement, the parties would be going to trial in the adversary proceeding which could be subject to further appeal, all of which would delay the administration of the Estate. (Motion ¶ 37.) The Settlement avoids these issues. Therefore, these factors favor approval of the Settlement.

### 2. The Third Factor: The Paramount Interests of Creditors

The Trustee contends that absent the settlement, the Parties would continue to litigate, and the final administration of the estate would be delayed. Approval of the Settlement allows the Trustee to move past this dispute and work on distributions to creditors with allowed claims. (Motion ¶ 37.) Thus, this factor favors approval of the Settlement.

### 3. The Fourth Factor: Whether Other Parties in Interest Support the Settlement

The Settlement is supported by the Trustee, Debtor, and Cabrera. (Motion ¶ 19.) After signing the Settlement and approving its terms following mediation, De Libero now objects. De Libero objects to the Settlement on two grounds: that she was coerced into signing the Settlement; and that she is owed an additional $14,750 that is currently being held in escrow for the Broker. Both of De Libero's objections are without merit.

#### a. *De Libero has not provided evidence of coercion, and the context of the Settlement negotiation does not suggest any such malfeasance*

De Libero claims that she was coerced at the mediation by the Trustee to settle. De Libero claims that the Trustee "threaten[ed] to take my coop away my home where I've lived for 18 years" and that she was "so afraid of that happening that I signed the document to settle." (Objection at 3.) Upon signing the Settlement, the agreement became a binding and conclusive contract to be interpreted under general principles of contract law. *See, e.g., Powell v. Omnicom*, 497 F.3d 124, 128 (2d. Cir. 2007). This means that De Libero cannot get out of the Settlement solely because she is no longer approves of its terms (*id*; *see also Liberty Towers Realty, LLC v. Richmond Liberty LLC*, 734 Fed. App'x. 68, 71 (2d Cir. 2018) ("When a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect") but *would* be relieved of its obligations if she was coerced into signing by the Trustee under duress (*Jordan v. Verizon Corp.*, 2005 WL

9

3116750 (2d. Cir. November 22, 2025) ("A settlement agreement is a contract that can only be invalidated upon a showing of fraud, duress, illegality, or mutual mistake")).

To prove duress to invalidate a contract under New York Law, a party must establish that there was "(1) a threat, (2) unlawfully made, (3) which caused involuntary acceptance of contractual terms, (4) because the circumstances permitted no alternative." *Great Lakes Reinsurance (UK) SE v. Herzig*, 673 F. Supp. 3d 432 (S.D.N.Y. 2023) (citing *U.S. West Financial Servs., Inc. v. Tollman*, 786 F. Supp. 333, 338 (S.D.N.Y. 1992)); *see also Industrial Recycling Sys., Inc. v. Ahneman Assocs., P.C.*, 892 F. Supp 547, 549 (S.D.N.Y 1995). De Libero fails to establish that there was a threat made that would have coerced her to accept the Settlement. The only mention of such coercion is the one line in her Opposition. The Reply points out that the Mediation was conducted by Judge Bentley, who himself conducted the entirety of the Mediation and was the only individual to interact between the parties. (Reply ¶ 22.) There is nothing to suggest that the Trustee interacted with De Libero during the Mediation.

Failing to establish a threat, De Libero fails to establish that she was coerced into signing the Settlement agreement.

   b. *De Libero is not owed additional funds currently set aside as commission for the Broker.*

De Libero takes issue with the 5% commission earned by the Broker amounting to $29,500. (Opposition at 5.) De Libero claims that the Broker did minimal work to effectuate the sale, solely listing the property on the website and putting "a few signs on the property." (*Id.* at 1-2.) De Libero claims that she was the one who initially contacted and procured the eventual buyer, that the Trustee did not consider selling to the eventual buyer when De Libero presented to the Trustee with an offer soon after the Trustee's appointment, and that the Trustee denied

10

offers brought by De Libero after the Broker was hired for much more than what the property ultimately sold for. (*Id.* at 2-3.)

Both the hiring of the Broker and the sale of the Lots were approved by this Court, with the Sale Order being affirmed by the District Court. (Maltz Auctions Authorization Order; Sale Authorization Order; District Court Order.) The Broker, per the Maltz Auctions Authorization Order, is entitled to 5% of the sale as commission for its work. (Maltz Auctions Authorization Order at 2.) The District Court Order reflects that De Libero has already challenged the Trustee's acceptance of Hudson Highlands Land Trust, Inc's offer to purchase the property and *denied* her contentions that the offer that she provided was better than the one the Trustee accepted. (District Court Order at 5-6.) The District Court found that the Trustee exercised "sound business judgement" in accepting the offer as required for a sale of assets under Section 363(b). (*Id.* (citing *In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012)).)

These issues raised in the Objection have been dealt with in the prior Orders issued by this Court and the District Court. This effort by De Libero to relitigate the issues is effectively a collateral attack on the Maltz Auctions Authorization Order (challenging the 5% commission), the Sale Authorization Order, and the District Court Order (challenging that the offer the Trustee accepted was reasonable by the Trustee to do so). Under New York law, collateral estoppel bars a party from relitigating an issue that was (1) raised in a prior proceeding and (2) decided against the party when the party had a full and fair opportunity to contest the determination. *See Johnson v. Watkins*, 101 F.3d 792, 794-95 (2d. Cir. 1996).

By challenging both the commission being paid to the Broker and the offer accepted by the trustee, De Libero is challenging issues that were dealt with in the previously entered Orders. De Libero had an opportunity to Object to both at the time and litigate them, which she did in the

11

case of the Sale Order. She had a full and fair opportunity to contest them. Just because she is not pleased with the outcomes does not mean she can object to the terms of a Settlement that she *willingly signed* (see *supra* at 8-9) to relitigate them. These issues have already been decided, and De Libero is collaterally estopped from continuing to challenge them through the objection here.

Given that the issues raised by De Libero in the Objection are without merit, the fourth factor favors approval of the Settlement.

### 4. The Fifth Factor: Competence and Experience of the Parties Counsel

All the Parties were represented by Counsel during the Mediation. In addition, the Mediation was overseen by Judge Bentley ensuring fairness during negotiations. Thus, this factor favors approval of the Settlement.

### 5. The Sixth Factor: Nature and Breadth of the Releases

The releases granted by the Settlement are broad, consensual and mutual as to the Trustee, De Libero, and Cabrera. (Motion ¶¶ 29-30; Settlement, Motion Ex. A, ¶¶ 5-6.) Accordingly, the sixth factor weighs in favor of approval of the Settlement.

### 6. Seventh Factor: The Nature of the Settlement Bargaining Process

The Settlement was agreed upon after Court-ordered Mediation overseen by Judge Bentley. (Motion ¶ 25.) Therefore, the seventh factor weighs in favor of approval of the settlement.

### IV.    CONCLUSION

For the reasons discussed above, the Court **OVERRULES** the Objection, **GRANTS** the Motion, and **APPROVES** the Settlement.

**IT IS SO ORDERED.**

Dated:    December 3, 2025
          New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge